Frederic M. Douglas (Calif. State Bar # 212778)

Attorney At Law

15333 Culver Drive, Suite 340

Irvine, California 92604-3051

Tel: (949) 293-0442

Fax: (949) 203-8768

fdouglas@cox.net

Attorney for Plaintiffs
MESIKA MAGIC & YIGAL MESIKA

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MESIKA MAGIC, a California corporation, YIGAL MESIKA, an individual<br><br>        Plaintiffs,<br><br>    vs.<br><br>PENGUIN MAGIC, INC., a Nevada corporation, CRAIG PETTY, a resident of the United Kingdom, DOES 1-10, inclusive,<br><br>        Defendants | Case No.: 2:25-cv-07943-MWF-(MBKx)<br><br>**SECOND AMENDED COMPLAINT COMPLAINT FOR:**<br><br>**1) LIBEL;**<br>**2) TRADE LIBEL;**<br>**3) COMMON LAW MISAPPROPRIATION OF LIKENESS**<br>**4) COMMERCIAL MISAPPROPRIATION OF LIKENESS UNDER CALIFORNIA CIVIL CODE § 3344;**<br>**5) FALSE LIGHT;**<br>**6) CALIFORNIA UNFAIR TRADE PRACTICES ACT;**<br>**7) FALSE OR MISLEADING STATEMENTS WHEN ADVERTISING ONE'S GOODS UNDER CAL. BUS. & PROF. CODE § 17500;**<br>**8) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 – SELF-PREFERENCING & PRODUCT COPYING;**<br>**9) FALSE DESIGNATION OF ORIGIN** |

**SECOND AMENDED COMPLAINT FOR DAMAGES - 1**

                                              ) / **LANHAM ACT § 43(a);**
                                              ) **10) INTENTIONAL INTERFERENCE**
                                              )   **WITH PROSPECTIVE ECONOMIC**
                                              )   **ADVANTAGE; AND**
                                              ) **11) DECLARATORY RELIEF**
                                              )   **AGAINST DEFENDANTS**
                                              )
                                              )   **DEMAND FOR JURY TRIAL**

## SECOND AMENDED COMPLAINT

Plaintiffs MESIKA MAGIC ("Mesika Magic" or "Plaintiff") and YIGAL MESIKA ("Mesika" or "Plaintiff") collectively, "Plaintiffs," allege the following facts upon actual knowledge with respect to themselves and their own acts and upon information and belief as to the actions of Defendants PENGUIN MAGIC, INC., a Nevada corporation ("Penguin Magic" or "Defendant"), CRAIG PETTY, a resident of the United Kingdom ("Petty" or "Defendant") and DOES 1-10 (collectively, "Defendants"), complains and allege as follows:

## I.   THE PARTIES

1.     Mesika Magic is a corporation incorporated in the State of California, with a principal place of business of 6182 Rodgerton Drive, Los Angeles, California 90068.

2.     Yigal Mesika is an individual, domiciled in, and a resident of, Los Angeles, California.

3.     On information and belief, Defendant Penguin Magic is a Nevada corporation, authorized to do business in California, having its principal place of business at 2575 N. High Street, Columbus, Ohio 43202. Upon further information and

**SECOND AMENDED COMPLAINT FOR DAMAGES - 2**

belief Penguin Magic maintains an agent for service of process, Registered Agents Inc., with the address for service of process at 732 S. Sixth Street, Suite R, Las Vegas, Nevada 89101. Upon further information and belief Penguin Magic maintains a designated agent for service of process, Kim Brown, at 3299 Monier Circle, Unit A, Rancho Cordova, California 95742.

4.     On information and belief, Defendant Craig Petty is a resident of the United Kingdom. Defendant Craig Petty is an individual associated with Penguin Magic's promotional media and content. On further information and belief, Craig Petty conducts business within the United States, including the State of California, offers video presentations relating to his activities and offerings in the magic industry toward persons within the United States, including the State of California, and directs his commercial activities at persons and entities sitting in the United States, including the State of California. Upon yet further information and belief, Defendant Craig Petty announces commercial activities in the magic industry in cooperation with Defendant Penguin Magic, including participating in magic trade shows within the United States. Craig Petty sells his goods on Penguin Magic's website, at https://www.penguinmagic.com/magician/craig-petty. Craig Petty operates a YouTube channel, "Craig Petty's Magic TV," available at https://www.youtube.com/channel/UCJPEdFF3SjIewaCBZtRWSgQ. Craig Petty published on or about July 14, 2025 the video "documentary" called "The Desolation of Yigal Mesika," available at https://www.youtube.com/watch?v=TnsLrTi5pX4&t. Craig Petty published on or about July 13, 2025 the video "The Desolation of Yigal Mesika TRAILER," available at https://www.youtube.com/watch?v=t9FDGvIBCgc. Craig Petty has published several other videos on YouTube critiquing Yigal Mesika and Mesika Magic and on other platforms. Craig Petty and Penguin Magic have

**SECOND AMENDED COMPLAINT FOR DAMAGES - 3**

repeatedly republished these defamatory videos, in each instance repeating and republishing the defamatory and false statements about Plaintiffs.

5. Defendant Penguin Magic published a video on its YouTube account, "Craig Petty Discusses Controversy With Yigal Mesika," on or about July 25, 2025, available at https://www.youtube.com/watch?v=oCONRGRYugs&t. This video is presented as a podcast, The Penguin Magic Podcast with Erik Tait," hosted by Erik Tait of Penguin Magic.  This video links to "The Desolation of Yigal Mesika," and reviews that video by Craig Petty with an interview of Craig Petty.

6. Plaintiffs are informed and believe, and on that basis allege, Penguin Magic, Craig Petty, and each of the DOE defendants (collectively "Defendants") is responsible in some manner for the events, occurrences and happenings herein referred to, either contractually or tortiously, and each singly or together caused the damage to the Plaintiffs as herein alleged.

7. Plaintiffs are informed and believe, and based thereon allege, that Defendants, and each of them, at all relevant times were and are the agents, employees, partners, joint venturers, owners, principals, employers or other representatives of each and every other defendant, and in doing the things hereinafter alleged, were acting within the course and scope of such agency, employment, partnership, joint venture, representation, or ownership. Plaintiffs are further informed and believe, and based thereon allege, that the acts and conduct herein alleged of each such defendant were known to, authorized by, consented to or ratified by the other remaining defendants and each of them.

## II.    JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to: This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332, and 15 U.S.C. § 1121

**SECOND AMENDED COMPLAINT FOR DAMAGES - 4**

(Lanham Act), as the controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between Plaintiffs who are incorporated in and reside in Los Angeles County, California and Defendant Penguin Magic has a principal place of business in Columbus, Ohio, incorporated in Nevada, and sells products in California. Defendants are subject to jurisdiction of this court as Defendants, do business within this judicial district, have committed infringing acts within this district, and direct their commercial activities in competition with Plaintiffs to California.

9.    This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because, as alleged further below: (a) Defendant has intentionally engaged in substantial business within this forum amounting to sufficient minimum contacts, including, but not limited to, the offer for sale and sale of their products and/or services into California and into this district, including the use of the Internet; and (b) a substantial part of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial district.  Venue is proper in this district under 28 U.S.C. § 1391 as Defendants are subject to the personal jurisdiction of the Court situated herein. Defendant Penguin Magic maintains contacts sufficient to subject it to personal jurisdiction within the Central District of California and has significant contacts within this District. Defendants maintain continuous and systematic commercial contacts with the State of California by, *inter alia*, purposefully availing themselves of the opportunity to conduct commercial activities, and regularly conducting business in the State of California; committing a substantial part of the wrongful acts complained of herein in interstate commerce, in the State of California, and in this judicial district; and conducting business activities in the State of California by advertising, offering for sale, and selling competing products and instructional and entertainment services as complained of herein while actively and continuously soliciting and consummating

**SECOND AMENDED COMPLAINT FOR DAMAGES - 5**

commercial transactions with California residents. A substantial part of the events giving rise to the claims occurred in this District, including Defendants' publication of defamatory content and sale of competing products directed at consumers in California.

## III.   GENERAL ALLEGATIONS

10.   Yigal Mesika is the owner of intellectual property related to, including inventions, patent applications, patents, trademarks, trade secrets, know how, and confidential information relating to magic tricks, demonstrations, instructions, and other means of entertainment.

11.   Plaintiffs market, distribute, and sell products using such intellectual property rights.

12.   Plaintiffs have developed a fine reputation and goodwill at substantial expense associated with their intellectual property and associated products, through advertising and marketing goods and services through their website http://www.yigalmesika.com/products, via Penguin Magic, and Murphy's Magic, besides other partners. Plaintiff also advertises and markets LOOPS products via Amazon at https://www.amazon.com/s?srs=8055481011&rh=p_89%3AYigal%2BMesika. Plaintiff Yigal Mesika also attends trade shows, and participates in various industry associations, including: the Academy of Magical Arts; FISM (Federation Internationale des Societes Magiques); Magic Live; The Magic Café; Genii, The Conjurer's Magazine; Magic Magazine; and EMC (Essential Magic Conference). Plaintiffs depend upon the Amazon website and Internet searches for customers and potential customers to find Plaintiffs and to promote Plaintiffs' products via searches for magic trick products.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 6**

13.    Upon information and belief, Defendants advertise, market, offer for sale, and sell products that compete with Plaintiffs in the United States and in the State of California, and in this judicial district. Plaintiffs' "LOOPS" products are competitive with Defendant's "Ties" products, an inferior product not authorized by Plaintiff, offered by Penguin Magic at https://www.penguinmagic.com/p/17608.

