Marc J. Randazza, SBN 269535
Alex J. Shepard, SBN 295058
ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
8991 W Flamingo Rd., Suite B
Las Vegas, Nevada 89147
Telephone: 702-420-2001

*Attorneys for Defendant*
*Craig Petty*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MESIKA MAGIC, a California corporation, YIGAL MESIKA, an individual,<br><br>            Plaintiffs,<br><br>      vs.<br><br>PENGUIN MAGIC, INC., a Nevada corporation, CRAIG PETTY, a resident of the United Kingdom, DOES 1-10, inclusive,<br><br>            Defendants. | Case No. 2:25-cv-07943-MWF-MBK<br><br>**Defendant Craig Petty's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and for Relief Under Cal. Code Civ. Proc. § 425.16, and Memorandum in Support**<br><br>Hearing Date: June 10, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 5A |

**TO: THE COURT, THE PARTIES, AND THEIR RESPECTIVE COUNSEL:**

PLEASE TAKE NOTICE that on June 10, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5A before the Honorable Michael W. Fitzgerald, located in the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant

Craig Petty will and does move the Court for an order dismissing Plaintiffs' claims asserted against him in the Second Amended Complaint ("SAC") with prejudice under Fed. R. Civ. P. 12(b)(6), and awarding him costs and attorneys' fees under California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and any oral argument made by counsel during the hearing on this Motion.

## STATEMENT OF LOCAL RULE 7-3 COMPLIANCE

Counsel for Petty and Plaintiffs met and conferred telephonically on February 26, 2026, to discuss this Motion as to the then-pending First Amended Complaint (ECF No. 20) and the now stricken proposed Second Amended Complaint (ECF No. 37). Counsel for Petty and Plaintiffs then met and conferred again on April 9, 2026, to discuss this Motion as to the operative Second Amended Complaint (ECF No. 43). While the parties engaged in a good-faith discussion that clarified and narrowed some of the issues to be discussed in this Motion, they were unable to resolve the issues.

Dated: May 1, 2026    Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza

Marc J. Randazza, SBN 269535
Alex J. Shepard, SBN 295058
8991 W Flamingo Rd., Suite B
Las Vegas, NV 89147

## TABLE OF CONTENTS

1.0    INTRODUCTION…………………………………………………….. 1

2.0    FACTUAL BACKGROUND    ………………………………………… 1

    2.1    Yigal Mesika's Broad and Poor Reputation.............................................1

    2.2    The Videos at Issue .................................................................................4

3.0    LEGAL STANDARD ...................................................................................10

4.0    ARGUMENT.................................................................................................11

    4.1    Anti-SLAPP: Plaintiffs' Claims Arise from Protected Activity ...........11

    4.2    The Libel, Trade Libel, and False Light Claims Fail.............................13

    4.3    The Trade Libel and False Light Claims Fail ........................................23

    4.4    The Misappropriation Claims Fail .........................................................23

    4.5    The California Unfair Trade Practices Act Claim Fails..........................24

    4.6    The Cal. Bus. & Prof. Code § 17500 Claim Fails..................................25

5.0    CONCLUSION .............................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Albanese v. Menounos*,
218 Cal.App.4th 923 (2013) ...................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................11

*Automated Transactions,*
*LLC v. Am. Bankers Ass'n*, 172 N.H. 216 A.3d 71 (N.H. 2019) .......................19

*Baker v. L.A. Herald Exam'r*,
42 Cal.3d 254 (1986) ..............................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................11

*Bose Corp. v. Consumers Union*,
466 U.S. 485 (1984)................................................................................21

*Brown v. Allstate Ins. Co.*,
17 F. Supp. 2d 1134 (S.D. Cal. 1998)..................................................25

*Cansino v. Bank of America*,
224 Cal.App.4th 1462 (2014) .................................................................15

*Capelouto v. Muse*,
2025 U.S. Dist. LEXIS 269694 (C.D. Cal. Dec. 3, 2025) .....................11

*Carver v. Bonds*,
135 Cal.App.4th 328 (2005) ...................................................................14

*Cross v. Facebook Inc.*,
14 Cal.App.5th 190 (2017) .....................................................................11

*Dickinson v. Cosby*,
17 Cal.App.5th 655 (2017) ..............................................................15, 16

RANDAZZA | LEGAL GROUP

*Dora v. Frontline Video, Inc.*,
  15 Cal.App.4th 536 (1993) ...............................................................23, 24

*Erlich v. Etner*,
  224 Cal.App.2d 69 (1964) ......................................................................23

*Franklin v. Dynamic Details, Inc.*,
  116 Cal.App.4th 375 (2004) .............................................................15, 16

*Geiser v. Kuhns*,
  13 Cal. 5th 1238 (2022) .........................................................................12

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)..........................................................................13, 15

*GetFugu, Inc. v. Patton Boggs LLP*,
  220 Cal.App.4th 141 (2013) ..................................................................14

*Gionfriddo v. Major League Baseball*,
  94 Cal.App.4th 400 (2001) ....................................................................24

*Glob. Plasma Sols., Inc. v. IEE Indoor*,
  600 F. Supp. 3d 1082 (N.D. Cal. 2021) .................................................10

*Harkonen v. Fleming*,
  880 F. Supp. 2d 1071 (N.D. Cal. 2012) .................................................22

*Herring Networks, Inc. v. Maddow*,
  445 F. Supp. 3d 1042 (S.D. Cal. 2020)..................................................16

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2009) .................................................................12

*Jackson v. Mayweather*,
  10 Cal.App.5th 1240 (2017) ..................................................................23

*John Doe 2 v. Superior Court*,
  1 Cal.App.5th 1300 (2016) ....................................................................13

RANDAZZA | LEGAL GROUP

*Kajeet, Inc. v. Qustodio*,
  2019 U.S. Dist. LEXIS 241699 (C.D. Cal. Aug. 22, 2019)................................19

