Frederic M. Douglas (Calif. State Bar # 212778)
Attorney At Law
15333 Culver Drive, Suite 340
Irvine, California 92604-3051
Tel: (949) 293-0442
Fax: (949) 203-8768
fdouglas@cox.net

Attorney for Plaintiffs
MESIKA MAGIC & YIGAL MESIKA

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MESIKA MAGIC, a California corporation, YIGAL MESIKA, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>PENGUIN MAGIC, INC., a Nevada corporation, CRAIG PETTY, a resident of the United Kingdom, DOES 1-10, inclusive,<br><br>Defendants | Case No.: 2:25-cv-07943-MWF-(MBKx)<br><br>**Opposition to Defendant Craig Petty's Motion to Dismiss Second Amended Complaint**<br><br>Date: June 10, 2026<br>Time: 10:00 A.M.<br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A, 5th Floor |

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS - 1**

## Table of Contents

I.      INTRODUCTION....................................................................... 6

II.   FACTUAL BACKGROUND.................................................................. 7

  A.  Yigal Mesika's Reputation.......................................................... 7

  B.  The Videos at Issue................................................................ 7

    a.  "The Desolation of Yigal Mesika" – July 14, 2025............................. 7

    b.  "Craig Petty Discusses Controversy With Yigal Mesika" – July 25, 2025... 8

    c.  "Sued for Speaking Out" – February 13, 2026................................. 9

    d.  "Crowdsourcing information for the Mesika v. Craig Petty SLAPP suit" –

    March 1, 2026 .............................................................. 10

  C.  The Parties and Penguin's Commercial Marketplace.......................... 11

III.    LEGAL STANDARDS................................................................. 11

  A.  Rule 12(b)(6)...................................................................... 12

  B.  Anti-SLAPP Under Federal Procedure........................................... 12

IV.   THE ANTI-SLAPP MOTION MUST BE DENIED..................................... 12

  A.  Section 425.17(c) Commercial-Speech Exemption Applies................... 12

  B.  The Motion Conflicts with Federal Procedure (Metabolife)................ 13

  C.  Even if Anti-SLAPP Applied, Petty Fails Prong One........................ 14

  D.  Petty Fails Prong Two: Plaintiffs Easily Show a Probability of Prevailing 14

V.    THE SAC STATES ALL CLAIMS UNDER RULE 12(b)(6)........................... 16

  A.  Defamation, Trade Libel, and False Light................................... 16

    a.  Public Figure Issue........................................................... 16

    a.  Public Interest Issue......................................................... 19

    b.  The Statements are Provably False........................................... 20

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 2**

c.   Statements of and Concerning Mesika Magic.............................. 26

a.   Opinion can be Actionable........................................... 27

a.   Malice is Adequately Alleged........................................ 27

B.   Misappropriation of Likeness (§ 3344 and Common Law)..................... 29

C.   Unfair Competition (§ 17200) and False Advertising (§ 17500)............. 29

D.   CONCLUSION............................................................... 29

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Coastal Abstract Serv., Inc. v. First Am. Title*, 173 F.3d 725 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 14

*Communications, Inc v. Connaughton*, 491 U.S. 657, 689 fn. 36, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) . . . . . . . . 29

Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Dyer v. Childress*, 147 Cal.App.4th 1273, 55 Cal.Rptr.3d 544 (Cal. App. 2007) . . . . . . . . . . . . . . . . . . . . . 20

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974), 94 S.Ct. at p. 3009, 41 L.Ed.2d at p. 808. . . . . . . . . . . 17, 18

*Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450 (2012) . . . . . . . . . . . . . . . . . . . . . . 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 12

*Melaleuca, Inc. v. Clark* 66 Cal.App.4th 1344, 1365 (Cal. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Mosesian v. McClatchy Newspapers*, 233 Cal.App.3d 1685, 1694 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Newsom v. Fox News Network, LLC*, N25C-06-251 SPL, slip opinion, p. 22, lines 8-11 (Del. Super. Apr 30, 2026) . 17, 28

*Palin v. New York Times Co.*, 940 F.3d 804, 813 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Philadelphia Newspapers, Inc v. Hepps*, 475 U.S. 767, 768-769, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) . . . . . . . . . 17

Reader's Digest Assn. v. Superior Court, 208 Cal.Rptr. 137, 142, 37 Cal.3d 244, 253-254, 690 P.2d 610 (Cal. 1984) . 18

*Roberts v. McAfee, Inc.*, 660 F.3d 1156 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*St Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) . . . . . . . . . . . . . . . . . . . . 28

*Tilkey v. Allstate Insurance Company*, 56 Cal.App.5th 521, 554-5 (2020) . . . . . . . . . . . . . . . . . . . . . . . . 27

*US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1043 (Del. Super. 2023) . . . . . . . . . . . . . . . . . 29

*Varian Medical Systems, Inc. v. Delfino*, 6 Cal.Rptr.3d 325, 344, 113 Cal.App.4th 273 (Cal. App. 2003) . . . . . . 7, 18

*Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 167 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Statutes**

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS - 4**

Cal. Civ. Code § 3344(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

California Code of Civil Procedure Section 425.17(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Rules**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

L.R. 11-6.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

L.R. 11-6.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS - 5**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Petty has unloaded a large pile of irrelevant exhibits upon Plaintiffs and this Court. The Motion comprises 35 filed pages, with large exhibits. On top of this, Petty submits separately a Request for Judicial Notice (Dkt. No. 51) with 42 individual exhibits, most without proper authentication, amounting to 334 pages, in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The memorandum, Dkt. No. 50, expanded the 7,000-word briefing limit from L.R. 11-6.1 to unfairly give an advantage in briefing his Motion. It is noted that Petty's motion brief, Dkt. No. 50 lacked the certificate of compliance required by L.R. 11-6.2, while Petty's brief seems to have a word count of 7,246. Despite the expansive volume wielded against the Second Amended Complaint, as his co-defendant states, "But volume is not sufficiency." Dkt. No 49, Defendant Penguin Magic, Inc.'s Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities, page 11 of 35 (internal page 1), lines 7-8.