14.    Defendant Penguin Magic had previously used the term or mark "LOOPS" as a key word or "meta tag" in its website database. Penguin Magic copies Plaintiffs' "LOOPS" designed into Penguin Magic's "TIES" product, manipulates the search activities on its online marketplace, falsely misleads consumers into believing that they have sold the "TIES" product for over twenty years, to the detriment of Plaintiffs' "LOOPS" products, and Penguin Magic suppresses Plaintiffs' listings while promoting its own.

15.    Defendant Craig Petty has held himself out to the public as representing Penguin Magic at magic trade shows and industry events on behalf of Penguin Magic. On July 22, 2025, Defendant Craig Petty announced a partnership with Defendant Penguin Magic for a "Magic Live" event in 2025 on his Magic TV YouTube channel at approximately the 19:45 mark in his "FISM Roundup, Video Takedowns & LTS of Convention News" video, available at https://youtu.be/fsXHAJlCjaU?si=I0RyLosYJVvUDYSN&t=1182.  Specifically, he stated, from 19:45 through 20:17, "I've spoken to the people um at Magic Live, which is coming up soon, by the way. I hope everyone's excited. I'm going to Magic Live. Um I'm going to be there. I'm going to be arriving I think on the 2nd of August. So, if you're coming to Magic Live, make sure you come over and say hi. I'll be in the bar having a drink. Um I'll be on the Penguin booth. So, I'm actually going to be there on behalf of Penguin Magic on the Penguin booth. Um, and I have spoken to Penguin and there are going to be at least two new releases at Magic Live, which is very, very

**SECOND AMENDED COMPLAINT FOR DAMAGES - 7**

exciting. Defendant Petty further stated in this video, from 21:09 through 21:16, "So if you're coming to Magic Live, come along and say hi. I'll be on the Penguin booth. I'll be in the bar in the evening. It's going to be a lot of fun." Attached hereto as Exhibit S to this Second Amended Complaint, incorporated herein by reference, is a true and correct copy of the printout of the YouTube video, "FISM Roundup, Video Takedowns & LTS of Convention News" video, available at https://youtu.be/fsXHAJlCjaU?si=I0RyLosYJVvUDYSN&t=1182 – Printout, Comments, Transcript.

16. In his same "FISM Roundup, Video Takedowns & LTS of Convention News" video, available at https://youtu.be/fsXHAJlCjaU?si=I0RyLosYJVvUDYSN&t=1182, Craig Petty described how he views himself as part of the Penguin Magic corporate team, when he complained about missing inventory for the Penguin Magic booth, stating, "there was no Penguin booth on Monday at all because we had nothing to sell uh Tuesday we're going into it with nothing either." (FISM Is Kicking Off! – Magic News). Using "we" established Petty's role as a company insider/agent.

17. Craig Petty regularly conducts demonstrations and sells Penguin Magic's proprietary releases, such as Traveling Chips, Materializer, and Headache on Penguin Magic's behalf. This is mentioned in a video available at https://youtu.be/fsXHAJlCjaU?si=I0RyLosYJVvUDYSN&t=1182 , "Uh and then the the last thing that we'll talk about is uh the newest thing, this is not available on the website yet and it but it will be available at the Penguin stand is Headache by Tobias Dstall." (about 35:17 through about 35:29), and "Um and then we're going to see some people get Materializer wallet just because they're going to see the coin fade into existence and be like, "Yep, give me that." Yep. Absolutely. Absolutely. So come on over. If you're not at Blackpool, don't forget you can pick up any of this stuff uh

**SECOND AMENDED COMPLAINT FOR DAMAGES - 8**

eventually uh at Penguin Magic. Um they ship all over do all over the world." (about 42:03 through about 42:22).

18.    Craig Petty has a long-standing financial and award-winning relationship with Penguin Magic, having been awarded their "Creator of the Year" award for three consecutive years, 2022-2024.

19.    Craig Petty disclosed in a July 15, 2025 video, "FISM Is Kicking Off!", available at https://www.youtube.com/watch?v=jpsN7SEgfZk that he resided in living quarters with Penguin Magic employees and mentioned that when booth equipment arrived, he would be there with Penguin Magic. Specifically, Petty states:

"Um, you actually have to get like a lift to get to this place that uh me and the Penguin crew are staying at. It's kind of like a little villa. Uh, there's me, Eric Tait, Mandy Roth, Sean Dunn. Um, but yeah, I'm at I'm at FISM. So, if you guys are watching this and you're at FISM, come over and say hi. A lot of people have. I'm meant to be on the Penguin booth. Unfortunately, there is no Penguin booth right now. None of their stuff has turned up. We're on Tuesday morning right now. The convention was meant to start on Monday. There was no Penguin booth on Monday at all because we had nothing to sell. Uh Tuesday, we're going into it with nothing either. "
(about 0:51 through about 1:24).

Attached hereto as Exhibit T to this Second Amended Complaint, incorporated herein by reference, is a true and correct copy of the printout of the YouTube video, "FISM Is Kicking Off!", available at https://www.youtube.com/watch?v=jpsN7SEgfZk – Printout, Comments, Transcript.

20.    Defendant Craig Petty was properly served with the First Amended Complaint in the United Kingdom. In a February 13, 2026 video on his YouTube channel, "Sued For Speaking Out," available at

**SECOND AMENDED COMPLAINT FOR DAMAGES - 9**

https://youtu.be/DLAwm1SgoJM?si=yNtoAotbmNz1gji0, he stated, at about 1:17 through 1:25,  "I was served with a 105-page complaint . .. [it] was hand-delivered to my office. 105 pages."  Attached hereto this Second Amended Complaint, as Exhibit F, is a transcript of Craig Petty's February 13, 2026 video, the contents of which are incorporated herein to this Second Amended Complaint.

21.    Petty's February 13, 2026 video ("Sued For Speaking Out") is a continuation of the defamation and demonstrates actual malice (intent to harm).

22.    Petty doubles down on the exact defamatory statements from his "Desolation of Yigal Mesika" video, which he already knows from the service of the First Amended Complaint, were the subject of this litigation. In the 'Sued For Speaking Out" video, available at, https://youtu.be/DLAwm1SgoJM?si=yNtoAotbmNz1gji0, from about 0:24 through about 0:37, he told his audience, "In that video, I referred to him as magic's biggest litigious bully for the last three decades, and I stand by that opinion. He's a patent troll. He uses the courts to bully people into submission." See, Exhibit F.

23.    In his "Sued For Speaking Out" video, Petty demonstrated actual malice, while inciting others to attack Mesika, including when Petty explicitly instructed his viewers to amplify the attack on Mesika, at about 7:56 through about 8:22, "Let's all talk about it as a community. Let's have a discussion. Share this video. Yes, but talk about it. If you're on Facebook, make a Facebook post. If you're in a community somewhere, make a post. If you have a blog, write a blog about this. If you if you're a vlogger, make a vlog about this. Make a podcast about this. Discuss this with your friends. Discuss this with fellow magicians." See, Exhibit F.

24.    Defendants are engaged in an ongoing malicious campaign to destroy Plaintiffs' reputation, actively instructing their followers to spread the defamation across the Internet and elsewhere.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 10**

25. Craig Petty published another video on February 14, 2026, with a discussion between himself and Penguin Magic's employee, Erik Tait. In their discussion of the then upcoming Blackpool Magic Convention, Petty and Tait explicitly confirm that they would be working together to sell Penguin Magic products. Petty tells his audience, "make sure you come over to the Penguin booth, see me and Erik." (About 43:22). Additionally, Petty states in this video, "You and I are on the booth," to which Tait, Penguin Magic's employee, confirms, "Yep. You and I are on the booth." (About 39:27). The video is called "Penguin Magic At Blackpool 2026 | Talk Magic Dealer Special #4," available at https://youtu.be/PDPqdsfliKk?si=DgtoOkHCRnZ98BUS. Attached hereto this Second Amended Complaint, as Exhibit G, is a transcript of Craig Petty's February 14, 2026 video, "Penguin Magic At Blackpool 2026 | Talk Magic Dealer Special #4," the contents of which are incorporated herein to this Second Amended Complaint.

26. Craig Petty is not an independent third party, but an authorized agent, commercial partner, and compensated representative of Penguin Magic. Petty and Tait jointly operated the official Penguin Magic retail booth at the Blackpool Magic Convention in February 2026 to promote and sell Penguin Magic products, demonstrating a coordinated commercial enterprise. See, Exhibit G.

27. In Craig Petty's February 14, 2026 video, available at https://youtu.be/PDPqdsfliKk?si=MJH6PLKWDyPdvsBb, Petty describes Tait's role at Penguin Magic, stating, from about 1:02 through about 1:32, "If in the last couple of years you've bought anything from this company, the man that I'm here today probably had something to do with it .. . . He had his fingers in every single trick that you've probably seen in the last two years when it comes to Penguin Magic. He is the man over there." See, Exhibit G.