*Kapellas v. Kofman*,
  1 Cal.3d 20 (1969) ............................................................................................23

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .............................................................................11

*Lacoste v. Keem*,
  2020 U.S. Dist. LEXIS 153779 (C.D. Cal. June 3, 2020) ..................................11

*Leidholt v. L.F.P., Inc.*,
  860 F.2d 890 (9th Cir. 1988) .............................................................................24

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)...........................................................................................14

*Medical Marijuana, Inc. v. ProjectCBD.com*,
  46 Cal.App.5th 869 (2020) ................................................................................25

*Mindys Cosmetics, Inc. v. Dakar*,
  611 F.3d 590 (9th Cir. 2010) .............................................................................10

*Montana v. San Jose Mercury News, Inc.*,
  34 Cal.App.4th 790 (1995) ................................................................................23

*Muddy Waters, LLC v. Superior Court*,
  62 Cal.App.5th 905 (2021) ................................................................................23

*Murray v. Bailey*,
  613 F. Supp. 1276 (N.D. Cal. 1985) ..................................................................21

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ..........................................................................12

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) .............................................................................16

RANDAZZA | LEGAL GROUP

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

*Planet Aid, Inc. v. Reveal*,
  44 F.4th 918 (9th Cir. 2022) ..........................................................................20

*Planned Parenthood Fed. Of Am., Inc. v. Ctr. For Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ..........................................................................11

*Polygram Records, Inc. v. Superior Court*,
  170 Cal.App.3d 543 (1985) ............................................................................23

*Reader's Digest Assn. v. Superior Court*,
  37 Cal.3d 244 (1984) ......................................................................................13

*Reader's Digest Assn. v. Superior Court*,
  690 P.2d 610 (Cal. 1984) ................................................................................21

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..........................................................21

*Ritchie. Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ........................................................................11

*Smith v. Textile Rental Servs. Ass'n*,
  2021 U.S. Dist. LEXIS 151475 (N.D. Tex. Aug. 12, 2021)......................18, 19

*Smith v. Zilverberg*,
  481 P.3d 1222 (Nev. 2021) ..............................................................................13

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)........................................................................................21

*Standing Comm. on Discipline of the United States Dist. Court v. Yagman*,
  55 F.3d 1430 (9th Cir. 1995) ..........................................................................16

*Stewart v. Rolling Stone LLC*,
  181 Cal.App.4th 664 (2010) ...........................................................................12

*Yow v. Nat'l Enquirer, Inc.*,
  550 F. Supp. 2d 1179 (E.D. Cal. 2008)............................................................13

RANDAZZA | LEGAL GROUP

*ZL Techs., Inc. v. Gartner, Inc.*,
   709 F. Supp. 2d 789 (N.D. Cal. 2010) .................................................................16


**STATUTES**
Cal. Bus. & Prof. Code § 17200.....................................................................24, 25
Cal. Bus. & Prof. Code § 17500............................................................................25
Cal. Civ. Code § 3344 ...........................................................................................24
Cal. Code Civ. Proc. § 425.16 ....................................................................1, 13, 25
Fed. R. Civ. P. 12 ............................................................................................11, 13
Fed. R. Civ. P. 56 ...................................................................................................11
Restatement (Second) of Torts § 566....................................................................16

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0   INTRODUCTION

Yigal Mesika is a magician who has a long standing reputation for stealing other magicians' tricks and using patent law illusions to try and eliminate and intimidate his competition. For his next trick, he wants to make the First Amendment disappear.

He has learned that often defendants will pay him off rather than find themselves bogged down in litigation. Usually, those lawsuits are for weak patent infringement claims. Now, he is trying to silence discussion of his abusive litigation tactics, but the First Amendment is more robust than that. His complaint has all the telltale signs of a SLAPP suit. He has amended once, amended twice, and yet still it is almost impossible to even tell what statements he is suing over. The Second Amended Complaint ("SAC") should be dismissed independently because it is a shotgun pleading that fails to give a clear statement of what he is complaining about. Nevertheless, Craig Petty has done the work of sifting through the box of used pinball machine parts to divine what Mesika wants censored and punished, and all that comes out is that Mesika does not want people sharing negative opinions about him. This case must be dismissed, with prejudice, with costs and fees awarded under the California Anti-SLAPP law.

### 2.0   FACTUAL BACKGROUND

#### 2.1   Yigal Mesika's Broad and Poor Reputation

During the meet and confer, Mesika's counsel adamantly insisted that his client was not a public figure. Zealous advocacy may require an attorney to take

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

RANDAZZA | LEGAL GROUP

difficult positions. But there does come a point when clinging to a position that is so unsupportable becomes something different. We are at that point here.

Mesika *pleads* his way into public figure status. "Plaintiffs have developed a fine reputation and goodwill at substantial expense" in regard to their LOOPS products. ECF No. 43 at ¶ 82. Plaintiffs' products "had a strong reputation in the magic community and generated consistent sales across multiple dealers and online platforms." *Id*. at ¶ 84. That should be enough.

But given Mesika's stubborn refusal to admit to something so clear, Petty has been compelled to gather and provide judicially noticeable proof of his public figure status. See accompanying Request for Judicial Notice ("RJN"). Mesika is featured on the cover of **Vanish**, **an international magic industry** magazine. One of his products was featured in a golden buzzer act on Britain's Got Talent. He has performed at prominent magic shows internationally. RJN at **Exhs. 1-5**. He has lectured globally on magic tricks. *Id*. at **Exhs. 5-9**. He has appeared in various documentaries, podcasts, and magazines about magic. *Id*. at **Exhs. 10-15**. His tricks have been performed by celebrity magicians and on popular TV shows. *Id*. at **Exhs. 16-19**. Magic retailers worldwide sell his products. *Id*. at **Exhs. 20-27**. Several magicians have reviewed these products, with hundreds of thousands of views. *Id*. at **Exhs. 28-35**. He may not be as prominent as Penn & Teller or David Copperfield, but he is certainly just one tier below them in the magic industry.