## II.    FACTUAL BACKGROUND

### A. *Yigal Mesika's Reputation*

A California court found that plaintiffs who make equipment for a niche market, but do not advertise or sell to the general public, were found not to be all-purpose public figures as they lacked pervasive involvement in the affairs of society.[1] Mesika's reputation is tied to the commercial sale of his inventions within a niche community, which does not amount to the general fame or notoriety required to strip Plaintiffs of private figure protections.

### B. *The Videos at Issue*

#### a.   "The Desolation of Yigal Mesika" – July 14, 2025

He attempts to reference a text message exchange between Craig Petty and Yigal Mesika, but studiously avoids providing the full contents of the text message chain. Filed concurrently is the Declaration of Yigal Mesika, producing that text message conversation. Below, the details of that conversation, wherein Petty acknowledged that Yigal Mesika's patent application did indeed cite prior art that he claims in the later video Mesika intentionally hid and thus Mesika's invention was "stolen." Petty knew the falsity of his statements as of June 27, 2025, but contemplated the video for two weeks, then published knowingly false statements on July 14, 2025.

Petty could have produced the text message conversation in full, but strategically did not. This is not the first time that Petty strategically burdened this Court while withholding evidence contrary to his assertions.

On February 18, 2026 Petty filed a Motion for Extension, seeking to avoid

---

[1] See, *Varian Medical Systems, Inc. v. Delfino*, 6 Cal.Rptr.3d 325, 344, 113 Cal.App.4th 273 (Cal. App. 2003).

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**

responding to the First Amended Complaint, claiming that Petty did not know that he was properly served.[2] In fact, five days earlier, on February 13, 2026, Craig Petty published a YouTube video, "Sued For Speaking Out," and a GiveSendGo campaign, displaying the first image of him holding the First Amended Complaint, as stating at around 1:17 through 1:25, "I was served with a 105-page complaint . . . [it] was hand-delivered to my office. 105 pages."[3] If Petty had complied with L.R. 7-3, I could have informed counsel of Petty's public display of himself holding the served complaint.[4] Petty's penchant for not being truthful is established.

### b.  "Craig Petty Discusses Controversy With Yigal Mesika" – July 25, 2025

The description of this video publishes a defamatory statement against Plaintiffs, "Erik Tait, for the first time, shares a story of when he wrote ad copy for Yigal and how it didn't end the way he had hoped." The Penguin Magic video, and the channel overall, is branded with Penguin Magic's branded marks, is monetized through YouTube and embedded links, linked directly to Penguin Magic's product pages, including products competing with Plaintiffs and used to drive traffic to Penguin Magic's platform and sales funnels.[5] This video also republishes Craig Petty's defamatory "The Desolation of Yigal Mesika" video via the displayed active link, and excerpts from Petty's video.

The Penguin Magic video was published on their official Penguin Magic YouTube channel that prominently displays Penguin Magic's name and logo, and that links viewers directly to Penguin Magic's retail website and product pages. Beneath or near the videos, viewers are encouraged to visit Penguin's site, and links to products,

---

[2] See, Petty Motion for Extension, Dkt. No. 33, p. 3, lines 12-13.

[3] See, Plaintiffs' Opposition to Petty Motion for Extension, Dkt. No. 36, p. 2, lines  19-23, Exhibit 2 to Douglas Declaration, Dkt. No. 36-1. See, also, SAC, Dkt. No. 43, paragraph 20, Exhibit F, Dkt. No. 43-6.

[4] See, Douglas Declaration, Dkt. No. 36-1, paragraph 13.

[5] See. *Id.*, paragraph 45, Exhibit M to SAC.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 8 -**

including Craig Petty's releases and competing products, appear in the description or on the same page.[6]

False statements made in the Penguin Magic video are provided in Exhibit C to the SAC, Dkt. No. 43-3, and discussed below.

### c.    "Sued for Speaking Out" – February 13, 2026

In this February 13, 2026 video Petty doubles down on the same defamatory statements from his "Desolation of Yigal Mesika" video, after having been served with the First Amended Complaint, and demonstrated actual malice.[7]

Petty's "Sued For Speaking Out" video demonstrated actual malice when he publicly stated "I stand by that opinion" immediately after confirming that he was "served with a 105-page complaint," which explicitly detailed the falsity of his claims. He published these February 2026 statements with actual knowledge of the falsity of his defamatory statements. Petty further demonstrated actual malice in that he possessed the June 25-27, 2025 text message exchange wherein he admitted that Mesika's patent application properly cited prior art that Petty said was hidden, and that Mesika in fact filed his application before public disclosure.

Petty compounded actual malice while inciting others to attack Mesika, including when Petty explicitly instructed his viewers to amplify the attack on Mesika, at about 7:56 through about 8:22, "Let's all talk about it as a community. Let's have a discussion. Share this video. Yes, but talk about it. If you're on Facebook, make a Facebook post. If you're in a community somewhere, make a post. If you have a blog, write a blog about this. If you if you're a vlogger, make a vlog about this. Make a

---

[6] See, *Id.*, paragraph 93.
[7] See, *Id.*, paragraphs 20-23.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 9**

podcast about this. Discuss this with your friends. Discuss this with fellow magicians."[8]

Defendants continue an ongoing malicious campaign to destroy Plaintiffs' reputation, exhorting others to spread the false statements across the Internet and elsewhere.[9]

The comments on the February 13, 2026 video demonstrate that the Defendants are inflicting direct, continued commercial damage with all of these videos. Commenters have stated, "I threw out my Yeigal Mesika stuff."; "I will personally not buy any of his products anymore. . . .Imagine if the entire community stopped buying his stuff."; "The entire community needs to boycott Meseka. I'll never buy his products."; "No more items for me!"; and other calls for boycott and commercial harm.[10]