28. In the same February 14, 2026 video, available at https://youtu.be/PDPqdsfliKk?si=MJH6PLKWDyPdvsBb, Petty had Erik Tait

**SECOND AMENDED COMPLAINT FOR DAMAGES - 11**

participate, introducing Erik Tait as working for Penguin Magic, and Craig Petty described Penguin Magic to the audience by saying, at about 0:43 through about 1:02, "Well, I am here today speaking to um the biggest magic shop in the world. Officially the biggest magic shop in the world. Officially probably the most prolific producer of magic. Uh a company that I know very well that I've worked with for years that are absolutely incredible." See, Exhibit G.

29.    Craig Petty set up a public fundraising campaign, via GiveSendGo to fund his fight against the Plaintiffs. Attached hereto as Exhibit H to this Second Amended Complaint is a true and correct copy of Craig Petty's GiveSendGo campaign site, available at https://www.givesendgo.com/sued-for-speaking-out, the contents of which is incorporated by reference into this Second Amended Complaint. At around 3:41 through about 4:23 of the February 13, 2026 "Sued For Speaking Out" video, at Exhibit F, Petty stated, "And so, here we are. The legal fees are not going to be light, and bullies know how to run up a tab so that a case that should be over quickly can continue for a long time. To fight this case, I need your help. You see, I'm launching a crowdfunding campaign to try to help cover the costs of legal defense." See, Exhibit F.

30.    Defendants' conduct has successfully incited a targeted boycott, resulting in current and ongoing lost sales.

31.    Petty's GiveSendgo campaign donor list reveals that the very people Petty interviewed to defame Mesika in the original "Desolation of Yigal Mesika" video are funding this attack. Mark Bennett, for example, who Petty championed in his "Desolation of Yigal Mesika" video, donated $500. Joao Miranda, who also appeared in the video claiming that Mesika intimidated him, donated $1,000. See, Exhibit H.

32.    The comments on the February 13, 2026 video demonstrate that the Defendants are inflicting direct, continued commercial damage with all of these videos. Commenters have stated, "I threw out my Yeigal Mesika stuff."; "I will personally not buy any of his products anymore. . . .Imagine if the entire community stopped buying

**SECOND AMENDED COMPLAINT FOR DAMAGES - 12**

his stuff."; "The entire community needs to boycott Meseka. I'll never buy his products."; "No more m items for me!"; and other calls for boycott and commercial harm. Attached hereto as Exhibit I, and incorporated herein this Second Amended Complaint, is a true and correct copy Comments on the February 13, 2026 video on Craig Petty YouTube channel, "Sued For Speaking Out," available at https://youtu.be/DLAwm1SgoJM?si=yNtoAotbmNz1gji0.

33. Petty frames Plaintiffs' legitimate use of the courts to protect Plaintiffs' intellectual property as malicious and abusive:

- "He uses the courts to bully people into submission" (about 0:34 through about 0:37).
- "And since nobody has stood up to him or being able to stand up to him or financially being able to stand up to him, he's further emboldened because that's what bullies do. They keep repeating the same behavior over and over again until they meet resistance". (about 0:37 through about 0:57).
- "And now he's trying to use his bully status to shut down any criticism. He's trying to use it to shut down free speech". (about 0:57 through about 1:07).
- He claims Mesika is "somebody who's trying to legally silence me by playing a game of who's got more money to burn." (about 2:46 through about 2:52). See, Exhibit F.

34. Erik Tait is the primary product producer, marketer, and public face of Penguin Magic, with his "fingers in every single trick." In that role, as a Penguin Magic employee, Erik Tait's podcast statements regarding Plaintiffs were made strictly within the course and scope of his employment to manipulate the magic market and suppress a competitor's products in favor of the Penguin Magic products Tait himself develops and promotes.

35. Erik Tait was interviewed by Christian Painter and Roland Sarlot, regarding "Submitting Your Magic Invention For Production." The interview is

**SECOND AMENDED COMPLAINT FOR DAMAGES - 13**

available at https://www.carnivalofillusion.com/erik-tait.php and also on YouTube at https://www.youtube.com/watch?v=8fN1cVIs7hI. Erik Tait stated in this interview:

> "So, you know, we take a look at your trick through the submission process. We decide that we want to have you in, because Penguin wants to produce it. And then when it gets down to the brass tacks, we're going to do actually make the video of the instructions. I'm the guy that you film it with."

Tait also says in the interview, "So, I got my hands in a lot of pots. But I guess I'm best described as a producer. I help sort of move forward products to market with Penguin Magic." Attached hereto as Exhibit J, and incorporated herein this Second Amended Complaint, is a true and correct copy "Erik Tait's 'Submitting Your Magic Invention For Production' Podcast Interview," available at https://www.carnivalofillusion.com/erik-tait.php.

36.    Erik Tait is also involved in managing Penguin Magic's website and online marketplace, as discussed in a profile, available at https://magiciansworkshop.blog/2025/02/03/a-conversation-with-award-winning-magician-erik-tait/, "A Conversation with Award Winning Magician Erik Tait," from February 3, 2025:

> "Erik also opens up about the evolution of the Penguin Magic website and how the team is working hard to make it even more user-friendly. Although the site is huge, Erik assures that there's a lot of behind-the-scenes effort going into upgrading the platform to make it more navigable for users, especially newcomers to magic. Even though the site might look a little outdated to some, Erik emphasizes the monumental challenge of maintaining such a large database of products, tutorials, and reviews."

Attached hereto as Exhibit K, and incorporated herein this Second Amended Complaint, is a true and correct copy of "A Conversation with Award Winning Magician Erik Tait," from February 3, 2025,

**SECOND AMENDED COMPLAINT FOR DAMAGES - 14**

https://magiciansworkshop.blog/2025/02/03/a-conversation-with-award-winning-magician-erik-tait.

37.    Because Erik Tait's explicit job is to evaluate competitor's products, vet submissions, and bring Penguin Magic's own products to market, his statements discrediting Plaintiff were made strictly within the course and scope of his employment to manipulate the market in Penguin Magic's favor.

38.    Before Penguin Magic began heavily pushing its knockoff "TIES" product, Erik Tait hosted Yigal Mesika on the Penguin Magic Podcast on June 24, 2021, where Tait heavily praised Mesika's inventions, state that "all his products are highly refined." Tait further stated that he "really likes Spider Pen and has used it a lot," while acknowledging that "Loops are standard now." This interview was in the Penguin Magic Podcast With Erik Tait, the episode entitled, "Yigal Mesika – The Thread Of This Interview Is Invisible – S2 E37, available on Spotify at https://open.spotify.com/episode/4R4nHTXTWn1xV1tC6TwuWa?si=wPlot0qZTGmG nqmGmUYJ_A; and also available on Amazon Music at https://music.amazon.com/podcasts/42716f8d-0dde-4c04-8716-ef804f0ff653/episodes/33506a50-10b2-48a8-97f6-9a96179c455e/penguin-magic-podcast-yigal-mesika---the-thread-of-this-interview-is-invisible---s2-e37?useHorizonte=true&hasSeenMusicAuthPage=true&referer=https%3A%2F%2Fmu sic.amazon.de%2Fpodcasts%2F42716f8d-0dde-4c04-8716-ef804f0ff653%2Fepisodes%2F33506a50-10b2-48a8-97f6-9a96179c455e%2Fpenguin-magic-podcast-yigal-mesika---the-thread-of-this-interview-is-invisible---s2-e37&referrer=https%3A%2F%2Fwww.amazon.de%2F&webplayerDetailPagePath=htt ps%3A%2F%2Fmusic.amazon.com%2Fpodcasts%2F42716f8d-0dde-4c04-8716-ef804f0ff653%2Fepisodes%2F33506a50-10b2-48a8-97f6-9a96179c455e%2Fpenguin-magic-podcast-yigal-mesika---the-thread-of-this-interview-is-invisible---s2-

**SECOND AMENDED COMPLAINT FOR DAMAGES - 15**

e37&referer=https%3A%2F%2Fmusic.amazon.de%2F&referrer=https%3A%2F%2Fwww.amazon.com%2F.

39.    Later, Defendants applied malice in making a commercial pivot by defaming Mesika and attacking his products as "stolen" and "garbage" only after Penguin Magic began manufacturing and selling "TIES."

40.    Defendants' defamation was not a matter of journalistic reporting, as neither Tait nor Petty have any journalism credentials, nor was the content of the videos genuine public interest debate. Instead, Defendants conspired to enact a coordinated, bad-faith commercial attack designed to destroy the reputation of the market leader, Mesika, so that Tait and Petty could step into the void and sell Penguin's house-brand knockoffs at the conventions they jointly operate.

41.    The Penguin Magic Podcast with Erik Tait," hosted by Erik Tait of Penguin Magic was not merely "hosted" by Penguin Magic, but videos were published on the official "Penguin Magic" YouTube channel, displaying Penguin Magic's logo, branding, commercial links, and link buttons directly beneath the videos for purchasing products from Penguin Magic, including products competing with Plaintiffs. Penguin Magic receives advertising and sales revenues from these videos and its platform.