Mesika's reputation isn't all good though. It took a turn some years ago when it became apparent that he was stealing ideas from other magicians, and then trying to use litigation to silence those who complained. On April 5, 2024, the inventor of

the "Rinkey Dinky" device mentioned in the SAC, Steve Sheraton, published a Facebook post showing that Mesika's ring flight device (at issue in this case) is extremely similar to Sheraton's 2001 product. *Id*. at **Exh. 36**. In response, magic inventor João Miranda posted that "*Yigal Mesika threatened me with lawyers when I released my Gravity reel. He is a true bully. He lost all the respect I had for him. Funny (in a bad way) to see he copied your original invention.*" *Id*. In June 2024, a magician in the "Magicians Only" Facebook group said that "*Mesika is a thief of ideas. And doesn't bring anything to the table as far as advancement in the art. And he is a bully.*" *Id*. at **Exh. 37, p. 4**. In the same group shortly before Petty's statements were published, magicians discuss "shenanigans" around Mark Bennett's Air Flight invention and Mesika's pending patent application, with one member stating that "nothing Mesika has released is original to him but rather a variation of something someone else has created . . . none of this stuff is an original concept and if everything he's made variations of had patents.. he'd have nothing. What a joke." *Id*. at **Exh. 38, p. 4**. The commenter then says "*this [invention] was created and sold MANY years before mesikas [sic] ring flight and he's trying to patent his as original and say others can't release THEIR variations.*" *Id*. at **Exh. 38, p. 5**. In another conversation within the same group shortly before Petty's statements, other magicians discuss the dispute between Mark Bennett's Air Flight and Mesika's claimed invention, with multiple members of the group expressing skepticism about the validity of Mesika's claim of infringement. *Id*. at **Exh. 39**. One of the members, after noting the conspicuous similarities between Mesika's invention and the Rinkey Dinky, says "*to try and patent something you stole to*

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

*begin with is INSANE. Then to try and tell people they cant [sic] make variations when yours wasnt [sic] even a variation, but actually a complete ripoff, is again.. INSANE.*" *Id*. at **Exh. 39, p. 11**.

Mesika's customer base has also expressed these criticisms about the specific invention at issue here. On the Vanishing Inc. website, which offers Mesika's ring flight for sale, there is a "community questions" forum in which customers state that Mesika's invention is "a ripoff" of the Rinkey Dinky and that its advertising copy misleads customers by implying that it is Mesika's original idea, with one person saying Mesika's invention "could easily be considered blatant theft." *Id*. at **Exh. 40**. Magicians David Penn and Paul Longhurst published a YouTube video in April 2024 reviewing Mesika's ring flight, noted his claim of patent protection, expressed confusion about this because he did not come up with the idea, and mentioned prior iterations of the concept. *Id*. at **Exh. 41**.

Mesika is not just a famous magician, but is famous for being a litigious bully and a thief. To be fair, maybe he is not a thief. This case is not about whether he actually stole all the inventions and ideas that everyone says he did.  Maybe this is all deeply unfair. Maybe *everyone just says that*. But that was his long-standing global reputation before Petty said a word about him. And to sue someone in a clear SLAPP suit for calling attention to the fact that he has a reputation as a litigious bully – by calling him a litigious bully – that seems to prove the point.

### 2.2    The Videos at Issue

This case arises primarily from a July 14, 2025, video Petty posted on his "Craig Petty's Magic TV" YouTube channel, titled "The Desolation of Yigal

4

Mesika" (the "Desolation Video," attached as **Exhibit A**).[1] This video is over three hours long and features interviews with multiple members of the magic community. The gist of the video is that Mesika has a pattern of claiming patent protection for commonly used devices or methods used in magic tricks, then suing or threatening to sue for alleged infringement of these dubious patents.

It is primarily focused on a dispute between Mesika and the magician Mark Bennett, with Mesika having filed a patent application (which is still pending)[2] over a ring flight device and claiming that Bennett's allegedly similar air flight device is infringing. From 13:50-20:00, Petty mentions that Bennett disagreed with this claim of patent infringement. Petty interviews Bennett from 23:40-1:13:14. The two discuss at length how his and Mesika's devices are distinct and that Mesika's claims of novelty are suspect (33:25-38:25), that Mesika's claims of infringement are based on a pending application, rather than a registered patent (40:00-46:50),[3] and that Mesika made statements which Bennett interpreted as threats of litigation if Bennett did not agree to remove his device from stores or agree to a $6 per unit licensing agreement (38:24-39:42, 46:50-53:25). Bennett states that, based on his

---

[1] Available at: https://www.youtube.com/watch?v=TnsLrTi5pX4.

[2] *See* ECF No. 43-1.

[3] Throughout the video, Petty repeatedly expresses his opinion that filing a patent application provides no legal rights in the claimed patent (*e.g.*, at 43:30-44:34). In general, Petty is correct about this, as the Patent Act only speaks of providing patent protection to patentees, rather than applicants. But even if he were wrong, Petty discloses that he is not a lawyer, thus making it clear he is not making objective factual statements (1:37:35-1:38:10). Further, it is not defamatory to make wrong statements about the law. And if it becomes so, we are going to need to either double the size of the federal judiciary, expect 10 year delays to get to trial, or close down all social media forever.