### d. "Crowdsourcing information for the Mesika v. Craig Petty SLAPP suit" – March 1, 2026

This video demonstrates ongoing malice by Craig Petty. After being served with a 105-page complaint detailing the falsity of his statements and the economic damage his statements caused, Pety continues to produce videos mocking the legal process, disparaging Plaintiffs' motives as a "game" to "burn money" and actively recruiting the magic community to participate in his harassment campaign.[11] Despite having the published patent application in his hand, which he claimed in his video to have already reviewed, which he admitted cited the relevant prior art in his June 25-27 text messages, despite having the falsity of his statements demonstrated in the First Amended Complaint, Petty continued to defame

[8] See, *Id.*, paragraph 24.
[9] See, *Id.*, paragraph 25.
[10] See, *Id.*, paragraph 33, Exhibit I, Dkt. No. 43-9.
[11] See, *Id.*, paragraphs 135-140.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 10**

Plaintiffs' character, portraying Mesika as a bully abusing the legal system, seeking to bankrupt his critics, rather than the truth that Plaintiffs are legitimately protecting their intellectual property and business interests over the years.[12] Petty did not merely wrongfully claim that Mesika was threatening litigation over his pending patent application, but falsely claimed that Mesika had been falsely terrorizing others with lawsuits for three decades, with knowledge that Mesika's patents were not valid.

### C. *The Parties and Penguin's Commercial Marketplace*

Plaintiff Mesika Magic is a California magic-product company founded by Plaintiff Yigal Mesika, an inventor internationally known for innovations such as LOOPS®, the Tarantula device, and other proprietary magic apparatus.

Petty is a magician,  entertaining and teaching, while selling products in the magic industry. Petty announces commercial activities in the magic industry in cooperation with Penguin Magic, Inc.[13] Penguin Magic, Inc. is a commercial online retailer that sells magic products, operates retail channels, produces monetized social-media content, produces online videos promoting magic products, and has introduced house-brand products, including "TIES" that directly compete with Plaintiffs' products.[14]

### III.   LEGAL STANDARDS

---

[12] See, *Id.*

[13] See, SAC, Dkt. No. 43, paragraph 4.

[14] See, e.g., Penguin Magic's website, listing "TIES" at https://www.penguinmagic.com/p/17608. See, SAC, Dkt. No. 43, paragraphs 14, 37, 116, 117, and 124.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 11**

## A. Rule 12(b)(6)

A claim survives dismissal when it alleges sufficient factual matter, accepted as true, to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences are drawn in the Plaintiff*s*' favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## B. Anti-SLAPP Under Federal Procedure

California's Anti-SLAPP statute applies in federal court only to the extent it does not conflict with FRCP 8, 12, or 56. *Metabolife*, 264 F.3d at 845–46; *Planned Parenthood*, 890 F.3d at 833. Courts may not require plaintiffs to provide "summary-judgment-type evidence" without discovery. *Metabolife*, 264 F.3d at 846. Determining the internal scope of Erik Tait's employment with Penguin Magic, the exact contractual relationship with Craig Petty, and Penguin Magic's internal monetization and algorithmic online marketplace suppression metrics requires discovery that Plaintiffs cannot obtain yet, but would be in the hands of Defendants.

## IV.    THE ANTI-SLAPP MOTION MUST BE DENIED

### A. Section 425.17(c) Commercial-Speech Exemption Applies

California Code of Civil Procedure Section 425.17(c) exempts any claim arising from:

1. A statement by a person **primarily engaged in selling goods or services**,
2. About a **business competitor's goods or services**,
3. Made for the purpose of **promoting or securing sales**, or
4. Made in the course of delivering the person's goods or services.

(*Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010).)

Penguin Magic and Petty satisfies every element:

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
- 12 -

1. Penguin operates an online retail marketplace.[15]

2. Plaintiffs sell competing magic products.[16]

3. The challenged videos and posts disparage Plaintiffs' inventions and professional reputation.[17]

4. The videos promoted Penguin's competing products, including TIES,[18] with embedded product links and monetized content.[19]

Penguin Magic is a direct commercial competitor[20] and Petty is aligned in business with Penguin Magic.[21] The videos were not "public interest journalism," they were monetized commercial content, wrapped in Penguin Magic's branding, designed to disparage Plaintiffs' competing LOOPS products and drive sales to Penguin Magic's house-brand TIES products via embedded commercial links.[22]

This statutory exemption alone mandates denial of the Anti-SLAPP motion.

### B. *The Motion Conflicts with Federal Procedure (Metabolife)*

Under *Metabolife* and *Planned Parenthood*, the Court **may not** impose a summary-judgment evidentiary burden where discovery has not occurred. This independently requires denial.

---

[15] See, *Id.*, Dkt. No. 43, paragraphs 14, 37, 63, 94, 101, 103, 104, 108, 109, 116-125, 134.

[16] See, *Id.*, Dkt. No. 43, paragraphs 9, 60, 93, 94, 100, 101, 123,

[17] See, *Id.*, Exhibits B (Dkt. No. 43-2, C (Dkt. No. 43-3), and N (Dkt. No. 43-14).

[18] See, e.g., Penguin Magic's website, listing "TIES" at https://www.penguinmagic.com/p/17608; See, SAC, Dkt. No. 43, paragraphs 57, 60, 62, 101-103, 106, 107, 204.

[19] See, *Id.*, paragraphs 23, 43, 45, 52, 54, 141.

[20] See, *Id.*, paragraphs 42, 43, 45, 60. 61, 63, 205.

[21] See, *Id.*, paragraph 41 (discussing Defendants' conspiracy).

[22] See, *Id.*, paragraphs 14, 40, 57, 60, 62, 100, 101-103, 106, 107, 113-115, 126-128, 204, and Exhibit Q, Dkt. No. 43-17 and Exhibit R, Dkt. No. 43-18.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 13**

### C. *Even if Anti-SLAPP Applied, Petty Fails Prong One*

Prong one requires Petty to show that the claims "arise from" protected activity. A California Court of Appeal instructed courts to examine the principal thrust or gravamen of the claim. *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 466 (2012).