42.    Penguin Magic monetized its "Craig Petty Discusses Controversy With Yigal Mesika," which included Erik Tait's defamatory statements about Plaintiffs. Penguin Magic published its "Craig Petty Discusses Controversy With Yigal Mesika," on the official "Penguin Magic" YouTube channel, displaying Penguin Magic's logo, branding, commercial links, and link buttons directly beneath the videos for purchasing products from Penguin Magic, including products competing with Plaintiffs. Penguin Magic receives advertising and sales revenues from these videos and its platform. See, Exhibit C, attached hereto and incorporated by reference, showing that Erik Tait defames Plaintiffs:

**SECOND AMENDED COMPLAINT FOR DAMAGES - 16**

"Erik Tait shares his own personal story of Mesika allegedly stiffing him on payment for writing ad copy and instructions 15-20 years ago, stating Mesika paid for only four out of 16-18 pieces and then told him to 'lawyer up' when confronted, even though Tait was a '25-year-old college graduate' at the time."

Further in Exhibit C, Erik Tait makes another defamatory statement - "Erik Tait summarizes that Mesika's actions are 'used in an abusive way'."

43. Attached hereto as Exhibit L, and incorporated herein to this Second Amended Complaint is a true and correct copy of the YouTube account description for Penguin Magic, assessed on December 8, 2025, found at https://www.youtube.com/@penguinmagicshop and https://www.youtube.com/@penguinmagicshop/search?query=craig petty.

44. Attached as Exhibit M is a true and correct copy of the Penguin Magic YouTube offering of its hosted video, "Craig Petty Discusses Controversy With Yigal Mesika," assessed on December 8, 2025, found at https://www.youtube.com/watch?v=oCONRGRYugs. The Description of this video publishes a defamatory statement against Plaintiffs, "Erik Tait, for the first time, shares a story of when he wrote ad copy for Yigal and how it didn't end the way he had hoped." The Penguin Magic video, and the channel overall, is branded with Penguin Magic's branded marks, is monetized through YouTube and embedded links, linked directly to Penguin Magic's product pages, including products competing with Plaintiffs and used to drive traffic to Penguin Magic's platform and sales funnels. The Penguin Magic video also republishes Craig Petty's defamatory video, "The Desolation of Yigal Mesika," via the displayed active link.

45. Penguin Magic monetized its presentation of Defendant Petty's "The Desolation of Yigal Mesika" video and its "Craig Petty Discusses Controversy With Yigal Mesika." Penguin Magic republished Defendant Petty's "Desolation of Yigal

**SECOND AMENDED COMPLAINT FOR DAMAGES - 17**

Mesika" video on the official "Penguin Magic" YouTube channel, displaying Penguin Magic's logo, branding, commercial links, and link buttons directly beneath the videos for purchasing products from Penguin Magic, including products competing with Plaintiffs. Penguin Magic receives advertising and sales revenues from these videos and its platform. Penguin Magic adopted the content of "The Desolation of Yigal Mesika" and the content of "Craig Petty Discusses Controversy With Yigal Mesika."

46.     Penguin Magic republished "The Desolation of Yigal Mesika" video by embedding it or linking to it directly within Penguin Magic's own commercial environment, driving traffic to Penguin Magic's sales funnels or by providing a direct active link to Petty's video within Penguin Magic's podcast video description, thereby directing Penguin Magic's customer base to the defamatory content.

47.     Penguin Magic monetized the "Desolation of Yigal Mesika" video and its own video containing Erik Tait's defamatory remarks through YouTube advertisements and embedded commercial links, as a result, profiting directly from the viewer traffic generated by the defamatory controversy.

48.     Because Tait is the designated host and Penguin Magic's employee, his failure to correct Craig Petty, and his active solicitation of Petty's defamatory views, Penguin Magic endorsed Erik Tait's and Petty's defamatory statements.

49.     Erik Tait contributed to the defamation by sharing his own negative story about unpaid ad copy to bolster Petty's narrative, thereby signaling corporate agreement with Petty's attack on Plaintiffs.

50.     Penguin Magic used its internal sales data and market position to coordinate the release of these videos with the promotion of its knockoff product, "TIES," effectively using the defamatory content as a marketing tool to suppress Plaintiffs' sales.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 18**

51.    Defendants have published the above-described videos to make false statements regarding Plaintiffs to damage Plaintiffs' reputation and harm Plaintiffs' commercial activities to unfairly and unlawfully compete with Plaintiffs.

52.    Erik Tait is an employee of Penguin Magic acting within the scope of his employment as the host of "The Penguin Magic Podcast." Erik Tait is not just a generic employee, but the designated voice of the Penguin Magic brand.

53.    Erik Tait's statements about unpaid work for Yigal Mesika were made within the course and scope of his employment by Penguin Magic, published on the official corporate YouTube channel for Penguin Magic. The Penguin Magic Podcast is part of a structured, branded media product produced by Penguin Magic. The purpose of Erik Tait's commentary was to discredit Penguin Magic's competitor, Plaintiffs, to boost the sales of Penguin Magic's competing products, TIES which were linked directly below the video. At the time of the broadcast of the Penguin Magic Podcast, Penguin Magic was aggressively marketing "TIES", which is a direct knockoff competitor to Plaintiffs' LOOPS product.

54.    Defendant Erik Tait is an employee of Penguin Magic acting within the scope of his employment as the official host of "The Penguin Magic Podcast." Penguin Magic authorized Tait to speak on its behalf regarding industry controversies to drive viewer engagement and commercial traffic. Penguin Magic edited, produced, and published Tait's statements on its official channel, embedding commercial links to Penguin products immediately adjacent to Tait's commentary, thereby ratifying his statements as serving Penguin's commercial interest in disparaging a competitor.

55.    Penguin Magic served its business interest by having its employee, Erik Tait, recount a story portraying Plaintiff Mesika as dishonest and unethical (the "unpaid ad copy" story), validating the "boycott" of Mesika products, thereby diverting customers to Penguin Magic's house-brand alternative, "TIES."

**SECOND AMENDED COMPLAINT FOR DAMAGES - 19**

56.    Defendant Tait's statements were made within the scope of his employment because his specific job duty as "host" is to generate engagement an discuss industry news to attract customers to the Penguin Magic marketplace. His disparagement of a competitor, Plaintiffs, was not a deviation from his duties, but a fulfillment of his role to promote Penguin's reputation as the "ethical" alternative to Plaintiffs, thereby boosting sales of Penguin's products.

57.    Penguin Magic, as the producer and uploaded of the content, had full editorial control to remove Erik Tait's personal grievance but chose to publish it because it supported the corporate narrative that Mesika is a "bully" who should be boycotted.

58.    Penguin Magic ratified Erik Tate's conduct by editing, producing, and uploading the content to its commercial platform, surrounding it with Penguin Magic logos, and monetizing the video with advertisements and direct sales links.

59.    Penguin Magic introduced and promoted Craig Petty's "Desolation of Yigal Mesika" video on Penguin Magic's official YouTube channel displaying Penguin Magic's logo and branding.

60.    One source of hate and ridicule demonstrated in the Craig Petty video and the Penguin Magic Tait podcast is Plaintiff's pending patent application for an "Illusion Device Having a Key With Retractable Keychain Clip." This pending patent application was published on December 19, 2024, as U.S. Patent Application No. 2024/0416255 A1. Attached hereto as Exhibit A, and incorporated herein this Complaint, is a true and correct copy of U.S. Patent Application No. 2024/0416255 A1.

61.    In the U.S. Patent Application No. 2024/0416255 A1 attached as Exhibit A, the "Ring Flight Revolution" is disclosed and described in Paragraph [0006].

SECOND AMENDED COMPLAINT FOR DAMAGES - 20

62.    In the U.S. Patent Application No. 2024/0416255 A1 attached as Exhibit A, the "Rinkey Dinky" product is disclosed and described in Paragraph [0007].

63.    Near the end of Paragraph [0027] of U.S. Patent Application No. 2024/0416255 A1 attached as Exhibit A, the invention is described as being able to incorporate an Air Tag device.

64.    Defendants' published statements, presented in video and audio recordings, made several defamatory statements regarding Plaintiffs, including false statements regarding Plaintiffs' patent portfolio, Plaintiffs' efforts to protect and enforce intellectual property, and Plaintiffs' resort to litigation to protect the intellectual property and reputation. Defendants know their statements are false, but for the sake of —clickbait, ratings, search engine visibility, and views —, or put plainly, money —Defendants have destroyed Plaintiffs' reputation and legacy through their false statements and implications that Plaintiffs are "patent terrorists" with patents they do not deserve, bullies, and other inflammatory epithets.