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

own experience, Mesika is trying to prevent any other ring flight devices from entering the market for the foreseeable future, thus ending innovations for this type of magic device (59:10-59:42). Bennett says that he has been "threatened and bullied" by Mesika in this dispute (1:10:20-1:10:30). At 1:11:00-1:11:26, Bennett and Petty discuss that Mesika doesn't disclose the name of the Rinkey Dinky device's inventor on his patent application, despite that device being the obvious inspiration for Mesika's invention.[4] After the interview, Petty discusses specific differences between Mesika and Bennett's inventions, and notes that the timeline of events makes it very unlikely that Bennett was copying Mesika's invention because, for example, Mesika apparently released his device several months before filing his patent application (1:13:20-1:14:19, 1:44:00-1:48:10).[5]

After showing the interview with his primary source, Petty discusses the next step of his research: *seeking comment from Mesika himself*. From 1:15:45-1:43:00, he provides the full, unedited text message exchange between himself and Mesika regarding this dispute, along with his commentary on how Mesika's claims of

---

[4] This is an integral part of Mesika's defamation claim, but only because he materially misrepresents Petty's statements. Neither Petty nor anyone else states that Mesika did not disclose Rinkey Dinky or Ringflight Revolution as prior art in his patent application; rather, they state that Mesika did not give credit to the *inventors* of these devices, which is literally true; Mesika's patent application does not name these inventors. ECF No. 43-1 at 8, ¶¶ 6-7.

[5] Later, Petty plays a voicemail from Dave Bonsall, the inventor of Ringflight Revolution and the leading expert on ring flights, to Mark Bennett. In it, Bonsall says that he is impressed by Bennett's development on the ring flight technology in his new invention (1:49:35-1:50:19), which Petty considers a strong indicator of Bennett's device not being infringing. And at 1:50:50-1:51:14, Petty describes Mesika's trick as, in essence, a "a reel designed for ring flight in a key," which is the same thing as Bonsall's Ring Flight Revolution.

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

novelty are unfounded due to being based on pre-existing methods. In this exchange, Petty brings up Bennett's claim of a $6 per unit requested licensing fee, which Mesika does not dispute (1:26:15-1:26:58). Petty mentions that he told Mesika he would be fine with Mesika providing a public statement on this dispute that Petty would include in his video (1:35:56-1:36:10).

Petty then moves on to discussing the Rinkey Dinky device, which is nearly identical to Mesika's claimed invention. At 1:52:15-1:53:22, Petty mentions he found a Facebook video posted by Steve Sheraton, the inventor of Rinkey Dinky, in which Sheraton provides a side-by-side comparison of Rinkey Dinky and Mesika's claimed invention, showing the two are extremely similar (*see* RJN **Exh. 36**), and invites the viewer to come to their own conclusion about who copied whom. He then interviews Sheraton, who expresses frustration that the advertising copy for Mesika's ring flight invention made it sound as though he came up with it by himself, when it was in fact an iteration of the Rinkey Dinky (1:57:30-1:58:09). At 1:59:34-2:00:50, Sheraton displays Mesika's patent application on his phone and says "my god, you look at it, and it's my Rinkey Dinky, it's exactly my Rinkey Dinky, it's hilarious." At 2:02:34-2:02:54, Sheraton says Mesika is a "patent troll." At 2:03:20-2:06:15, Petty expresses his fear that people who are "weaponizing patents" will stifle innovation in the magic community, and that Mesika's pattern of IP enforcement appears to be a way of generating income, and Sheraton expresses the opinion that Mesika is an unethical bully.

At 2:23:48-2:26:38, Petty discloses that Mesika threatened to sue João Miranda, a prolific inventor in the magic community, quoting his written response

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

to Mesika's allegations of infringement. Miranda refers to Mesika as a "bully" for his tactics of threatening baseless patent litigation that stifles creativity.

At 2:29:30-2:46:15, Petty shows a portion of an episode of the Magic Insight Podcast featuring another magic inventor, Sean Bogunia. Bogunia leads off by calling Mesika a "magic terrorist" and a "patent troll," and one of the hosts calls Mesika a "bully." Bogunia recounts an experience from 2009 where Mesika sent a cease and desist letter over a video Bogunia posted online displaying a magic trick. Mesika made claims of patent protection that Bogunia claimed were ridiculous because they encompassed tricks and technology that long predated any possible claimed invention of Mesika's. Bogunia mentions Mesika sued him but "dropped the case" after Bogunia learned that the allegedly infringed patent was invalid.[6] Both Bogunia and the hosts mention that there are "many stories" of Mesika threatening magicians with infringement lawsuits. At 2:47:24-2:47:38, Petty plays a voicemail that Mesika left for Bogunia in which Mesika calls Bogunia a "clown," says that he is "messing with the devil," and that Bogunia will be "a big loser with your piece of shit device."

At 2:48:00-2:50:10, Petty discusses another magician, Tom Wright, who received bullying and intimidating communications from Mesika in response to a device Wright released, in which Mesika demanded that Wright take his product off the market because it was allegedly copying one of Mesika's devices, despite

---

[6] Mesika's patent infringement suit against Bogunia received media coverage. *See* RJN **Exh. 42**. The case is *Mesika v. Bogunia*, No. 2:09-cv-01580-JFW-SS (C.D. Cal.), filed on March 6, 2009.

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

their respective devices using different technology and methods. At 2:50:11-2:52:55, Petty shows a recorded message from Wright in which Wright discusses the threatening call from Mesika, that by this time he had sold his rights to the device to a magic shop, and that Mesika gave up on pursuing any claims of infringement shortly afterward.

In his conclusion, Petty discusses how the idea of someone patenting a ring flight is ridiculous, and that if one were to obtain such a patent, it would stifle innovation within the magic industry (2:54:50-59:10). He says repeatedly that he is publishing this video to bring attention to the fact that Mesika is attempting to stifle creativity, so that he can leave the magic community in a better position than he found it (*Id.* at 1:14:50-1:15:33; 1:35:00-1:35:40). And he constantly states throughout the video that he is expressing his opinion about Mesika's conduct.

Mesika also seeks to stifle Petty from talking about this lawsuit. Petty published a YouTube video about this case on February 13, 2026, titled "Sued for Speaking Out: Defending Free Speech in Magic," attached as **Exhibit B**.[7] At 0:30-2:14, Petty says he stands by his opinion expressed in the Desolation Video that Mesika is "magic's biggest litigious bully for the last three decades," and calls him a "patent troll" who "uses the courts to bully people into submission." He claims that Mesika is using litigation to silence free speech, and points to this very lawsuit as evidence of Mesika being a "litigious bully." Petty also says he is starting a crowdfunding campaign for his legal defense because his legal fees will be high and

---

[7] Available at: https://www.youtube.com/watch?v=DLAwm1SgoJM.