Here, the gravamen is commercial conduct, including marketplace manipulation; product copying; suppression of searches; algorithmic steering; misappropriation of data; and commercial exploitation of Plaintiffs' likeness. These acts are not protected activities under § 425.16.

Moreover, the challenged statements constitute commercial advertising and promotion, not political or public discourse, failing prong one under *Coastal Abstract Serv., Inc. v. First Am. Title*, 173 F.3d 725, 735 (9th Cir. 1999) ("While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.").

### D.  *Petty Fails Prong Two: Plaintiffs Easily Show a Probability of Prevailing*

Plaintiffs' SAC includes exhibits demonstrating Petty's direct role in publishing and monetizing the content;[23] the falsity of statements (e.g., that Plaintiffs filed "fake patents," made fraudulent threats);[24] evidence of malice (profit motive, disregard of contrary facts);[25] commercial harm (lost sales, lost distributors, suppressed listings);[26]

---

[23] See, *Id.*, paragraph 23, 144, exhibit 2, thereto.

[24] See, *Id.*, Exhibits B (Dkt. No. 43-2), C (Dkt. No. 43-3), and N (Dkt. No. 43-14), thereto. See, Mesika Declaration, Exhibit 1, filed concurrently.

[25] See, *Id.*, paragraphs 21, 23, 24, 40 and 135. See, SAC, Dkt. No. 43, Exhibit N. See, malicious statements reproduced in SAC, Exhibits B-E thereto. See, e.g., Exhibit B, timestamp 1:54, where the false claim that Mesika's patent application is a copy of the

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 14 -**

copying of Plaintiffs' products;[27] and consumer confusion[28] and boycotts[29] fomented by Petty.

Petty's video features Craig Petty falsely claiming that Mesika does not credit "Rinky Dinky" as part of a history of not crediting other creators, while Mesika publicly credited the "Rinky Dinky" as prior art in his published patent application.[30]

Under *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011), this showing of false statements above exceeds the "potential merit" standard and defeats prong two. Further details regarding false statements are provided below.

Craig Petty is not an independent actor in the scheme to disparage Mesika and divert sales to Penguin Magic's TIES product. As shown in Exhibit G, Dkt. No. 43-7, a transcript of Craig Petty's own video, "Penguin Magic At Blackpool 2026," from February 14, 2026, he told the public, "come over to the Penguin booth, see me and Eric" (about 43:22) and Tait stated, "Yep. You and I are on the booth." About 39:27.[31]

Petty also publicly stated in his own video, "FISM Roundup, Video Takedowns & LTS of Convention News," Petty established his role as a company insider/agent by

---

"rinky dinky." Compare with paragraphs 46-49, 67-70 of SAC, and Exhibit A thereto, demonstrating that Mesika disclosed the "rinky dinky" in the patent application openly.

[26] See, *Id.*, paragraphs 31, 57, 96, 97, 99, 105, 108, 129, 134, 160, 168, 176, 209. See, Exhibit P, Dkt. No. 43-16.

[27] See, *Id.*, paragraphs 39, 57, 60, 102-104, 108, 109, 113-115, 118, 120, 121, 125-127, 190, 200, 210, 213, 215.

[28] See, *Id.*, paragraphs 88 and 215.

[29] See, *Id.*, paragraph 33, Exhibit I, Dkt. No. 43-9. See also, paragraphs 31, 33, 62, 100, 151, 160, 168, 176, 182.

[30] See, Exhibit C to SAC, Dkt. No. 43-3, page 2, lines 16-19. See, also, Exhibit B, Dkt. No. 43-2, time stamp 1:54, where the false claim that Mesika's patent application is a copy of the "rinky dinky." Compare with paragraphs 46, 67-70 of SAC, Dkt. No. 43, and Exhibit A (Dkt. No. 43-1) thereto, demonstrating that Mesika disclosed the "rinky dinky" in the patent application openly. See, Exhibit 1 to the Mesika Declaration, filed concurrently.

[31] See also, SAC, Dkt. No. 43, paragraph 26.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 15**

using the corporate "we" when stating, "there was no Penguin booth on Monday at all because we had nothing to sell uh Tuesday we're going into it with nothing either."[32] Petty stated in this July 22, 2025 video that he was representing Penguin Magic. Specifically, from about 19:45 through 20:17, he stated, "Um I'll be on the Penguin booth. So, I'm actually going to be there on behalf of Penguin Magic on the Penguin booth.[33] Petty himself proves that he and Penguin Magic have a deeply integrated commercial partnership, not a mere vendor relationship.

## V.   THE SAC STATES ALL CLAIMS UNDER RULE 12(b)(6)

### A.  Defamation, Trade Libel, and False Light

#### a.  Public Figure Issue

Petty argues that because Plaintiffs pleaded having "developed a fine reputation"[34] and thrust themselves into industry disputes (such as sending cease and desist letters),[35] Mesika is at least a limited-purpose public figure.[36] Petty states "[t]hat should be enough."[37]

However, that is not enough, especially as Petty does not commit to what type of public figure is Yigal Mesika. Public figures in the context of those needing to prove actual malice defamation may be public officials, general-purpose public figure, or a

---

[32] See, *Id.*, paragraph 16.
[33] See, *Id.*, paragraphs 15-17, and Exhibits G, Dkt. No. 43-7, and S, Dkt. No. 43-19.
[34] *See*, Petty Motion, Dkt. No. 50, page 10 of 35 (internal page 2), lines 3-7.
[35] *See*, *Id.*, page 28 of 35 (internal page 20), lines 18-20.
[36] *See, Id.*, lines 3-4.
[37] *Id.*, page 10 of 34 (internal page 2), line 7.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 16 -**

limited-purpose public figure.[38] A public official, for example, California Governor Gavin Newsom, may still validly allege actual malice.[39]

Yigal Mesika is a private individual, well-known in the niche magic industry, but not a general-purpose public figure, nor even a limited-purpose public figure in relation to the allegations by Defendants that Mr. Mesika must show actual malice in relation to a matter of public interest.