65. The video "documentary" called "The Desolation of Yigal Mesika," available at https://www.youtube.com/watch?v=TnsLrTi5pX4&t, by Craig Petty ("the Craig Petty video") and the "Craig Petty Discusses Controversy With Yigal Mesika," video available at https://www.youtube.com/watch?v=oCONRGRYugs&t, ("the Erik Tate podcast") both repeated and republished negative statements from third parties, including Sean Bogunia, Joao Miranda, Steve Sheraton, Tom Wright, Erik Tait, Craig Petty, and Mark Bennett. These statements included defamatory statements presented as factual conclusions based on reported events and conversations, or are direct accusations of misconduct, constituting false, defamatory statements. Some of these statements include qualifiers such as "in my opinion" or "I believe" but these are still defamatory statements as they at least imply defamatory facts or are demonstrably false.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 21**

66.    Erik Tait, and employee of Penguin Magic, and acting in his role as an employee of Penguin Magic, defamed Mesika in "Craig Petty Discusses Controversy With Yigal Mesika," video available at https://www.youtube.com/watch?v=oCONRGRYugs&t, ("the Erik Tait podcast"). Erik Tait falsely claimed that he worked at one time for Mesika and that Mesika did not pay him as agreed. At about 54:07  through 58:22, the conversation between Erik Tait and Craig Petty was recorded as:

"this is also we are talking about an event that occurred 15 20 years ago. I mean I was I was maybe 24 when this happened and I turned 40 last week. Uh so uh my friend uh Yagal needed a copywriter and Yall and he worked for Yall and so they he reached out to me and said Eric's a writer. Uh he he does stuff cuz I was a writer. I graduated with a degree in comedy writing and performance and I had I was I was going to be a writer on the Joe Flity radio program at the time until XM radio and Sirius got together. Uh and I had done a bunch of writing for other companies. I was a a story editor for a production company at the time. So, like I was writing on a regular basis, not just doing magic. Uh, so I wrote uh all this ad copy and instructions and the deal was uh $100 per piece. And at the time, uh there was also I started getting asked to write weird pieces. So, I remember writing some like legalistic aggressive letters about people. And I didn't really know much about like I wasn't super in the magic industry at the time cuz I didn't get into magic until I was 19. Uh and then I was kind of away from it when I was doing comedy in school. So I didn't know a lot on the industry side. So I just had this guy going, "Look, someone's infringing on this thing. We need to scare him with a letter. Can you write this?" And I was like, "Sure, I can write something scary. Not a problem." Uh and I ended up writing like 16 or

**SECOND AMENDED COMPLAINT FOR DAMAGES - 22**

17 or 18 pieces for him. And he paid me for four of them. And then I I had I had written a bunch of stuff in a short period of time for him because he kept asking for stuff. And I would do revisions too. And as a freelance writer, it's very common for the deal to be uh you're writing per piece and you guarantee like three revisions before you start like incurring another cost for it if they're asking you to go back and change it again. Uh and we had like discussed this and I think we even discussed it via email. I can I I I would have to dig back through 15 years of email on on my AOL account is how far back this is. Yeah. Uh and then suddenly the check stopped coming. And so I reached out and I was like, "Hey, uh you know, I've just written like my 16th piece. Uh the bill is, you know, pretty high. Uh and he said, "Oh, no. The deal was for you to get $100 to write for me." And I was like, "No, per piece." And he was like, "No, it was $100. I gave you that extra as like a nicety. I was like, "No, it was $100 per piece." Like, who would who in their right mind would accept a deal to write in perpetuity for somebody uh for $100? I was like, "This doesn't make any sense." And his response was basically, "Well, if you really think that way, lawyer up." And I was I was, and I cannot emphasize this enough, a 25-year-old college graduate living in Southern California. I I luring up is not an option. Yeah. So I just left it alone and I and I I actually I began avoiding Yall at the castle because it was just I was just I was embarrassed that I let myself be taken advantage of in that in that situation cuz I worked really hard on a lot of that stuff. And again, it's still being used to this day. Every time I see certain advertisements that haven't changed in a long time, I'm like, "Oh, yep. I wrote that." Uh, and uh, yeah, and and the last time I actually the I didn't speak to him at all in until he was on the podcast and it was like it was really hard for me to not bring it up. But yeah, no, that's the story that was. So when when you put

**SECOND AMENDED COMPLAINT FOR DAMAGES - 23**

this video out and then you start and like over the week as you've like shown me these messages like seen these things, I'm just like, yeah, that tracks with everything I experienced. Yeah. Well, it you know, I mean that's a perfect example of what Eagle in my opinion. And sorry I have to keep saying that. Uh in my opinion looking at all of this it it it creates the pattern of somebody who just loves money, you know? Why would you patent something and then constantly Yeah. Like why would you stiff a college kid over like a couple hundred bucks? Exactly. It's all about money. He likes money. He wants as much money as possible. Um, and all I can say about the situation is, you know, I I don't have animosity towards anybody. Um, I would love to see I would love to sit down with Eagle one- on- one and see if we can find common ground."

67.     Attached hereto this Second Amended Complaint, and incorporated herein by reference, as Exhibit B is a list of defamatory statements made in the Craig Petty video, the contents of which are incorporated herein to this Complaint.

68.     Attached hereto as Exhibit N to this Second Amended Complaint, and incorporated herein by reference, is a true and correct copy of a table prepared for analyzing a portion of the false statements made in the videos by Craig Petty and Penguin Magic, relating the subject false statements, timestamps, the reason why the statement is false, and the last column indicates the evidence demonstrating the falsity of each statement.

69.     Attached hereto this Second Amended Complaint, as Exhibit C, is a list of defamatory statements made in the Erik Tait podcast, the contents of which are incorporated herein to this Second Amended Complaint.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 24**

70.    Attached hereto this Second Amended Complaint, as Exhibit D, is a list of comments, including defamatory statements made to the Craig Petty video, the contents of which are incorporated herein to this Second Amended Complaint.

71.    Attached hereto this Second Amended Complaint, as Exhibit E, is a list of comments, including defamatory statements made to the Erik Tait podcast, the contents of which are incorporated herein to this Second Amended Complaint.

72. Yigal Mesika is the owner of intellectual property including inventions, patent applications, patents, trademarks, trade secrets, know how, and confidential information relating to magic tricks, illusions, devices, and other products for entertainment. Plaintiffs' products include, among others, LOOPS, Tarantula, Electric touch, and Spider Pen. Plaintiffs' products are sold worldwide through distributors such as Murphy's Magic, online marketplaces including Defendant Penguin Magic, Inc. and Amazon, and directly through Plaintiffs' own website.

73.    Plaintiffs market, distribute, and sell products using such intellectual property rights, including under the common law trademark LOOPS for products related to magic and levitations.

74.    Plaintiffs also market, distribute, and sell products under the trademark LOOPS, for magic tricks, which is registered in the U.S. since April 27, 2010, with Registration No. 3,782,721. A copy of the registration of this trademark LOOPS is attached hereto as Exhibit O, incorporated herein by reference into this Second Amended Complaint.

75.    Plaintiffs have developed a fine reputation and goodwill at substantial expense associated with the LOOPS trademark and "Loops" products, through advertising and marketing goods and services through the website http://www.yigalmesika.com, and on social media, such as YouTube. Plaintiffs also advertise and markets LOOPS products via Amazon in general at https://www.amazon.com/s?srs=8055481011&rh=p_89%3AYigal%2BMesika,  and

**SECOND AMENDED COMPLAINT FOR DAMAGES - 25**

also specifically at http://www.amazon.com/Yigal-Mesika-ms03430-Loops-by/dp/B008Z23Y7Q. Plaintiffs depend upon the Amazon website and Internet searches for customers and potential customers to find Plaintiffs and to promote their products via searches for magic trick products.

76.    Plaintiffs also had licensed their products to third parties, such as Penguin Magic, to retail the products associated with the trademarks, such as the LOOPS trademark. Plaintiffs do not permit licensees to use Mesika's name, likeness, or trademarks for sales of counterfeit products or any other products that are not approved in advance by Plaintiffs.

77.    Before the events described in this Second Amended Complaint ("SAC"), Plaintiffs' products had a strong reputation in the magic community and generated consistent sales across multiple dealers and online platforms.

78.    Plaintiffs have reviewed the online videos at issue in this case that were posted online, including on Penguin Magic's branded YouTube and media channels. These videos repeatedly referenced Mesika by name, displayed Mesika's image, and discussed Plaintiffs' inventions and products. Plaintiffs never gave Penguin Magic permission to use Mesika's name or likeness in these videos. The Craig Petty video has more than 26,000 views while the Penguin Magic video has more than 7,834 views. These numbers are very impactful as the magic community is not very large, such that the negative impact is overwhelming, such that Plaintiffs' gross revenue has gone down over 60% since the videos were posted.

79.     In these defamatory videos, Mesika's name and image are repeatedly used, and numerous statements are made about Mesika and Plaintiffs' products, including accusations that Mesika is a "patent troll," that Mesika files "fake" or "fraudulent" patents, that Mesika is a "magic terrorist," that Mesika bullies and intimidates creators, that Mesika threatens lawsuits with no legal basis, Plaintiffs' products are copied from others, and that Mesika copied products such as Rinky

**SECOND AMENDED COMPLAINT FOR DAMAGES - 26**

Dinky and other creators' inventions.

80.    Those statements are false. Plaintiffs have never filed a fraudulent patent, never knowingly misrepresented prior art in any patent application, and never used patents or patent applications to extort money from creators.

81.    As a direct result of these defamatory videos, Plaintiffs have received numerous messages from customers, colleagues, and retailers expressing confusion, concern, or hesitation about purchasing Mesika products.

82.    Mesika's U.S. patent application referenced in the videos, U.S. Patent Application No. 2024/0416255 A1, was filed and prosecuted in good faith with the assistance of patent counsel and discloses prior art products such as Ring Flight Revolution and Rinkey Dinky as shown in Exhibit A to the SAC. The application is presently pending before the U.S. Patent and Trademark Office.

83.    The statements in the defamatory videos that Plaintiffs' product is "exactly" or "nearly identical" to Rinkey Dinky, or that Mesika stole the idea, are untrue. The design, mechanism, and performance handling of my product differ in material ways from Rinkey Dinky and other prior devices.