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

"bullies know how to run up a tab" (3:45-4:04).

Finally, Petty published a third YouTube video on March 1, 2026, titled "Crowdsourcing information for the Mesika v. Craig Petty SLAPP suit," attached as **Exhibit C**.[8] While Plaintiffs do not appear to claim this video contains any actionable statements, they complain about it nonetheless. In the video, Petty notes that Mesika is making the ridiculous claim that he is not a public figure, and asks his viewers to provide evidence (rather than having his legal counsel do extensive research) of Mesika's public figure status to cut down on litigation costs.  Since Mesika should be paying Petty's fees in the end here, he should be somewhat grateful that Petty has crowdsourced some of his research, rather than paying his lawyers to do it on an hourly basis.

## 3.0   LEGAL STANDARD

When the movant makes a prima facie showing that the suit arises from an act in furtherance of his right to free speech, he satisfies prong one of the Anti-SLAPP law. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). As relevant here, the statute protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3). "The defendant's burden at this step 'is not a particularly demanding one.'" *Glob. Plasma Sols., Inc. v. IEE Indoor*, 600 F. Supp. 3d 1082, 1091 (N.D. Cal. 2021).

Then, "the burden shifts to the [plaintiff] to demonstrate a probability of

---

[8] Available at: https://www.youtube.com/watch?v=s_oXgO051Qg.

prevailing on the challenged claims." *Id*. In federal court, this second step of the analysis uses either the standards for deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or Rule 56, depending on whether the motion makes a legal attack or factual attack on the operative pleading. *Planned Parenthood Fed. Of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 837 (9th Cir. 2018). This Motion is brought as a 12(b)(6) motion. The Court is well-acquainted with the plausibility standard under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). And through the incorporation-by-reference doctrine, the court may consider a document not attached to the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie. Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

## 4.0    ARGUMENT

### 4.1    Anti-SLAPP: Plaintiffs' Claims Arise from Protected Activity

The first Anti-SLAPP requirement is easy. Petty's statements were published in YouTube videos, and YouTube is a public forum. *Cross v. Facebook Inc.*, 14 Cal.App.5th 190, 199 (2017); *Lacoste v. Keem*, 2020 U.S. Dist. LEXIS 153779, *5 (C.D. Cal. June 3, 2020) (YouTube is a public forum); *Capelouto v. Muse*, 2025 U.S. Dist. LEXIS 269694, *8 (C.D. Cal. Dec. 3, 2025) (same).

"Issue of public interest" is defined very broadly as "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

(2008). "The issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id*. No subjects are off-limits, as "social or even low-brow topics may suffice." *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2009).

"[T]here is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities." *Stewart v. Rolling Stone LLC*, 181 Cal.App.4th 664, 667-68 (2010). The California Supreme Court has found that picketing a local land developer, even when arguably animated by a personal grievance and attended by only a few dozen people, satisfies the first prong when outside observers would view their speech as relating to the broader issues of inadequate housing and foreclosures. *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1251-52 (2022). The public interest requirement is met if the plaintiff or issue (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread public interest. *Albanese v. Menounos*, 218 Cal.App.4th 923, 934 (2013).

The speech here relates to Mesika's reputation within the magic community and his pattern of using his influence to bully smaller members of that community with threats of litigation stemming from dubious claims of patent protection. The Desolation Video contains interviews with magicians who specifically call Mesika a bully and a patent troll who has ripped off their inventions or claimed patent protection over unprotectable elements of magic devices. Petty specifically says in the Desolation Video that he is publishing it to bring Mesika's abusive behavior to

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

the attention of the magic community so that the community might stop Mesika from stymieing innovation through abuse of patent law. While the magic community may not be large, it is global, and Mesika's conduct is of significant interest to every member of it. *See Smith v. Zilverberg*, 481 P.3d 1222, 1227-28 (Nev. 2021) (finding statements about prominent figure in global thrifting community's "misogynistic and bullying behavior" was in connection with issue of public interest under Nevada's similar Anti-SLAPP law).

Petty has thus met his burden under the first prong of the Anti-SLAPP statute. As we are in federal court, the second prong of the analysis is identical to the traditional Rule 12(b)(6) analysis.

## 4.2    The Libel, Trade Libel, and False Light Claims Fail

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *John Doe 2 v. Superior Court*, 1 Cal.App.5th 1300, 1312 (2016). If the plaintiff is a public figure, then they must prove with *clear and convincing evidence* that the defendant published with actual malice, meaning actual knowledge of falsity or reckless disregard for the truth. *Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 256 (1984); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–45 (1974).  Mesika has failed to plead a plausible claim.

### 4.2.1  The Statements are Not of and Concerning Mesika Magic

For a plaintiff to bring a defamation claim, the statements at issue must identify the plaintiff at least by "clear implication." *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1184 (E.D. Cal. 2008). None of the statements at issue are about

Mesika Magic; they all refer exclusively to Mesika personally. Mesika Magic thus cannot assert any claims against Petty based on the statements in his videos. Right there, the case by Mesika Magic must be dismissed and costs and fees imposed.

### 4.2.2  The Statements are True or Substantially True

The statements about Mesika personally are not actionable for multiple reasons. First are the true statements. A statement must be false to be defamatory, and "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.App.4th 141, 154 (2013) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991)); *Carver v. Bonds*, 135 Cal.App.4th 328, 344–45 (2005) (a statement is not considered false unless it would have a different effect on the mind of the reader from that which the truth would have produced); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).

Mesika alleges that in the Desolation Video, Petty states "[y]ou didn't even credit the person that most people would consider to be the godfather when it comes to ring flights," and he "specifically claimed that Mesika never mentioned Dave Bonsall's 'Ringflight revolution' or Steve Sheraton's 'Rinkey Dinky' device." ECF No. 43 at ¶ 46. These statements are literally true. Mesika's ring flight patent application doesn't mention the names of these inventors, only the names of the devices. ECF No. 43-1 at 8, ¶¶ 006-007.