Some individuals "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974), 94 S.Ct. at p. 3009, 41 L.Ed.2d at p. 808. This category is designated as an "all purpose" public figure. (418 U.S. at p. 351, 94 S.Ct. at p. 3013, 41 L.Ed.2d at p. 812.) An all-purpose public figure is not lightly assumed; for a plaintiff to be deemed an all-purpose public figure, there must be "clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society...." (418 U.S. at p. 352, 94 S.Ct. at p. 3013, 41 L.Ed.2d at p. 812.).

The Supreme Court distinguished the Gertz opinion, stating: "Here, we hold that, at least where a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false."[40] Defendants here are not newspapers, and not "media" as contemplated in 1986, the year of the *Philadelphia Newspapers, Inc. v. Hepps* opinion.

"Unlike the 'all purpose' public figure, the 'limited purpose' public figure loses certain protection for his reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy." *Reader's Digest Assn. v.*

---

[38] *Mosesian v. McClatchy Newspapers*, 233 Cal.App.3d 1685, 1694 (1991).

[39] *Newsom v. Fox News Network, LLC*, N25C-06-251 SPL, slip opinion, p. 34, lines 6-7 (Del. Super., Apr 30, 2026)("Thus, under the standard applicable here, the facts are reasonably susceptible to a finding of actual malice").

[40] *Philadelphia Newspapers, Inc v. Hepps*, 475 U.S. 767, 768-769, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 17**

*Superior Court*, 208 Cal.Rptr. 137, 142, 37 Cal.3d 244, 253-254, 690 P.2d 610 (Cal. 1984).

Plaintiffs who make equipment for a niche market, but do not advertise or sell to the general public, were found not to be all-purpose public figures as they lacked pervasive involvement in the affairs of society.[41] Mesika's reputation is tied to the commercial sale of his inventions within a niche community which does not amount to the general fame or notoriety required to strip Plaintiffs of private figure protections.

The Supreme Court established the legal standard to define limited-purpose public figures as those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved."[42] Plaintiffs did not interject themselves into any public controversy, Petty dragged them into public controversy he decided to manufacture.[43] Even if one considers Petty's issue to be a public issue, "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 167 (1979). Thus, the Defendants "must show more than mere newsworthiness to justify application of the demanding burden of [pleading the heightened actual malice standard]." *Id.* at 167-68.

Enforcing intellectual property rights through private legal channels does not mean that Plaintiffs voluntarily injected themselves into a public controversy.[44] Petty publishing his defamatory video in July 14, 2025, generating public attention, was not participating in a public controversy, he created a public controversy, grounded on his intentionally false statements, such as saying that the Mesika did not cite prior art,

---

[41] See, *Varian Medical Systems, Inc. v. Delfino*, 6 Cal.Rptr.3d 325, 344, 113 Cal.App.4th 273 (Cal. App. 2003).

[42] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).

[43] See, Declaration of Yigal Mesika (the "Mesika Declaration"), filed concurrently, paragraphs 29, 36, and Exhibit 1 to the Mesika Declaration, June 25-27, 2025 text message conversation.

[44] See, SAC, Dkt. No. 43, paragraph 91

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 18 -**

despite his admission in June 25-27, 2025 text messages that he knew Mesika's published application referenced the specific prior art that he claimed in his video Mesika intentionally did not disclose. [45]

Petty knew that his statements in the Penguin Magic video, and in the prior Craig Petty video, were false or acted in reckless disregard to the truth. *Jackson v. Paramount Pictures Corp.*, 68 Cal.App.4th at 35 ("We agree with the court's assessment. The New York Times Co. v. Sullivan standard does not require that the reporter hold a devout belief in the truth of the story being reported, only that he or she refrain from either reporting a story he or she knows to be false or acting in reckless disregard of the truth.").

### a.  Public Interest Issue

Defendants' defamation was not a matter of journalistic reporting, as neither Erik Tait of Penguin Magic, nor Petty have any journalism credentials, nor was the content of the videos part of any pre-existing genuine public interest debate. Instead, Defendants conspired to make a coordinated, bad-faith commercial attack to destroy Plaintiffs' reputation so that Penguin Magic and Petty could step into the void when Mesika's sales are depleted and Penguin Magic can sell house-brand knockoffs at the conventions and other events Erik Tait and Petty jointly operate.[46] Petty holds himself out as a Penguin Magic insider/agent.[47]

Defendant Petty does not identify a valid matter of widespread public interest,

[45] See, also, *Id.*, paragraph 46 ("Petty further republishes and ratifies Sean Bobunia's false claim that Mesika's 'patent' was 'bogus' because 'he didn't list any prior art of any kind.'").

[46] See, *Id.*, paragraphs 41, 58. See, *Id.*, paragraph 54 ("the joint effort by Craig Petty and Penguin Magic to disparage and harm Plaintiff and Plaintiffs' business activities to gain an unfair advantage over Penguin Magic's competitors, the Plaintiffs.").

[47] See, *Id.*, paragraphs 16-19 (referencing a Petty video where he views himself as part of the Penguin Magic corporate team). See, *Id.*, paragraphs 27-29, 54

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 19**

but a matter of a dispute between Plaintiffs and Defendants and maybe, Mark Bennett.[48] See, *Dyer v. Childress*, 147 Cal.App.4th 1273, 1280, 55 Cal.Rptr.3d 544 (Cal. App. 2007) ("The fact that 'a broad and amorphous public interest' can be connected to a specific dispute" is not enough.). The "Defendants cannot merely offer a 'synecdoche theory' of public interest, defining their narrow dispute by its slight reference to the broader public issue." *Filmon.com, Inc.*, at 152. In other words, Defendants cannot expand the tree of their specific dispute with Plaintiffs as a matter of public interest about the entire forest.

### b.  The Statements are Provably False

Exhibits B (Dkt. No. 43-2, C (Dkt. No. 43-3), and N (Dkt. No. 43-14) to the SAC, provide tables referencing a portion of the false statements published by Craig Petty and Penguin Magic, and republished by Penguin Magic.