84.    The defamatory videos also state or strongly imply that Mesika "threatened" or "bullied" magician Mark Bennett and others by demanding "$6 per unit," insisting that their products be pulled from the market, and using non-existent or "imaginary" patent rights to pressure them. Those characterizations are inaccurate. Mesika did not make baseless legal threats, and any communication regarding Plaintiffs' intellectual property rights was made through counsel and based on Plaintiffs' good-faith belief in those rights.

85.    Mesika did not authorize Penguin Magic to use Mesika's name, image, or likeness in the "Craig Petty Discusses Controversy With Yigal Mesika" video or in any other Penguin Magic promotional content.

86.    The Penguin Magic video was published on an official Penguin Magic

**SECOND AMENDED COMPLAINT FOR DAMAGES - 27**

YouTube channel that prominently displays Penguin's name and logo, and that links viewers directly to Penguin's retail website and product pages. Beneath or near the challenged videos, viewers are encouraged to visit Penguin's site, and links to products, including Craig Petty's releases and competing products, appear in the description or on the same page.

87.    At the time these videos were released and promoted, Penguin Magic sold Plaintiffs' LOOPS products on its marketplace and also sold competing products, including an item branded as "TIES," which uses elastic thread and competes directly with LOOPS.

88.    Several retailers cancelled or refused to carry Plaintiffs' products after these videos were released. Based on Mesika's conversations with these retailers, their decisions were directly influenced by the defamatory statements.

89.    After these videos were posted and promoted, my product sales on major magic marketplaces, including Penguin Magic, decreased abruptly. Revenue reports from Plaintiffs' distributors confirm a sharp decline beginning shortly after the Penguin Magic channel published these videos.

90.    After the videos were published (July 14, 2025, for Craig Petty video; July 25, 2025, for Penguin Magic video), Plaintiffs observed a noticeable and abrupt decline in sales of Mesika products through  dealers and online channels. For example, in the six-month period before the July 2025 videos, the total gross revenue from magic products averaged approximately $28,327.08 per month; in the period including July 2025 and to December 2025, those average monthly sales dropped to approximately $11,833.64 per month, a reduction of roughly 60.17%. Attached hereto as Exhibit P to this Second Amended Complaint, incorporated herein by reference, is a chart of gross revenue data that Plaintiffs prepared from documents and information kept regularly in the course of business, reflecting the severe loss of revenue from product sales as a consequence of Defendants'

**SECOND AMENDED COMPLAINT FOR DAMAGES - 28**

wrongful actions. The x-axis represents months in the year 2025 while the y-axis represents gross revenue in dollars.

91.    Plaintiffs also received communications from at least two retailers who either cancelled future orders or significantly reduced their orders of Mesika products. One such retailer informed Plaintiffs in substance that, after seeing the "Desolation of Yigal Mesika" video and the reaction in the magic community, they were uncomfortable continuing to promote Mesika products and intended to prioritize other creators' items.

92.    As a consequence of the downturn in sales of my magic products, Plaintiffs have lost two of employees. If sales had kept at the customary level before these defamatory videos, Plaintiffs would still be employing those two employees.

93.    In the comments identified in Exhibits D, E, and I to the SAC, several commenters explicitly state they will "never buy" Mesika products again, will "boycott" Mesika products, or that they now intend to purchase competing products such as Penguin's TIES instead of LOOPS.

94.    Shortly after the controversy and the videos, Penguin's marketplace prominently featured its TIES product and that, when searching on Penguin's site for terms associated with Plaintiffs' LOOPS products, Penguin's competing products appeared ahead of Plaintiffs' products, or Plaintiffs' products were harder to locate than before. Positive reviews for Mesika products were not appearing or were fewer than expected, while Penguin's competing products displayed favorable reviews.

95.    Attached hereto as Exhibit Q, incorporated herein by reference to this Second Amended Complaint, is a true and correct copy of Penguin Magic's website listing for my LOOPS product, found at https://www.penguinmagic.com/p/7814. On the second page of the listing, the endorsement of LOOPS by the magician Dynamo is provided, "The ultimate secret power… I never leave home without it".

**SECOND AMENDED COMPLAINT FOR DAMAGES - 29**

Dynamo provided this comment on my LOOPS products before Penguin Magic began selling their TIES product knockoff.

96.    Attached hereto as Exhibit R, incorporated herein by reference to this Second Amended Complaint, is a true and correct copy of Penguin Magic's website listing for its TIES product, which is a knockoff of Plaintiffs' LOOPS product, found at https://www.penguinmagic.com/p/17609. On the second page of the listing, the endorsement of LOOPS by the magician Dynamo is provided, copied from the original text Dynamo provided for Plaintiffs' LOOPS product, but Penguin Magic falsely attributes this statement to Dynamo regarding their TIES knockoff product, "When you first showed me these, I was blown away by the quality. Now I never leave home without them! Endless possibilities!". Dynamo provided this comment on Mesika's LOOPS products before Penguin Magic began selling their TIES product knockoff. The quote now posted by Penguin Magic for the LOOPS product by Dynamo (shown in Exhibit Q) is a misleading excerpt of the longer endorsement Dynamo made for the LOOPS product previously. Penguin Magic falsely posts this endorsement to steal sales from Plaintiffs' LOOPS product while they are in control of the website and magic marketplace.

97.    Through Plaintiffs' prior business relationship with Penguin, Plaintiffs know that Penguin has access to detailed sales information, customer purchasing behavior, and performance data relating to merchants' products, including Plaintiffs' products. Penguin used its internal marketplace information and knowledge of Plaintiff's product performance to develop, position, and promote competing knockoff products.

98.    The statements and conduct described herein in this Second Amended Complaint have harmed Plaintiffs' professional reputation, caused customers and members of the magic community to view Mesika as unethical or abusive of intellectual property, and materially reduced sales and business opportunities for

**SECOND AMENDED COMPLAINT FOR DAMAGES - 30**

Yigal Mesika and Mesika Magic.

99.   Upon information and belief, Penguin Magic, Inc. advertises, markets, offers for sale, and sells products that compete with Plaintiffs in the United States and in the State of California, including in Los Angeles, California. Plaintiffs' "Loops" products are competitive with Penguin Magic, Inc.'s products, such as their "TIES" product, described as originating from Mesika but actually an inferior product not authorized by Plaintiffs.

100.   Upon information and belief, online commenters have volunteered that Penguin Magic often adds free packages of their "TIES" product to orders shipped to customers. These "TIES" products have nearly identical functionality, form, and marketing presentation as Plaintiffs' "LOOP" products.

101.   Penguin Magic's marketplace listings for these knockoff products have appeared above Plaintiff's own authorized listings, or to one side of Plaintiffs' authorized listings, and Plaintiffs' products were suppressed or shown with negative search rankings. This harmed Plaintiffs' sales.

102.   Penguin Magic has access to sales metrics, customer preferences, and other proprietary information from its own marketplace that was not public. Penguin Magic used this information to develop competing knockoff products.

103.   Plaintiffs have purchased several copies of a DVD sold by Penguin Magic, Inc., entitled, "Magic As Real As It Gets Starring Losander" ("the DVD"). The DVD is sold with "select props included" including allegedly Mesika's product, the "LOOPS" products.

104.   The DVD uses Plaintiffs' trademark "LOOPS" at several times during the video presentation on the DVD, including at times 54:50, 55:03, 55:18, 55:30, 56:03, 56:23, 57:10, 59:22, 103:01, and 104:30.

105.   The "Loops" products that Penguin Magic, Inc. supplied with the DVD are inferior counterfeits that damage Plaintiffs' reputation and mislead consumers as

**SECOND AMENDED COMPLAINT FOR DAMAGES - 31**

to the source and quality of Plaintiffs' products.

106.    Penguin Magic has suppressed negative reviews for its TIES knockoff products and suppressed positive reviews for Plaintiffs' LOOPS products. Penguin Magic also suppresses any reviews on its website that mention that LOOPS is a product superior to its TIES knockoff product.

107.    Penguin Magic floods the market with loss leaders and below market price for its TIES knockoff product to unfairly compete with LOOPS by selling TIES for less than its own cost, including many free, unsolicited products to customers not ordering TIES. Penguin Magic further floods the market with TIES packets with larger number of items per packet at a cost that is not sustainable unless Penguin Magic seeks to force Plaintiffs out of the market as Plaintiffs cannot sell LOOPS at such a low price or at the same price with more items per packet sold.

108.    So long as Penguin Magic, Inc. sells inferior counterfeit products at below market prices to the detriment of the  "LOOPS" product and their "TIES" name associated with those inferior knockoff products, Plaintiffs' business is affected negatively.

109.    Penguin Magic is a company that sells magic tricks and related products, serving as an online marketplace platform to list and sell products of Plaintiffs and others in the magic industry.

110.    Penguin Magic also sells its own products via its online marketplace platform, in direct competition with Plaintiffs and others in the magic industry.

111.    Defendants disseminate false and defamatory statements about Plaintiffs and their products, misappropriate Plaintiffs' likenesses and proprietary product concepts, and engage in unfair competition through an online sales platform, such as at https://www.penguinmagic.com/, that manipulates consumer reviews for its products,

**SECOND AMENDED COMPLAINT FOR DAMAGES - 32**

Plaintiffs' products, and the products of others, self-preferences Defendants' own goods, and copies and markets knockoff versions of Plaintiffs' products, and the products of other competitors. Defendants' statements were commercial, not public-interest commentary.