Mesika complains about Petty stating Mesika "doesn't have a patent approved and he never will" and that he has "Dozens of patent applications, very few granted." *Id*. at ¶ 47. Petty states this at 4:10-4:15 of the Desolation Video, as

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

part of a discussion specifically about Mesika's ring flight patent application, not his overall patent portfolio. It is undisputed that Mesika does not have a patent registration for this device, and predictions about future events cannot be defamatory. *Cansino v. Bank of America*, 224 Cal.App.4th 1462, 1469 (2014). It is literally true that many of Mesika's patent applications have not proceeded to registration; of the 32 results returned for a search for "Yigal Mesika" on the USPTO's patent search tool, 19 are mere applications that did not mature to registration. *See* USPTO patent search, attached as **Exh. D**. "Very few" is a fair characterization of the minority of attempts that proceeded to registration.

Mesika alleges that Petty "further republishes and ratifies Sean Bobunia's [sic] false claim that Mesika's patent was 'bogus' because 'he didn't list any prior art of any kind.'" ECF No. 43 at ¶ 46. Plaintiffs are being disingenuous. Sean Bogunia's statements in the Desolation Video were about an entirely different patent at issue in Mesika's 2009 lawsuit against him, which Mesika dismissed, and there are no factual allegations that this earlier patent was anything other than bogus.

### 4.2.3  The Statements are Opinion or Rhetorical Hyperbole

A statement of opinion cannot be defamatory. *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 384-85 (2004); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). When the speaker discloses the facts on which their opinion is based, they can only be liable "if the disclosed facts themselves are false and defamatory." *Dickinson v. Cosby*, 17 Cal.App.5th 655, 686 (2017). "When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

to construe the statement as insinuating the existence of additional, undisclosed facts." *Standing Comm. on Discipline of the United States Dist. Court v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995). "The courts . . . have consistently held that when a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995). Such speech is protected "no matter how unjustified and unreasonable the opinion may be or how derogatory it is." Restatement (Second) of Torts § 566, cmt. c.

A statement is less likely to be viewed as factual when it is "cautiously phrased in terms of the author's impression." *Cosby*, 17 Cal.App.5th at 686 (citing *Baker v. L.A. Herald Exam'r*, 42 Cal.3d 254, 261 (1986)); *see ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 797 (N.D. Cal. 2010). The identity of the speaker is also important in determining whether a statement is actionable. *See Franklin*, 116 Cal.App.4th at 389 (finding it significant that the author did not purport to be a lawyer stating opinions as legal truths in legal verbiage). Further, the "predictable opinion" doctrine asks "whether the statements were made by participants in an adversarial setting" in which "the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole"; in such circumstances, "language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Cosby*, 17 Cal.App.5th at 687; *see also Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1053 (S.D. Cal. 2020) (finding that "[f]or [MSNBC host Rachel Maddow] to exaggerate the facts and call OAN Russian propaganda was consistent with her tone up to that point, and the Court finds a reasonable viewer

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

would not take the statement as factual given this context").

Mesika complains about Petty stating "[t]he design of your ring flight is not yours. It's Steve Sheraton's. You moved a hole," and that Mesika's invention is "'[i]dentical to Rinkey Dinky." ECF No. 43 at ¶ 48. Petty is not alone in this opinion. RJN **Exhs. 36-41**. Steve Sheraton, the inventor of the Rinkey Dinky, displays the patent application on his phone at 1:59:34-2:00:50 of the Desolation Video and says "my god, you look at it, and it's my Rinkey Dinky, it's exactly my Rinkey Dinky, it's hilarious." Even if Mesika disagrees with Petty's conclusion about him "mov[ing] a hole," this is an opinion based on disclosed facts, namely the specifics of the ring flight patent application. Anyone can look at the application and come to their own conclusion.

Mesika complains that Petty calls him a "'patent troll," a "patent terrorist," and a "magic terrorist." ECF No. 43 at ¶¶ 50-51.[9] But then the Second Amended Complaint descends into a morass of confusion. It seems that Plaintiffs then allege that Defendants, without specifying who or in what videos, state that Mesika files 'fake' or 'fraudulent' patents, that Mesika is a 'magic terrorist,' that Mesika bullies and intimidates creators, that Mesika threatens lawsuits with no legal basis, Plaintiffs' products are copied from others, and that Mesika copied products such as Rinky Dinkey and other creators' inventions." *Id*. at ¶ 86. He also alleges that unspecified videos "state or strongly imply that Mesika 'threatened' or 'bullied' magician Mark Bennett and others by demanding exactly '$6 per unit,' insisting

---

[9] These are Sean Bogunia's statements, not Petty's, and Bogunia only called Mesika a "magic terrorist" and a "patent troll." Desolation Video at 2:29:48-2:29:57.

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

that their products be pulled from the market, and using non-existent or 'imaginary' patent rights to pressure them." *Id*. at ¶ 91.