Petty made statements in his July 14, 2025 "The Desolation of Yigal Mesika" video that Mesika's published patent application, US-2024-0416255-A1 at Exhibit A to the SAC, Dkt. No. 43-1, that Mesika stole the idea of the invention without crediting the creator of the "Rinkey Dinky" device.[49]

As shown in Paragraphs [0006] and [0007] of the published application in Exhibit A to the SAC, Mesika's patent application publicly referenced the "Ring Flight Revolution" and the "Rinkey Dinkey" device in the section entitled, "Description of Related Art." It is without question that these two prior devices were volunteered to the Patent Office, publicly in Mesika's patent application, filed on June 13, 2024, and published on December 19, 2024.

[48] See, Mesika Declaration, concurrently filed, paragraphs 32 ("we're working out an amicable path forward. No drama, no lawsuits."), 34 ("I haven't threatened litigation."), and 35 ("I know you aren't threatening to sue Mark."). See Declaration of Yigal Mesika, Dkt. No. 28-1 ("Mesika Declaration"), paragraphs 19-28, 30-38.
[49] See, SAC, Dkt. No. 43, paragraphs 89-90.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 20**

Petty acknowledged as much in his text communications with Yigal Mesika in June 25-27, 2025.[50] On June 26, 2025, as shown in these text messages, Mesika acknowledged the existence of the Ring Flight device and told Petty that the "version I developed isn't just another Ring Flight-it's a complete redesign with specific innovations that were recognized and protected under patent law after a long and detailed review process."[51]

Further in this text message chain Craig Petty confirmed on June 26, 2025 that "I've looked at your patent application and I see the innovations you are referencing especially in comparison to AirFlight."[52] Petty confirmed that he saw in the published application that Mesika's application mentioned the prior art.

Further on June 26, 2025 Mesika told Craig Petty that he had been communicating with Mark Bennett and that "Everyone recognizes the overlap, and we're working out an amicable path forward. No drama, no lawsuits-just professionals sorting out a similarity."[53]

Mesika further stated to Petty that "Also air flight is mentioned at my patent even before it's exists."[54]

Yet further on June 26, 2025 Mesika stated, "I haven't threatened litigation."[55]

In response, Craig Petty stated "I know that your patent mentions an AirTag towards the end." He later stated in the same text message, "I know you aren't threatening to sue Mark."[56] Petty confirmed on June 27, 2025 that he understood that

---

[50] See, Declaration of Yigal Mesika (the "Mesika Declaration"), filed concurrently, paragraphs 29, 31, and 36, and Exhibit 1 to the Mesika Declaration, June 25-27, 2025 text message conversation.

[51] See, Mesika Declaration, paragraph 30, and Exhibit 1 to the Mesika Declaration.

[52] See, *Id.*, paragraph 31 and Exhibit 1 thereto.

[53] See, *Id.*, paragraph 32, and Exhibit 1 thereto.

[54] See, *Id.*, paragraph 33, and Exhibit 1 thereto.

[55] See, *Id.*, paragraph 34, and Exhibit 1 thereto.

[56] See, *Id.,* paragraph 35, and Exhibit 1 thereto.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 21**

Mesika was not threatening litigation against Mark Bennett, contradicting his and Penguin Magic's later allegations that Mesika is a litigious bully[57] and a patent terrorist[58] or a magic terrorist.[59]

Despite this clear acknowledgement that Mesika did not "steal" his invention, did not hide the prior art, such as Airflight and Rinkey Dinky, and that Mesika was not threatening litigation, on July 14, 2025 Petty made knowingly false statements contrary to his knowledge, and he repeated those false statements in Penguin Magic's July 25, 2025 video republishing and ratifying those false statements.

Petty's video features Craig Petty falsely claiming that Mesika does not credit "Rinky Dinky" as part of a history of not crediting other creators, while Mesika publicly credited the "Rinky Dinky" as prior art in his published patent application.[60]

It is without question that Craig Petty made these statements; the statements were false, and Plaintiffs have a high likelihood of prevailing in proving the falsity of these statements.

The false statements do not stop there. Petty republished false statements from third parties, as shown in Exhibits B, C, and N to the SAC. Petty himself stated at 1:18 of his video that Mesika is a "patent troll" and "takes intellectual property by stealing it. They're claiming it theirs and then they go after any possible entity that might have

---

[57] See, SAC, paragraphs 22, 34, 64, and 136.
[58] See, *Id.,* paragraph 50
[59] See, *Id.,* paragraph 51, 86.
[60]See, Exhibit B to the SAC, Dkt. No. 43-2, timestamp 1:54, where Petty publishes the false claim that Mesika's patent application is a copy of the "rinky dinky. See, Exhibit C to the SAC, Dkt. No. 43-3, page 2, lines 16-19 ("Petty states that Mesika has a history of not crediting other creators, specifically mentioning that he never credited Dave Bonsil or Rinky Dinky on the tutorial for his ring flight, despite mentioning "another guy in England that put a ring flight in a key". Compare with paragraphs 46, and 68-70 of SAC, and Exhibit A thereto, demonstrating that Mesika disclosed the "rinky dinky" in the patent application openly.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 22**

something to do with the knowledge that's inside that pack."[61] Petty knew from the July 25-27, 2025 text message conversation, as he conceded, that Mesika was not threatening litigation.

At 2:39 Petty states that Mesika was "Magic's biggest litigious bully that for the last three decades has been financially and legally bullying creators into submission behind closed doors."[62]

Petty represented to the public that he was bringing facts, not merely opinions.[63]

At 3:55, Petty claimed that Mesika "is now trying to sue anyone who brings out their own ring flights," and that Mesika never will have a patent approved. He knew for a fact that Mesika was not trying to sue Mark Bennett. At 4:50 Petty states that Mesika's invention "was stolen in the first place" and that he was bullying people. He knew that Mesika was not bullying Mark Bennett, and that he had no other knowledge of any alleged "bullying" of any other person.