112. Defendant Penguin Magic, Inc. operates an online magic marketplace, and Defendant Craig Petty participates as a host, promoter, and content producer for Penguin Magic's video, YouTube, and social media properties.

113. Defendants have exploited their market position to harm Plaintiffs' reputation, to misappropriate product concepts, and to mislead consumers into believing Defendants' competing knockoff products originated from or were endorsed by Plaintiffs.

114. Defendants have exploited their market position to mislead consumers into believing Defendants' competing knockoff products originated from Defendants and worked to obscure Plaintiffs from the magic marketplace.

115. Penguin Magic has intentionally removed or intentionally did not post positive reviews at the marketplace for Plaintiffs' products.

116. Penguin Magic has intentionally removed or intentionally did not post negative reviews at the marketplace regarding Defendants' competing products.

117. Defendants published online videos and posts falsely accusing Plaintiffs of misconduct in connection with their patented and patent pending inventions. Defendants' social media statements misrepresented that Plaintiffs engaged in fraudulent or extortionate practices and sought to intimidate others in the magic community. In addition to these defamatory statements, Penguin Magic used its control of an online marketplace to unfairly manipulate search results, suppress consumer reviews; suppress competitors' listings, and introduce competing house-brand versions

**SECOND AMENDED COMPLAINT FOR DAMAGES - 33**

of successful merchant products—including Plaintiffs' products—at lower prices, using identical or confusingly similar designs.

118. Penguin Magic, aided by Craig Petty, also misused confidential and proprietary information obtained through marketplace operations, including sales metrics, customer preferences, and product specifications, to develop their own knockoff products. Penguin Magic thereafter promoted those products through the same web interface, ranking them more prominently and diverting consumer traffic away from Plaintiffs' listings.

119. Penguin Magic falsely posted an endorsement that one magician made about the Plaintiffs' LOOPS products on its listing for Penguin Magic's TIES knockoff product,

120. By placing the false testimonial on the TIES page, Penguin Magic falsely suggests to consumers that Dynamo endorsed the knockoff product, effectively misappropriating the goodwill of the original product LOOPS to sell the competing TIES.

121. Penguin Magic includes free packets of TIES in unrelated customer order shipments to flood the market and undercut Plaintiffs' pricing, where LOOPS sell at $10 and TIES are sold at $5 or free.

122. At least two retailers cancelled future orders or significantly reduced orders from Plaintiffs specifically due to the "Desolation of Yigal Mesika" defamatory video, including Fun Incorporated, of Wheeling, Illinois. Fun Incorporated cancelled its standing order for LOOPS and significantly reduced their overall purchase volume.

123. One retailer informed Yigal Mesika that after seeing the "Desolation of Yigal Mesika" video, they were uncomfortable continue to promote Plaintiffs' products and intended to prioritize other creator's items."

**SECOND AMENDED COMPLAINT FOR DAMAGES - 34**

124.    Penguin Magic, as a major distributor of magic products itself, had knowledge of Plaintiffs' specific wholesale relationships.

125.    Penguin Magic has access to detailed sales information, customer purchasing behavior, and performance date relating to merchants' products, including Plaintiffs' products.

126.    As a dominant marketplace and distributor, Penguin Magic was aware of Plaintiffs' specific wholesale relationships with retailers, including Fun Incorporated, and Penguin Magic acted to disrupt Plaintiffs' wholesale relationships.

## IV.    CAUSES OF ACTION

### COUNT 1

### LIBEL

127.    The allegations of Paragraphs 1-126 above are hereby incorporated herein by reference.

128.    Defendants published false statements of fact concerning Plaintiffs to give rise to liability for defamation by publishing and disseminating the defamatory material to others besides Plaintiffs.

129.    Defendants' defamatory statements were not privileged.

130.    Defendants' defamatory statements exposed, and continue to expose, Plaintiffs to hatred, contempt, ridicule, disgrace, and cause the Plaintiffs to be shunned, or avoided, and tend to injure Plaintiffs in their occupation and profession within the magic industry and magic community. Defendants' defamatory statements have damaged Plaintiffs' intellectual property, such as pending patent applications and issued patents, Plaintiffs' business, trade, and profession. Defendants' defamatory statements have caused members of the public to boycott Plaintiffs' products and urge others to boycott Plaintiffs' products.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 35**

131.   Defendants' defamatory statements were libel per se, including attacking Plaintiffs' professional reputation and injuring Plaintiffs by defaming Plaintiffs in their professional capacities.

132.   Defendants published the defamatory statements with actual constitutional malice toward Plaintiffs

133.   Because of the blatant and willful nature of Defendant's infringement, Plaintiff submits that this is an exceptional case and seeks their reasonable attorneys' fees.

## COUNT 2

## TRADE LIBEL

134.   The allegations of Paragraphs 1-133 above are hereby incorporated herein by reference.

135.   Defendants published false statements of fact concerning Plaintiffs to give rise to liability for defamation by publishing and disseminating the defamatory material to others besides Plaintiffs.

136.   Defendants' defamatory statements were not privileged.

137.   Defendants are in an adversarial posture toward Plaintiffs in the magic industry magic community.

138.   Defendants' defamatory statements disparage Plaintiffs' property, including Plaintiffs' intellectual property, including issued patents and pending patent applications, and Plaintiffs' magic products.

139.   Defendants' defamatory statements play a material and substantial part in inducing others to deal with the Plaintiffs, including inducing others to boycott Plaintiffs and their products. Particular purchasers lost are recorded in the comments sections of Defendants' video publications.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 36**

## COUNT 3

## COMMON LAW MISAPPROPRIATION OF LIKENESS

140.   The allegations of Paragraphs 1-139 above are hereby incorporated herein by reference.

141.   Defendants' published videos wrongly use Yigal Mesika's identity, including an image of Yigal Mesika's face, in a depiction that is distinctive, personal, and identifiable in a way that a view or listener would have little doubt about the identity of the person depicted, Yigal Mesika.

142.   Defendant's unpermitted use of Yigal Mesika's name and likeness was appropriated to Defendants' advantage, commercially and otherwise.

143.   Defendants' use of Yigal Mesika's name and likeness lacked consent by Yigal Mesika.

144.   Defendants' defamatory statements were not privileged.

145.   Defendants' unpermitted appropriation of Yigal Mesika's name and likeness caused Yigal Mesika and Mesika Magic to suffer damages from Defendants' use of Yigal Mesika's name and likeness.

146.   Defendants' defamatory statements disparage Plaintiffs' property, including Plaintiffs' intellectual property, including issued patents and pending patent applications, and Plaintiffs' magic products.

147.   Defendants' defamatory statements play a material and substantial part in inducing others to deal with the Plaintiffs, including inducing others to boycott Plaintiffs and their products. Particular purchasers lost are recorded in the comments sections of Defendants' video publications.

////

**SECOND AMENDED COMPLAINT FOR DAMAGES - 37**

# COUNT 4

# COMMERCIAL MISAPPROPRIATION OF LIKENESS UNDER CALIFORNIA CIVIL CODE § 3344

148.   The allegations of Paragraphs 1-147 above are hereby incorporated herein by reference.

149   Defendants' published videos wrongly use Yigal Mesika's identity, including an image of Yigal Mesika's face, voice, signature, name, photograph and likeness in a depiction that is distinctive, personal, and identifiable in a way that a view or listener would have little doubt about the identity of the person depicted, Yigal Mesika.

150.   Defendant's unpermitted use of Yigal Mesika's name and likeness was appropriated to Defendants' advantage, commercially and otherwise. Defendants' use of Yigal Mesika's likeness is directly connected with advertising and commercial sales.

151.   Defendants' use of Yigal Mesika's name, voice, signature, photograph, and likeness lacked consent from Yigal Mesika.

152.   Defendants' defamatory statements were not privileged.

153.   Defendants' unpermitted appropriation of Yigal Mesika's name and likeness caused Yigal Mesika and Mesika Magic to suffer damages from Defendants' use of Yigal Mesika's name, voice, signature, photograph, and likeness.

154.   Defendants' defamatory statements disparage Plaintiffs' property, including Plaintiffs' intellectual property, including issued patents and pending patent applications, and Plaintiffs' magic products.

155.   Defendants' defamatory statements play a material and substantial part in inducing others to deal with the Plaintiffs, including inducing others to boycott

**SECOND AMENDED COMPLAINT FOR DAMAGES - 38**

Plaintiffs and their products. Particular purchasers lost are recorded in the comments sections of Defendants' video publications.

## COUNT 5

## FALSE LIGHT

156. The allegations of Paragraphs 1-155 above are hereby incorporated herein by reference.

157. Defendants published false statements of fact concerning Plaintiffs to the public in general, or at least to a large number of persons, to give rise to liability for defamation by publishing and disseminating the defamatory material to others besides Plaintiffs.