These are all statements of opinion based on the same disclosed facts, specifically the extensive discussions about the weakness of Mesika's claim of patent protection and interviews with multiple magicians who have had bad experiences with Mesika and accused him of being a bully and a patent troll for his behavior. Mesika is free to disagree with these opinions, but he does not allege that any of the underlying facts are false, meaning these statements are not actionable. While the SAC alleges that Mesika never made the cited demands of Mark Bennett, he never refuted or even mentioned these demands when Petty requested pre-publication comment from him.[10] Furthermore, a statement expressing an opinion about the patentability of an alleged invention is not actionable. *See Smith v. Textile Rental Servs. Ass'n*, 2021 U.S. Dist. LEXIS 151475, *16-19 (N.D. Tex. Aug. 12, 2021) (finding statements that (1) the plaintiff is a '"problem' for 'the industry'" due to sending patent infringement demand letters and (2) the plaintiff was pursuing "frivolous lawsuits" were protected opinion). Furthermore, a mere misstatement of the plaintiff's "position with respect to the scope of its [patent] enforcement actions"

---

[10] ECF No. 43-2 is a purported list of defamatory statements in the Desolation Video, but this list does nothing to help Plaintiffs' claims because there are no allegations as to why any of these statements are false. ECF No. 43-14 is a purported "falsity chart" that attempts to provide these explanations as to a handful of statements, but this is an attachment to the SAC, and the alleged explanations of falsity are not contained with the SAC itself. In any event, most of the statements in this chart are either addressed elsewhere in the SAC or consist of non-actionable statements like "terrorist" or "bully."

is not actionable. *Id*. at *24. Calling someone a "patent troll" and a "threat to our industry" is non-actionable opinion and rhetorical hyperbole. *Kajeet, Inc. v. Qustodio*, 2019 U.S. Dist. LEXIS 241699, *27-29 (C.D. Cal. Aug. 22, 2019); *see Automated Transactions, LLC v. Am. Bankers Ass'n*, 172 N.H. 216 A.3d 71, 81-82 (N.H. 2019) (finding that calling someone a "patent troll" for aggressive enforcement methods is not actionable).

In the "Sued for Speaking Out" video, Petty says he stands by his opinion that Mesika is "magic's biggest litigious bully for the last three decades . . . He's a patent troll. He uses the courts to bully people into submission" (ECF No. 43 at ¶ 22), that Mesika is "further emboldened because that's what bullies do. They keep repeating the same behavior over and over again until they meet resistance" and Mesika is "trying to use his bully status to shut down any criticism. He's trying to use it to shut down free speech," and is "somebody who's trying to legally silence me by playing a game of who's got more money to burn." *Id*. at ¶ 34.

These are all based on disclosed facts and are not actionable. To the extent anything could be considered factual, it is literally true that Mesika is using this suit to shut down criticism and free speech. Filing this suit and arguing otherwise shows, to say the least, a dearth of self-awareness.

In Petty's "Crowdsourcing information for the Mesika v. Craig Petty SLAPP suit" video, Petty "disparag[ed] Plaintiffs' motives as a 'game' to 'burn money'" and "reinforce[d] his false narrative that Mesika is a 'bully' who is 'burning money.'" *Id*. at ¶¶ 135-37. Plaintiffs also complain that in this video, Petty asks for assistance from viewers in "gathering evidence to use in this suit." *Id*. at ¶¶ 135-41.

19

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

None of these are actionable.

### 4.2.4  Plaintiffs are Public Figures

Assuming, *arguendo*, any of the statements at issue are factual, Plaintiffs are at least limited-purpose public figures and must allege actual malice. In determining such status, a court should consider (1) "whether a public controversy existed when the statements were made"; (2) whether the statements were related to this controversy; and (3) whether the plaintiff voluntarily injected himself into the controversy. *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 925 (9th Cir. 2022).

Plaintiffs (though mostly Mesika) are extremely prominent figures within the magic community generally. Mesika has performed magic and lectured globally (RJN **Exhs. 1-9**), he has appeared in various documentaries and videos about magic (*id*. at **Exhs. 10-15**), celebrity magicians have performed his tricks (*id*. at **Exhs. 16-19**), which have been sold globally (*id*. at **Exhs. 20-27**), and his products have been reviewed by several people within the community (*id*. at **Exhs. 28-35**). Plaintiffs are also well-known for being patent trolls and ripping off other inventors, as several members of the community were publicly accusing him of such conduct specifically in connection with his ring flight invention at least a year before Petty published his Desolation Video. *Id*. at **Exhs. 36-40**. Plaintiffs, of course, voluntarily injected themselves into this controversy by seeking this degree of notoriety and aggressively threatening other inventors with litigation. Petty's statements are obviously connected to this public controversy, as he builds upon this pre-existing commentary by offering his opinions about Mesika's reported conduct and interviews some of the participants in this pre-existing controversy. Plaintiffs are

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

thus public figures and must satisfy the actual malice standard.

### 4.2.5  Plaintiffs Have Not Even Plausibly *Alleged* Actual Malice

As public figures, Plaintiffs must plausibly allege that Petty published his statements with actual malice, meaning actual knowledge of falsity or reckless disregard for the truth. This means a subjective awareness of a high likelihood the statements were false. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 n.30 (1984). This is a demanding standard. "A publisher does not have to investigate personally, but may rely on the investigation and conclusions of reputable sources." *Reader's Digest Assn. v. Superior Court*, 690 P.2d 610, 619 (Cal. 1984). "A publisher's failure to make an independent investigation of a story, even when the publisher is aware of the possible bias of its source, does not amount to reckless disregard in the absence of serious doubts about the story's truthfulness." *Murray v. Bailey*, 613 F. Supp. 1276, 1280 (N.D. Cal. 1985); *see St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (finding that defendant's reliance solely on a possibly hostile source when making accusations of criminal conduct did not constitute actual malice).

A public figure plaintiff must plausibly allege actual malice to withstand a motion to dismiss. Conclusory allegations of knowing falsity or reckless disregard are insufficient; instead, the court must "search for specific allegations of a speaker's mindset." *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017). A plaintiff fails to do if they do not "provide any specific allegations that would support a finding that [the Defendants] harbored serious subjective doubts as to the validity of [their] assertions." *Id*. at 1019.