At 5:40 Petty maintains that he consulted with a lawyer before recording the video, which, if true, shows that he followed Mesika's admonition to seek legal counsel before making his claims publicly.[64] This statement, if true, shows that Petty had doubts, but proceeded recklessly, or with full knowledge that his statements would be defamatory, further showing actual malice. Indeed, he states at 6:53 that he deliberated over two weeks before completing the video.

At 16:30 Petty says that Mesika's Ring Flight came out in 2025, while he was told on June 26, 2025 in their text message conversation that Mesika publicly released

---

[61] *Id.*

[62] *Id.*

[63] See, *Id.*, at 3:32 ("Today, I am bringing facts, upon facts.").

[64] See, Mesika Declaration, paragraph 37 ("that's what qualified legal counsel is for. I highly recommend you consult one before publishing anything that could be defamatory or legally damaging to yourself."), and Exhibit 1 thereto.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 23**

his product "around February 2024."[65] Mesika's patent application, filed on June 13, 2024, and published on December 19, 2024, claiming priority from a June 13, 203 provisional patent application. It is noted that when Petty's Motion claims that "Mesika apparently released his device several months before filing his patent application,"[66] Petty makes no reference to the filing date of the published application, nor his concession in June 2025 to Mesika's representation that his application filed before Mesika released his device. Petty could have, and should have, reviewed his text messages, the published application, and the SAC before he made again this false statement. If Petty had reviewed Exhibit B to the SAC, Dkt. No. 43-2, he would have understood that his statement repeating this lie at 1:33:39 was false, as explained in the parenthetical statement in that Exhibit regarding the patent application filing date. He certainly should have reviewed the filing date before his July 14, 2025 video, which he pondered for over two weeks. At 1:45:57 Petty again makes this false statement, stating that Yigal Mesika's product was released "months before the patent was actually filed."

At 21:51 Petty stated regarding Mesika's patent applications, "most of them aren't granted most of them are never granted." Petty's Exhibit D to his Motion, Dkt. No. 50-4 claims to be a quick patent search shows thirteen issued patents. This evidence alone represents the falsity of Petty's statement. In fact, Mesika has more than fifteen issued patents.[67] At 1:18:41 Petty maintains again that "A lot of the patents that Yigal puts through never get granted." So, the reckless nature of Petty's tirade

---

[65] See, Mesika Declaration, filed concurrently, Exhibit 1, text message of June 26, 2025 at 8:12 pm.

[66] Petty Motion, Dkt. No. 50, page 14 of 35 (internal page 6), lines 10-11.

[67] See, SAC, paragraph 47, listing issued patents of various types and in various jurisdictions. See, Exhibit N to the SAC, Dkt. No. 43-14, in the last row of the table, listing numerous issued Mesika patents.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 24 -**

shows that he accuses Mesika of using his superior power to get patents to bully others, but he is incompetent at obtaining patents to perform that bullying.

At 1:35:45 Petty falsely states that Mesika had "dozens of patent applications, few granted," when his own Exhibit shows a maximum of 32 patent documents, some being merely the published application before issue of the same invention.

At 1:39:29 Petty refers to Mesika's invention, talking directly toward Mesika as if he was present, "You didn't even credit the person that most people would consider to be the godfather when it comes to ring flights."

On June 9, 2025 Mesika, through his patent counsel, filed an Information Disclosure Statement (IDS) disclosing to the United States Patent and Trademark Office (USPTO) an Al Koran "Ring Flight" document from 1968, a Sumag "Magic Ring Flight" document from 1967, and an Al Koran "Rinkey Dinky" document from 1967.[68] This document was publicly available as of June 9, 2025, before Petty's text message conversation with Mesika June 25-2025, and before Petty's July 14, 2025 "The Desolation of Yigal Mesika" video.

In the June 25, 2025 Penguin Magic video, Craig Petty made additional false, defamatory statements. He stated that regarding Mark Bennett, "legal action was threatened."[69] As shown above, in reference to the Mesika Declaration and the text message conversation of June 25-27, 2025, this statement was false, and Petty knew that it was false. Petty continues his reckless disregard by claiming that Mesika gets patents issued to bully others, but "Hardly any of them that get granted. And the ones that do get granted, he just he allows them to expire."[70]

---

[68] See, Declaration of Frederic M. Douglas, (the "Douglas Declaration") paragraphs 4-7, and Exhibit 1 thereto.

[69] See, Exhibit C to the SAC, Dkt. No. 43-3, page 1, lines 17-18.

[70] See, Id., page 1, lines 26-27.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 25**

Petty repeats his other false statement claiming that Mesika's invention was "commercially advertised on the Magic Café up to a year and a half before the patent was even filed."[71]

Petty makes the audience believe that he is speaking from knowledge gained from reviewing documents, when he states that Mesika "has a documented history over the last 20 years of using fake patents and patent applications and legally bullying and intimidating people to try and force his will onto them." Petty has not reviewed twenty years of documents that support his false statement, and he wanted his audience to believe that he gained such "knowledge" from reviewing a "documented history."[72]

Petty states the Mesika is "the most litigious person in magic who's got a habit of habitually suing people."[73] As shown in Exhibit N to the SAC, Dkt. No. 43-14, in reference to Petty's claim that Mesika is the "biggest litigious bully . .. for the last three decades, the last column of the table provides a lengthy list of lawsuits in the magic industry. Mesika has not achieved the distinction of being the most litigious person in magic, let alone for three decades.

### c.  Statements of and Concerning Mesika Magic

Defendants might have thought that their disparagement actions and anti-competitive conduct only affected Yigal Mesika, but they also damages Mesika Magic, a corporation. Plaintiffs seek damages from the Defendants for all damages attributable to their torts.