158. Defendants' defamatory statements were not privileged.

159. Defendants' defamatory statements provided an unfair and inaccurate depiction of Plaintiffs.

160. Defendants' publications placed Plaintiffs in a false light that is highly offensive to a reasonable person.

161. Defendants' defamatory statements exposed, and continue to expose, Plaintiffs to hatred, contempt, ridicule, disgrace, and cause the Plaintiffs to be shunned, or avoided, and tend to injure Plaintiffs in their occupation and profession within the magic industry and magic community. Defendants' defamatory statements have damaged Plaintiffs' intellectual property, such as pending patent applications and issued patents, Plaintiffs' business, trade, and profession. Defendants' defamatory statements have caused members of the public to boycott Plaintiffs' products and urge others to boycott Plaintiffs' products.

162. Defendants' defamatory statements were libel per se, including attacking Plaintiffs' professional reputation and injuring Plaintiffs by defaming Plaintiffs in their professional capacities.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 39**

163. Defendants published the defamatory statements with actual constitutional malice toward Plaintiffs.

164. Because of the blatant and willful nature of Defendant's infringement, Plaintiff submits that this is an exceptional case and seeks their reasonable attorneys' fees.

## COUNT 6

## CALIFORNIA UNFAIR TRADE PRACTICES ACT

165. The allegations of Paragraphs 1-164 above are hereby incorporated herein by reference.

166. This claim arises under California law, including Cal. Bus. & Prof. Code § 17200, and the common law.

167. Defendants' defamation and other actions as alleged herein constitute a per se unlawful, unfair, or fraudulent business practice, and/or unfair, deceptive, untrue, and misleading advertising under California Business & Professions Code § 17000, *et seq*.

168. Defendants' violations of California law have been willful, deliberate, and intentional, and will no doubt continue unless enjoined by this Court.

169. Plaintiffs allege that Defendant has engaged in antitrust violations in violation of California Business and Professions Code § 16720 et seq. Defendant's conduct, including favoring itself, certain merchants, and copying products, constitutes monopolistic practices and unfair competition.

170. Defendant's dominant market position and its anticompetitive conduct have created barriers to entry for other merchants and have stifled competition. This has resulted in economic harm to Plaintiffs and other merchants on the platform.

171. Pursuant to California Business and Professions Code section 17203, Plaintiffs seek an order of this Court that permanently enjoins Defendants from

**SECOND AMENDED COMPLAINT FOR DAMAGES - 40**

continuing to engage in the unlawful, unfair, and fraudulent conduct described herein. Plaintiffs seek an order requiring Defendants to (1) immediately cease the unlawful, unfair, and fraudulent practices stated in this complaint; and (2) award Plaintiffs reasonable costs and attorney fees pursuant to California Code of Civil Procedure section 1021.5.

## COUNT 7

## CALIFORNIA UNFAIR TRADE PRACTICES ACT –FALSE OR MISLEADING STATEMENTS WHEN ADVERTISING ONE'S GOODS UNDER CAL. BUS. & PROF. CODE § 17500

172.   The allegations of Paragraphs 1-171 above are hereby incorporated herein by reference.

173.    This claim arises under California law, including Cal. Bus. & Prof. Code § 17250, and the common law.

174.   Plaintiffs' claim for unfair competition is brought pursuant to California Business and Professions Code § 17200 et seq., and supported by the decision in *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 953 (2002) ("commercial speech that is false or misleading is not entitled to First Amendment protection and 'may be prohibited entirely'").

175.   Defendants' defamation and other actions as alleged herein constitute a per se unlawful, unfair, or fraudulent business act or practice, and/or unfair, deceptive, untrue, fraudulent, and misleading advertising under California Business & Professions Code § 17000, *et seq*.

176.    Defendants' violations of California law have been willful, deliberate, and intentional, and will no doubt continue unless enjoined by this Court.

////

**SECOND AMENDED COMPLAINT FOR DAMAGES - 41**

## COUNT 8

## UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 – SELF-PREFERENCING & PRODUCT COPYING

177.   The allegations of Paragraphs 1-176 above are hereby incorporated herein by reference.

178.    Specific factual allegations and elements are pleaded consistent with applicable California and federal law.

179.   Plaintiffs allege that Defendant Penguin Magic has engaged in unfair business practices in violation of California Business and Professions Code § 17200 et seq. Defendant's conduct, including favoring itself, certain merchants, and copying products, is deceptive and misleading.

180.   These unfair business practices have created an uneven playing field, allowing Defendant and favored merchants to gain an advantage at the expense of Plaintiffs and other merchants. This conduct has resulted in economic harm to Plaintiffs and other merchants on the platform.

## COUNT 9

## FALSE DESIGNATION OF ORIGIN  / LANHAM ACT § 43(a)

181.   The allegations of Paragraphs 1-180 above are hereby incorporated herein by reference.

182.    Specific factual allegations and elements are pleaded consistent with applicable California and federal law.

183.   Plaintiffs allege that Defendant has violated the Lanham Act, 15 U.S.C. § 1125(a), by engaging in false designation of origin and false advertising. Defendant's conduct has misled consumers into believing that its knockoff products are genuine Plaintiffs' products and that Defendant's products are superior to Plaintiffs' products.

**SECOND AMENDED COMPLAINT FOR DAMAGES - 42**

## COUNT 10

## INTENTIONAL INTERFERENCE WITH

## PROSPECTIVE ECONOMIC ADVANTAGE

184.   The allegations of Paragraphs 1-183 above are hereby incorporated herein by reference.

185.   Specific factual allegations and elements are pleaded consistent with applicable California and federal law.

186.   Plaintiffs allege that Defendant has tortiously interfered with the prospective economic advantage between Plaintiffs and their customers. By copying Plaintiffs' products and selling knockoffs, and suppressing reviews online, Defendant has disrupted the market and interfered with Plaintiffs' ability to fulfill their prospective advantages for sales to customers.

187.   As a result of Defendants' wrongful conduct, Plaintiffs' wholesale and distributor contracts were cancelled, representing a probability  of future economic benefit

188.   Defendant's actions have caused confusion among consumers, leading them to purchase Defendant's knockoff products instead of Plaintiffs' genuine products. This interference has resulted in a loss of revenue and customer goodwill for Plaintiffs.

## COUNT 11

## DECLARATORY RELIEF AGAINST DEFENDANTS

189.   The allegations of Paragraphs 1-188 above are hereby incorporated herein by reference.

190.   Plaintiffs contend that Defendants have defamed them, published statements depicting them in a false and misleading light, and committed unfair business practices. There is an actual controversy between Plaintiffs and Defendants

**SECOND AMENDED COMPLAINT FOR DAMAGES - 43**

concerning whether the defamatory and false light statements may remain posted on various social media platforms, such as YouTube and other video hosting sites, and on the Internet, and in blogs which are in the public square.

191.   Plaintiffs seek a declaration and injunctive order from the Court that would require Defendant to remove and publicly retract the false and defamatory statements, publications, and republications described in this complaint.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.   Remove and publicly retract the false and defamatory statements, publications, and republications described in this complaint;

B.   Temporary and permanent injunctive relief restraining Defendants from publishing defamatory statements or marketing infringing or knockoff products;

C.   Special damages arising from the loss of business or business opportunities, according to proof at trial;

D.   Economic damages suffered by Plaintiffs, to be proven at trial;

E.   General, special, consequential, and compensatory damages, to be proven at trial;

F.   Exemplary and punitive damages, to be proven at trial;

G.   Costs of suit herein incurred;

H.   Interest on all sums awarded at the maximum allowable rate, pre-judgment and post-judgment;

I.   Defendants' profits;

J.   Reasonable and necessary attorneys' fees as provided by California law and other law;

**SECOND AMENDED COMPLAINT FOR DAMAGES - 44**

K.      Attorneys' fees and costs pursuant to Cal. Civ. Code § 3344, Bus. & Prof. Code §§ 17200, 17500, and 15 U.S.C. § 1117;

L.      Prejudgment and post-judgment interest;

M.      Punitive and exemplary damages where authorized by law;

N.      Restitution and disgorgement of profits wrongfully obtained by Defendants; and

O.      For such other and further relief that the Court deems just and proper.

February 23, 2026                          Respectfully submitted,


                                      _____/s/ Frederic M. Douglas_____
                                      Frederic M. Douglas
                                      Calif. State Bar # 212778
                                      Attorney At Law
                                      15333 Culver Drive, Suite 340
                                      Irvine, California 92604-3051
                                      Tel: (949) 293-0442
                                      Fax: (949) 203-8768
                                      fdouglas@cox.net

                                      Attorney for
                                      Plaintiffs
                                      MESIKA MAGIC & YIGAL MESIKA

////

**SECOND AMENDED COMPLAINT FOR DAMAGES - 45**

## PLAINTIFFS' DEMAND FOR JURY

Plaintiffs hereby demand trial by jury.

February 23, 2026                      ___/s/ Frederic M. Douglas_____
                                       Frederic M. Douglas


                                       Frederic M. Douglas
                                       Calif. State Bar # 212778
                                       Attorney At Law
                                       15333 Culver Drive, Suite 340
                                       Irvine, California 92604-3051
                                       Tel: (949) 293-0442
                                       Fax: (949) 203-8768
                                       fdouglas@cox.net

                                       Attorney for
                                       Plaintiffs
                                       Attorney for Plaintiff
                                       MESIKA MAGIC & YIGAL
                                       MESIKA

////

////

**SECOND AMENDED COMPLAINT FOR DAMAGES - 46**