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

Mesika's allegations related to actual malice are sparse. He notes that his pending patent application lists the "Ring Flight Revolution" and "Rinkey Dinky" devices as prior art (ECF No. 43 at ¶ 46) and that "Defendants possessed, read, or were highly aware of" Mesika's patent application (*id.* at ¶ 90). This does not matter because no one in the Desolation Video claimed that Mesika failed to mention these inventions as prior art; rather, they said he failed to give credit to their *inventors*, which is literally true. Mesika also alleges he "has a substantial portfolio of issued, approved patents" (*id.* at ¶ 47), despite Petty saying many of his patents do not proceed to registration. Again, though, it is literally true that many of Mesika's patent applications have not proceeded to registration. *See* **Exhibit D**. He does not allege that Petty knew or should have known that anything any of his sources said was false. Most importantly, Mesika does not mention the lengthy pre-publication exchange he had with Petty, in which Mesika did not provide any factual rebuttal, which heavily weighs against even a suggestion of actual malice. *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1082 (N.D. Cal. 2012). Further, nothing in any defamation case requires a layperson to have intimate knowledge of a patent application when engaging in commentary. Perhaps inventors are taxed with constructive knowledge of a prior patent, but journalists are not.

Regarding the "Sued for Speaking Out" video, Mesika alleges Petty had actual malice because he said that "bullies know how to run up a tab," that he was launching a crowdfunding campaign to help with the costs of his legal defense, and that he stood by his opinion that Mesika was a litigious bully. ECF No. 43 at ¶¶ 22, 24, 30. It is barely worth addressing such meager allegations; they come nowhere

22

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

near plausibly alleging actual malice.

### 4.3     The Trade Libel and False Light Claims Fail

Trade libel is "an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff." *Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543, 548 (1985). A trade libel claim is similar to defamation, but "'differs from it materially in the greater burden of proof resting on the plaintiff, and the necessity for special damages in all cases . . . [T]he plaintiff must prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special damages.'" *Muddy Waters, LLC v. Superior Court*, 62 Cal.App.5th 905, 925 (2021) (quoting *Erlich v. Etner*, 224 Cal.App.2d 69, 73 (1964)). Trade libel has more exacting standards than libel, and so this claim fails for the same reason the libel claim fails.

The false light similarly fails. When a plaintiff alleges defamation and false light claims based on the same facts, "the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Kapellas v. Kofman*, 1 Cal.3d 20, 35 (1969); *Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1264 (2017).

### 4.4     The Misappropriation Claims Fail

There is a well-recognized First Amendment right to use a person's likeness when publishing on matters of public interest. *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793 (1995); *Dora v. Frontline Video, Inc.*, 15 Cal.App.4th 536, 542 (1993). There is no question that Petty's use of Mesika's likeness falls within this right. His likeness is used to discuss an ongoing controversy dealing with

Mesika specifically within the magic community. As explained in Section 4.1, *supra*, there is a significant public interest in Petty's statements and the subject of his videos, and so the common law misappropriation claim fails.

The statutory misappropriation claim fails for the same reasons, as Cal. Civ. Code § 3344(d) provides a specific exception for uses of a person's name or likeness in connection with "news" or "public affairs." This exception broadly applies to expressive works, such as commentary, interviews, and discussions, directed at a particular audience on a matter of interest to that audience. *Dora*, 15 Cal.App.4th at 545-46; *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 415-17 (2001). A § 3344 claim additionally requires that a plaintiff's likeness be used "exclusively" for commercial gain (*Leidholt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988)), and there is no allegation of such exclusively commercial use; the videos themselves show that Petty published his videos to bring attention to Mesika's abusive litigation tactics.

### 4.5    The California Unfair Trade Practices Act Claim Fails

This claim appears confused. While allegedly brought under common law and Cal. Bus. & Prof. Code § 17200, Plaintiff only discusses the statute. There is nothing specific alleged against Petty other than that "Defendants' defamation and other actions" constitute a violation of the statute. ECF No. 43 at ¶ 188. Plaintiff then refers to "antitrust violations" that a single Defendant (he doesn't say which) has engaged in, along with the unspecified Defendant's "dominant market position and its anticompetitive conduct," which indicates that Plaintiff meant to assert this claim, at least in part, solely against Penguin. There are no facts alleged as to Petty

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK

that even vaguely relate to antitrust violations and anticompetitive conduct.

As for the remaining conduct (Plaintiffs only refer to alleged defamation), this claim fails for the same reason as the defamation claims. As with the false light claim, a 17200 claim based on the same conduct as a defamation claim is superfluous. It must be dismissed if the defamation claim is subject to dismissal. *Medical Marijuana, Inc. v. ProjectCBD.com*, 46 Cal.App.5th 869, 895–96 (2020).

### 4.6    The Cal. Bus. & Prof. Code § 17500 Claim Fails

This claim can quickly be dispensed with. Cal. Bus. & Prof. Code § 17500 does not create a private right of action, and so Plaintiffs cannot bring a claim for its violation. *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998). A plaintiff can premise a 17200 claim on a violation of 17500, but that is not what Plaintiffs have done. Even if they had, this claim is premised on the same "defamation plus unspecified conduct" allegation as the 17200 claim (ECF No. 43 at ¶ 196), and thus fails for the same reasons their defamation claims fail.[11]

### 5.0    CONCLUSION

For the foregoing reasons, the Court should grant this Motion, dismiss all of Plaintiffs' claims asserted against Defendant Craig Petty with prejudice, and award Petty his costs and attorneys' fees under Cal. Code Civ. Proc. § 425.16(c), to be substantiated in a separate motion, but at this point have reached approximately $75,000.

---

[11] Plaintiffs also assert a declaratory relief claim, but it simply seeks a declaration that Defendants have engaged in the previously complained-of conduct. This claim fails because all his other claims fail.

RANDAZZA | LEGAL GROUP

Dated: May 1, 2026.       Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza, SBN 269535
Alex J. Shepard, SBN 295058
8991 W Flamingo Rd., Suite B
Las Vegas, NV 89147

*Attorneys for Defendant*
*Craig Petty*

Case No. 2:25-cv-07943-MWF-MBK

## **<u>CERTIFICATE OF SERVICE</u>**

I CERTIFY that on May 1, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notice of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza

Notice and Memorandum in Support of Anti-SLAPP Special Motion to Strike
2:25-cv-07943-MWF-MBK