---

[71] See, *Id.*, page 1, lines 28-29. See, SAC, Dkt. No. 43, paragraphs 56-59.
[72] See, *Id.*, page 2, lines 4-6.
[73] See, Exhibit C to the SAC, Dkt. No. 43-3, page 2, lines 27-28.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 26 -**

### a. Opinion can be Actionable

The *Newsom v. Fox News* opinion, which explicitly applies California law, held that statements of opinion on matters of public concern "are not categorically shielded from actionability."[74] Instead, an opinion constitutes actionable defamation if it can "reasonably be interpreted as stating or implying defamatory facts about an individual that are provably false."[75] Prefacing a statement with, "in my opinion," does not provide immunity. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695 (1990) (" 'In my opinion John Jones is a liar' ... implies a knowledge of facts which lead to the conclusion that Jones told an untruth."). When a speaker discloses the facts underlying their opinion, they can still be held liable **"if the disclosed facts themselves are false and defamatory."** *Dickinson v. Cosby*, 17 Cal.App.5th 655, 686 (2017) (Emphasis supplied).[76]

### a. Malice is Adequately Alleged

Recklessness or doubt which gives rise to actual or constitutional malice is a subjective test. *Melaleuca, Inc. v. Clark* 66 Cal.App.4th 1344, 1365 (Cal. App. 1998). "This may be demonstrated through circumstantial evidence, including a failure to investigate, anger and hostility toward the plaintiff, or reliance on unreliable sources." *Tilkey v. Allstate Insurance Company*, 56 Cal.App.5th 521, 554-5 (2020). Here, the minimal merit standard is easily satisfied as to Defendants' malice as Plaintiff has alleged and provided significant evidence of the failure to investigate, reliance on biased and unreliable sources, and hostility toward Plaintiffs and their intellectual property rights. Actual malice "does not require that the reporter hold a devout belief in

---

[74] *Newsom v. Fox News Network, LLC*, N25C-06-251 SPL, slip opinion, p. 22 (Del. Super. Apr 30, 2026).
[75] *Id.*
[76] See, Petty Motion, Dkt. No. 50, page 23 of 35 (internal page 15), lines 19-21.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 27**

the truth of the story being reported, only that he or she refrain from either reporting a story he or she knows to be false or acting in reckless disregard of the truth." (*Jackson*, *supra*, 68 Cal.App.4th at p. 35.).

Defendants argue that, at most, Plaintiffs have only alleged that Defendants must personally investigate the falsity or reckless disregard of their statements, which Defendants claim does not equate to actual malice under *St. Amant* and *Reader's Digest*. While a mere failure to investigate is not enough, "a speaker cannot purposefully avoid the truth and then claim ignorance."[77] If a plaintiff offers direct evidence that the statement was probably false, "the Court may infer that the defendant intended to avoid the truth."[78] Defendants' own cited case, *St. Amant* helps to show how to establish actual malice.[79]

Defendants did not merely fail to investigate, but they purposefully avoided the truth by publishing statements that Mesika "hid" prior art, while willfully ignoring the publicly available patent application[80] that explicitly disclosed the "Ring Flight Revolution," "Rinkey Dinky," and "Air Tag" device.[81]

The Superior Court of Delaware applied substantive California defamation law[82]

---

[77] *Newsom v. Fox News Network, LLC*, N25C-06-251 SPL, slip opinion, p. 22, lines 8-11 (Del. Super. Apr 30, 2026).

[78] *Id.*, at p. 11-13.

[79] *St Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.").

[80] Exhibit A to the SAC, Dkt. No. 43-1.

[81] See, SAC, Dkt. No. 43, paragraphs 68-70, and Exhibit 1, Dkt. No. 43-1, Paragraphs [0006]. [0007], and [0027].

[82] The Delaware Court evaluated the complaint under Delaware's highly permissive "conceivability" standard while in the instant federal litigation, the stricter "plausibility standard applies under *Twombly* and *Iqbal*. Plaintiffs submit that the detailed exhibits and factual allegations meet the federal "plausibility" threshold.

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 28**

to recognize that actual malice can be proven through an "accumulation"[83] of circumstantial factors, specifically including "financial motive"[84] and a "preconceived false narrative."[85]

The Delaware Court evaluated the complaint under Delaware's highly permissive "conceivability" standard while in the instant federal litigation, the stricter "plausibility" standard applies under *Twombly* and *Iqbal*. Plaintiffs submit that the detailed exhibits and factual allegations meet the federal "plausibility" threshold.

## B. Misappropriation of Likeness (§ 3344 and Common Law)

Petty used Plaintiffs' likenesses in monetized videos and product promotion. This is commercial misappropriation, not news. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 & n. 2 (9th Cir. 2001). The Cal. Civ. Code § 3344(d) "public affairs" exception does not apply to disguised advertisements. Id., at 1002

## C. Unfair Competition (§ 17200) and False Advertising (§ 17500)

The SAC alleges Counts 8-10 against Penguin Magic, but not Craig Petty.

## D.   CONCLUSION

For all the foregoing reasons, the Court should:

1. DENY Petty's Motion to Dismiss;

2. DENY Petty's Special Motion to Strike;

3. Permit discovery to proceed;

---

[83] *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 183 (2d Cir. 2000).
[84] *Communications, Inc v. Connaughton*, 491 U.S. 657, 689 fn. 36, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)(footnote discussing the circumstantial facts adduced at trial); *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1043 (Del. Super. 2023)
[85] *Newsom v. Fox News Network, LLC*, N25C-06-251 SPL, slip opinion, p. 25, lines 10-18 and p. 26, lines 1-2 (Del. Super. Apr 30, 2026); *Palin v. New York Times Co.*, 940 F.3d 804, 813 (2d Cir. 2019).

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 29**

4. Award attorney fees; and

5. Grant leave to amend, if necessary.

May 20, 2026                          Respectfully submitted,


                                      __/s/ Frederic M. Douglas_____

                                      Frederic M. Douglas
                                      Attorney for Plaintiffs
                                      MESIKA MAGIC and YIGAL MESIKA


The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

                                      __/s/ Frederic M. Douglas_____

                                      Frederic M. Douglas
                                      Attorney for Plaintiff
                                      MESIKA MAGIC and YIGAL MESIKA
                                      May 19, 2026

**PLAINTIFFS' OPPOSITION TO CRAIG PETTY'S MOTION TO DISMISS**
**- 30**