UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 25-7943-MWF (MBKx)** **Date: August 4, 2026**

Title: Mesika Magic, et al. v. Penguin Magic, Inc., et al.

---

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:
Rita Sanchez

Court Reporter:
Not Reported

Attorneys Present for Plaintiff:
None Present

Attorneys Present for Defendant:
None Present

**Proceedings (In Chambers):** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [49] [50]; GRANTING DEFENDANT CRAIG PETTY'S REQUEST FOR JUDICIAL NOTICE [51]

Before the Court are the following Motions:

Defendant Penguin Magic, Inc.'s ("Penguin") Motion to Dismiss (the "Penguin Motion"), filed on May 1, 2026. (Docket No. 49). Plaintiffs Mesika Magic and Yigal Mesika filed an Opposition on May 20, 2026. (Docket No. 54). Penguin filed a Reply on May 27, 2026. (Docket No. 59).

Defendant Craig Petty's Motion to Dismiss (the "Petty Motion"), filed on May 1, 2026. (Docket No. 50). Plaintiffs filed an Opposition on May 20, 2026. (Docket No. 53). Petty filed a Reply on May 27, 2026. (Docket No. 57).

Defendant Petty also filed a Request for Judicial Notice ("RJN") on May 1, 2026. (Docket No. 51). Plaintiffs filed an Opposition on May 21, 2026. (Docket No. 56). Petty filed a Reply on May 27, 2026. (Docket No. 58).

Finally, Defendant Petty filed a Notice of Supplemental Authority on July 28, 2026. (Docket No. 65).

The Court has read and considered the papers filed in connection with the Motions and held a hearing on **July 16, 2026.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 25-7943-MWF (MBKx)** **Date: August 4, 2026**
Title: Mesika Magic, et al. v. Penguin Magic, Inc., et al.

Defendants' Motions are **GRANTED *in part* and DENIED *in part***. Specifically, the Court rules as follows:

- As to the libel, trade libel, and false light claims (Counts 1, 2, and 5):
  - The Penguin Motion is **GRANTED *without leave to amend*** because Plaintiffs have failed to attribute any of the allegedly defamatory statements to Penguin.
  - The Petty Motion is **GRANTED *in part* and DENIED *in part***. The Petty Motion is **GRANTED *without leave to amend*** as to the statements in which Petty calls Mesika certain names or adjectives (including, but not limited to, "patent troll," "Magic's biggest litigious bully," "sinister, manipulative, deceitful, [and] greedy") or accuses Mesika of bullying, threatening, intimidating, or engaging in other similar activities, as these are statements of opinion, not fact. The Petty Motion is **DENIED** as to the limited purpose public figure analysis and the statements that may be subject to the affirmative defense that they are factually true (*i.e.*, statements about the volume and substance of Mesika's patents and applications).
- Both Motions are **GRANTED *without leave to amend*** as to the misappropriation claims (Counts 3 and 4) because the videos fall into the public affairs and public interest exceptions to the common law and statutory claims.
- Both Motions are **GRANTED *without leave to amend*** as to the Unfair Competition, False Advertising, Lanham Act, and Declaratory Judgment claims (Counts 6-11). Plaintiffs largely fail to oppose the arguments made in the Motions on these claims, and the limited arguments that Plaintiffs do make are insufficient to overcome the points in the Motions.

## I. BACKGROUND

Plaintiffs Mesika Magic and Yigal Mesika initiated this action on August 22, 2025. (*See generally* Complaint (Docket No. 1)). Plaintiffs filed a First Amended Complaint ("FAC") on November 5, 2025. (Docket No. 20). Plaintiffs filed a Second Amended Complaint ("SAC") on March 27, 2026. (Docket No. 43). The Court previously summarized the allegations in the FAC in its Order Granting Defendants' Motion to Dismiss (the "Prior Order"). (Docket No. 42). The factual allegations made in the SAC are largely analogous to those contained in the FAC. The Court therefore incorporates by reference the factual background from the Prior Order and summarizes only those additional allegations appearing in the SAC that are relevant here.

The Court previously dismissed Plaintiffs' defamation claims and derivative claims against Penguin because the FAC did not establish that Penguin could be held liable for the allegedly defamatory statements made by Petty and/or Eric Tait. (Prior Order at 4–9). The remaining claims against Penguin were dismissed because the allegations supporting each were insufficient under Rule 12(b)(6). (*Id.* at 9–12). Because only Penguin brought the Motion to Dismiss the FAC, the Court made no determination as to whether the counts should be dismissed as levied against Petty. (*Id.* at 9). The Court granted leave to amend to cure these deficiencies but warned that, while there may be a Second Amended Complaint, there would be no Third, and any successful future motion to dismiss would be granted without leave to amend. (*Id.* at 13).

The SAC expands upon the FAC, adding detail regarding Tait and Petty's relationships to Defendant Penguin. Specifically, the SAC alleges that, in the video "Craig Petty Discusses Controversy with Yigal Mesika," a video podcast, Erik Tait makes several statements, "all of which are made within the scope of his employment with Penguin Magic." (SAC ¶ 5). The SAC further alleges that Petty has "held himself out to the public as representing Penguin Magic at magic trade shows and industry events," announced a "partnership" with Penguin Magic, "established" his role as a "company insider/agent," "regularly sells Penguin Magic's [products]," and is "not an independent third party, but an authorized agent, commercial partner, and

compensated representative of Penguin Magic." (*Id.* ¶¶ 15–19, 27). Plaintiffs also allege that Penguin "edited, produced, ratified, and published Tait's and Petty's statements on its official channel." (*Id.* ¶ 61).

The SAC also attempts to buttress the non-defamation claims, alleging that the "Dynamo quotes that Penguin Magic published on its commercial product pages were factually false as applied to TIES, and led to reasonable consumers being deceived into believing that Dynamo endorsed Penguin magic's knockoff product instead of 'LOOPS.'" (*Id.* ¶ 103). The SAC further alleges that "two retailers canceled future orders or significantly reduced orders from Plaintiffs specifically due to the 'Desolation of Yigal Mesika' defamatory video," with one retailer allegedly informing Plaintiff Mesika that, after seeing the video, they "were uncomfortable continue to promote [sic] Plaintiffs' products," and another publicly announcing a refusal to sell 99% of Plaintiffs' products. (*Id.* ¶¶ 129–31).

Based on the above allegations, Plaintiffs bring 11 claims, styled as 11 counts: (1) libel; (2) trade libel; (3) common law misappropriation of likeness; (4) commercial misappropriation of likeness under Cal. Civ. Code section 3344; (5) false light; (6), (7), and (8) violations of California Unfair Competition law under Cal. Bus. & Prof. Code section 17200, et seq.; (9) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (10) intentional interference with prospective economic advantage; and (11) declaratory relief. (*See Id.* ¶¶ 145–218).

## II. REQUEST FOR JUDICIAL NOTICE

In support of his Motion, Defendant Petty asks the Court to take judicial notice of forty-two exhibits consisting of third-party discussion, ads, and reviews of Plaintiff Mesika and/or his magic products. (*See generally* RJN). Plaintiffs object to these materials on the grounds that they are not properly subject to judicial notice, fall beyond the relevant time frame, and are not adequately authenticated. (*See generally* Opp. to RJN (Docket No. 56)).

As an initial matter, it is appropriate for courts to take judicial notice of the

existence of certain documents and that they were available at the time of their publication. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'") (internal citations omitted); *see also Andrew Left v. Anson Funds Mgmt. LP*, No. CV 25-10432-SPG-JC, 2026 WL 1365637, at *7 (C.D. Cal. Mar. 31, 2026) (taking judicial notice, in a defamation case, of articles discussing plaintiff's reputation for the purpose of noting their existence, not to show that the contents of these statements were true).

Plaintiffs appear to rely on the date on which each exhibit was created, rather than its date of publication, in arguing that the materials fall outside the relevant time frame. (*See* Opp. to RJN at 9–13). Absent a reason to doubt the authenticity of a website printout, however, courts routinely accept that the date of publication listed on a printout is the actual date on which it was published. *See, e.g.*, *Prodanova v. H.C. Wainwright & Co., LLC*, CV 17-07926-JAK(ASx), 2018 WL 8017791, at *3–4 (C.D. Cal. Dec. 11, 2018) (taking judicial notice of articles published on public websites that show a date of publication because "Plaintiffs have not shown that the content of these articles when accessed today is different than what it was at the stated time of publication[.]"); *cf. id.* at *4 (denying request for judicial notice as to screenshots of certain webpages where the motion neither stated the date on which the webpages were accessed nor established the timing of the publication).

Here, each of the exhibits to the RJN is properly authenticated by a supporting declaration providing the URL of the website from which it was taken and the date the exhibit was created. *See 21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 225 F. Supp. 3d 1012, 1020 (S.D. Cal. 2017) (finding the authentication requirement sufficiently met where plaintiff's counsel "attests that the exhibit consists of true and correct copies of the pages she personally printed from the website," and the URL address and print date appear on each page of the printout).

Accordingly, the RJN is **GRANTED** and the Court takes judicial notice of the documents attached. Nonetheless, taking judicial notice does not permit the Court to

take the contents of the exhibits as true, as will be discussed more below in the context of the Motions.

## III. LEGAL STANDARD

### A. Anti-SLAPP

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Code Civ. Proc. § 425.16(b)(1). The statute is based on the California legislature's finding that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." *Id.* § 425.16(a).

Therefore, "the anti-SLAPP statute requires a two-part analysis: (1) the defendant must make a *prima facie* showing that the suit arises 'from an act in furtherance of the defendant's rights of petition or free speech'; and (2) once the defendant makes this showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)).

"[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended by* 897

F.3d 1224 (9th Cir. 2019). But "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply" and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

### B. Rule 12(b)(6)

Under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (citation omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

//

//

## IV. DISCUSSION

Before reaching the merits of the anti-SLAPP analysis and the challenges to the remaining claims under Rule 12(b)(6), the Court addresses two threshold issues regarding whether the defamatory statements can be alleged as to Defendant Penguin Magic and whether Plaintiff Mesika Magic is a proper plaintiff to bring the same defamation-related claims. The Court then discusses the merits of the motions to dismiss.

### A. Attributing Statements to Penguin

To begin, Penguin argues, and the Court agrees, that there remains a threshold issue that the statements in the SAC have not been adequately attributed to Penguin, rather than to the speakers themselves, Craig Petty and Erik Tait. (Penguin Motion at 4).

The Court first notes that despite identifying this issue in the Prior Order and Penguin's discussion of the issue in its Motion, Plaintiffs fail to respond in the Opposition with any legal argument addressing the case law in the Prior Order or rebutting the points and authorities in the Penguin Motion. (*See generally* Opp. to Penguin Motion). The most Plaintiffs do in the Opposition is summarize the allegations in the SAC surrounding the publication of the video on Penguin Magic's YouTube channel (*see id.* at 8–9), and state in an entirely conclusory fashion that "[d]etermining the internal scope of Erik Tait's employment with Penguin Magic" would require discovery (*id.* at 12). As is discussed below, the allegations in the SAC still fall short of establishing that Penguin should be held liable for the statements of either Tait or Petty.

#### 1. Tait's Statements

First, although Plaintiffs have added factual detail regarding Tait's job duties with Penguin, they have failed to plausibly allege that Tait's statements were made within the scope of his employment. The SAC alleges that Tait's "explicit job is to

evaluate competitor's products, vet submissions, and bring Penguin Magic's own products to market," in addition to hosting Penguin's podcast as a "structured, branded media product." (SAC ¶¶ 35–38, 60). The challenged statements made by Tait concern a decades-old personal commercial dispute, in which Mesika purportedly "stiffed" a college-aged Tait on payment for an "ad copy." (*See id.* ¶ 73).

In dismissing the FAC, the Court posed the question of when a podcast host is speaking for himself as opposed to speaking on behalf of his employer. (Prior Order at 7–8). Plaintiffs have failed to meaningfully engage with this question beyond the conclusory assertions that Tait's statements "were made within the scope of his employment" and "not a deviation from his duties, but a fulfillment of his role." (SAC ¶¶ 73, 63). In other words, Plaintiffs have failed to allege facts to bridge the gap between Tait's airing of a decades-old personal grievance and his current job duties, or establish that Tait's statements were "typical of or broadly incidental *to the enterprise undertaken by the employer*." *Rivera v. National R.R. Passenger Corp.*, 331 F.3d 1074, 1080 (9th Cir. 2003) (emphasis in original). Plaintiffs have therefore failed to adequately allege that Tait's statements on the Podcast were made within the scope of his employment.

**2. Petty's Statements**

As to Petty, the SAC expands upon Petty's relationship with Penguin but still fails to plausibly allege that Penguin can be held liable for Petty's statements. The "Desolation of Yigal Mesika" video was published on Petty's personal YouTube channel and there is no allegation that Penguin had any involvement in either its production or publication. Though Plaintiffs allege that Petty has sometimes acted as an agent or spokesperson for Penguin (principally at trade-show booths), they have not established that Petty was acting as Penguin's agent when he published a three-hour documentary on his personal YouTube channel. (*See, e.g.*, SAC ¶¶ 15–19, 26–27, 142–144). As Penguin explains, "the SAC alleges trade-show agency for a convention, not YouTube-content agency." (Penguin Motion at 7).

Regarding Petty's appearance in and statements during the video podcast "Craig Petty Discusses Controversy With Yigal Mesika," Plaintiffs continue to rely on the same "hosting" theory the Court previously rejected. (*See* Prior Order at 6). Beyond the conclusory assertion that Penguin "directed, controlled, and ratified Petty's speech in this video rather than merely 'hosting' Petty for their podcast," Plaintiffs only allege that Penguin hosted the Podcast on their YouTube channel; the channel displayed Penguin's branding; and Penguin monetized the video and included links to their retail website and product pages. (*See, e.g.*, SAC ¶¶ 5, 43, 65, 93).

Plaintiffs fail to allege — or argue with any substance in the Opposition — that any of this conduct, all of which seems to fall squarely under the header of "hosting," equates to ratification. *See Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1158, 250 Cal. Rptr. 3d 350 (2019) ("Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person … including conduct which is inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.") (quoting *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73, 104 Cal. Rptr. 57 (1972)). Plaintiffs' contention that Penguin "ratified" Tait's speech fails for the same reason. (*See, e.g.*, SAC ¶¶ 61, 63).

In sum, Plaintiffs have failed to establish Penguin's liability for either Tait or Petty's allegedly defamatory statements. Moreover, even if Plaintiffs had advanced a plausible theory of attribution, their claims would nonetheless fail as to certain challenged statements that are non-actionable, as is explained below. Accordingly, the Penguin Motion is **GRANTED** as to the defamation-related claims, Counts 1, 2, and 5, for failure to attribute the allegedly false statements to Penguin Magic.

### B. Claims Brought by Mesika Magic

Petty also raises a threshold issue that because none of the challenged statements are about Mesika Magic, but only Mesika personally, Mesika Magic cannot bring any defamation claims. (*See* Petty Motion at 13–14); *see also Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183–84 (E.D. Cal. 2008) (holding that, in a defamation action,

the threshold question is whether a statement is "of and concerning" the plaintiff in some way, "at least by clear implication").

The Court agrees. Plaintiffs respond only by claiming that Defendant's disparagement "also damages Mesika Magic," but any harm experienced by Mesika Magic does not change the fact that none of Petty's statements were about the corporation. (Opp. to Petty Motion at 26). Accordingly, the Petty Motion is **GRANTED.**

### C. Anti-SLAPP Motion: Libel, Trade Libel, False Light (Counts 1, 2, and 5)

As to Counts 1, 2, and 5, therefore, the only claims remaining are those brought by Yigal Mesika himself against Defendant Petty. Petty argues that, because each of these claims arise from an act in furtherance of his right of free speech, and Plaintiff has not demonstrated a probability of prevailing on the challenged claims, the case must be dismissed under the California anti-SLAPP law.

As has already been discussed above, the Court must evaluate these claims on the typical Rule 12(b)(6) standard given the Ninth Circuit's ruling in *Planned Parenthood*. The Court makes this threshold note because at various places in both Motions and the Oppositions thereto, the parties seem content to rely on outside evidence or make arguments that are inappropriate to resolve on the pleadings under Rule 12(b)(6). This Court, however, is not free to disregard the applicable standard, which is quite clear that "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply" and "discovery ***must be allowed***, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *See Planned Parenthood*, 890 F.3d at 834 (emphasis added). Where relevant, therefore, the Court disregards outside evidence that is submitted for the truth of the matters asserted therein.

**1. Constitutionally Protected Speech**

As an initial matter, the Court holds that the first prong of the anti-SLAPP statute, which asks whether the plaintiff's claims arise from constitutionally protected speech, is satisfied. Although Petty does not appear to cite to the categories of protected speech enumerated in the statute itself, it appears that Petty is arguing that his speech falls under the third enumerated category of "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." *See* Code Civ. Proc. § 425.16(e)(3).

Plaintiffs do not dispute that Petty's statements were published on YouTube, which courts have held constitutes a public forum. *See Lacoste v. Keem*, CV 20-2323-RGK-JPR, 2020 WL 5239110, at *2 (C.D. Cal. June 23, 2020) ("YouTube, Twitter, Instagram, and Snapchat are websites accessible to the public, and are therefore public forums under the anti-SLAPP statute."). Rather, Plaintiffs appear to take issue with whether the statements were made in connection with an issue of "public interest," although Plaintiffs have confusingly placed this argument in their discussion of the sufficiency of the allegations rather than where it belongs under prong one of the statute. (*See* Opp. to Petty Motion at 19–20). The Court nevertheless considers this argument here.

The anti-SLAPP statute does not define "an issue of public interest," but it has been construed broadly to encompass "any issue in which the public is interested." *Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 203 Cal. App. 4th 450, 464–65, 137 Cal. Rptr. 3d 455 (2012) ("Like the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly."); *see also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042, 72 Cal. Rptr. 3d 210 (2008) ("[T]he issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest."). "In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity was a person or entity in the

public eye[.]" *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145, 246 Cal. Rptr. 3d 591 (2019).

Plaintiffs themselves have asserted facts establishing that Yigal Mesika is a figure in the public eye. (*See, e.g.*, Opp. to Petty Motion at 16 ("Yigal Mesika is … well-known in the niche magic industry.")); *see also FilmOn.com Inc.*, 7 Cal. 5th at 145. Furthermore, the SAC alleges that the videos in question have been viewed tens of thousands of times and garnered a large response from the magic community and retailers. (*See* SAC ¶¶ 33, 85, 100, 129–31); *see Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695, 142 Cal. Rptr. 3d 40 (2012) (explaining that "[t]he fact that [defendant's] posts drew numerous comments, including comments vehemently disagreeing with [defendant]" is sufficient evidence that the topics discussed therein are "matters of public discourse and are of considerable public interest."). The Court therefore holds that the public interest requirement is met based on the allegations in the SAC, and thus Petty's statements fall into the category of protected speech enumerated in section 425.16(e)(3).

Nonetheless, in addition to arguing that Petty's statements do not fall into this category under the statute, Plaintiffs also argue that the commercial speech exception to the anti-SLAPP statute should apply. (Opp. to Petty Motion at 12–13, 14). The Court disagrees.

To qualify for the exemption, Plaintiffs must demonstrate that the statement was made (1) by a person primarily engaged in selling goods or services; (2) about a competitor's goods or services; (3) for the purpose of promoting or securing sales or in the course of delivering the person's goods or services. *See* Code Civ. Proc. § 425.17(c)(1). The commercial speech exemption under section 425.17 "should be narrowly construed." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 22, 109 Cal. Rptr. 3d 329 (2010). Plaintiffs argue that, because the challenged videos and posts "disparage Plaintiffs' inventions and professional reputation" and "promot[e] Penguin's competing products, including TIES, with embedded product links and

monetized content," section 425.17(c) mandates denial of the anti-SLAPP motion. (*See* Opp. to Petty's MTD at 12–13).

Plaintiffs provide no case law supporting the application of the commercial speech exception to the types of documentary and podcast videos alleged in the SAC here. (*See id.*). Plaintiffs merely state in a conclusory fashion that the videos promoted ***Penguin's*** competing products. Even if this allegation were enough to establish the exemption's application to Penguin, however, there are no allegations that Petty was a person engaged in selling competing goods nor that he was attempting to sell his own goods in the videos. Rather, Plaintiffs cite to an allegation in the SAC that Petty was engaged in a "conspiracy" with Penguin to sell Penguin's goods at conventions "jointly operate[d]" by Penguin and Petty. (*See* Opp. to Petty Motion at 13, n.21). That Petty may collaborate with Penguin to run a convention would not seem to obviously transform Petty into a "person primarily engaged in selling goods or services" per the statute's language, and again, Plaintiffs provide no case law supporting this assertion. The Court cannot conclude that the commercial speech exemption applies.

Accordingly, prong one of the anti-SLAPP analysis has been satisfied.

**2. Sufficiency of the Allegations under Rule 12(b)(6)**

As the first prong of the anti-SLAPP statute is satisfied, the burden shifts to Plaintiffs to prove their claims are legally sufficient to meet the traditional Rule 12(b)(6) plausibility standard. *Planned Parenthood*, 890 F.3d at 834.

Petty argues that the libel, trade libel, and false light claims brought by Yigal Mesika fail for multiple reasons: (1) Plaintiff is a limited purpose public figure but has failed to allege actual malice; and (2) even if Plaintiff were not a public figure or had alleged actual malice, the statements in question are either true, substantially true, or statements of opinion and/or rhetorical hyperbole. Because of the early stage of the proceedings, the Court cannot grant the Motion on the basis of Mesika being a limited

purpose public figure and on the basis that certain statements were true or substantially true, but the Court can consider the Motion as to certain statements being opinion or hyperbole as a matter of law.

**a. Limited Purpose Public Figure**

"If the person defamed is a public figure, he cannot recover unless he proves, by clear and convincing evidence, that the libelous statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 256, 208 Cal. Rptr. 137 (1984) (granting summary judgment because there was no evidence that defendants believed the questioned statements were false). The Ninth Circuit has defined two types of public figures: "(1) all-purpose public figures, who occupy 'positions of such persuasive power and influence that they are deemed public figures for all purposes,' and (2) limited purpose public figures, who achieve their status by 'thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 267 (9th Cir 2013).

The Ninth Circuit has articulated a three prong test for whether someone is a limited purpose public figure: "we consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff*, 715 F.3d at 266.

Petty contends that Mesika is a limited purpose public figure as to the claims involved in this action because he is both "extremely prominent" within the relevant community and because he "voluntarily injected [himself] into this controversy by seeking this degree of notoriety and aggressively threatening other inventors with litigation." (*See* Petty Motion at 20–21). Mesika argues that his reputation does not amount to the "general fame or notoriety required" to be considered a limited public

figure and he did not interject himself into any public controversy. (*See* Opp. to Petty Motion at 7, 16–17). Confined to the allegations in the SAC, the Court cannot adjudicate this issue on the current Motion. Specifically, the Court cannot hold at this point that a public controversy existed when the statements were made by Petty.

At the hearing, counsel for Petty suggested that, based on Plaintiffs' allegations alone or by merely acknowledging the existence of the exhibits to Petty's RJN, the Court may deem Mesika a limited-purpose public figure. It is true that Plaintiffs' own pleadings establish that Mesika is a figure of relatively high notoriety in the magic community. (*See, e.g.*, Opp. to Petty Motion at 16 ("Yigal Mesika is well-known in the niche magic industry.")). This primarily simplifies the analysis for *Makaeff*'s third prong, which has been interpreted broadly by *Makaeff* and other courts and has been considered satisfied when a plaintiff foreseeably puts themselves at risk of public scrutiny with respect to a limited range of issues. *See, e.g.*, *Planet Aid, Inc. v. Reveal*, 44 F. 4th 918, 926–27 (9th Cir. 2022) (finding that plaintiffs' engaging in "public-facing and attention-generating" activities, thereby inviting public scrutiny, satisfied the voluntariness requirement). Mesika's admitted notoriety alone, however, cannot satisfy *Makaeff*'s first prong, which forces the Court to isolate a pre-existing controversy.

Indeed, in *Makaeff,* a case about allegedly defamatory statements made regarding Trump University's business practices, the panel noted that "general interest in Donald Trump [was] not sufficient to create a public controversy. … Instead, a public controversy must be a real dispute, the outcome of which affects the general public or some segment of it." 715 F.3d at 267 (quoting *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980)) (internal citations omitted). The Ninth Circuit in *Makaeff* cited to the standard from *Waldbaum,* which states that the public controversy must be more targeted and specifically related to the allegedly defamatory statements: "To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice." *Waldbaum,* 627 F.2d at 1297. In *Makaeff,* the Ninth Circuit explained that "any

general interest in Trump University" was not enough to establish a public controversy, it was only when such an interest "ripened into an actual dispute over Trump University's business and educational practices" that the "'specific question' of Trump University's legitimacy had become a public controversy." 715 F.3d at 267 (quoting *Waldbaum,* 627 F.2d at 1297).

The only evidence in the record that lends itself to the showing that there was an actual dispute over Mesika's patent practices is contained in Petty's RJN: Facebook posts and comments, product reviews, YouTube videos, and articles purportedly discussing Mesika's litigious history and patent applications. (*See* RJN, Exs. 36–42). District courts have often relied on similar exhibits to determine public figure status under a ***Rule 56 standard***; under Rule 12(b)(6), however, the analysis is necessarily more confined. *Compare Bacudio v. Contreras*, CV 24-00628-JLS-PD, 2024 WL 4328824 (C.D. Cal. Sept. 20, 2024) (applying Rule 56 standard and basing the limited-purpose public figure analysis on press releases and articles submitted by defendant), *with Goldberg v. TeachBK, Inc*., CV 24-04525-LJC, 2025 WL 296143, at *13 (N.D. Cal. Jan. 24, 2025) (declining to give any weight to defendant's supplemental declarations while deciding an anti-SLAPP motion to strike under a 12(b)(6) standard, and deeming the allegations in the complaint insufficient to determine public figure status but noting, "[d]efendants may renew this claim on summary judgment if they present evidence that there is an actual public controversy[.]").

At the hearing, Petty's counsel urged the Court to revisit *Planet Aid*, but, in that case, the Ninth Circuit made clear that "significant discovery was conducted" and the district court's ruling was made under a summary judgment standard. 44 F.4th at 923. And while the district court and the Ninth Circuit on appeal in *Makaeff* considered news articles without reference to whether a Rule 12(b)(6) or Rule 56 standard applied, *Makaeff* was decided before *Planned Parenthood* established that Ninth Circuit courts should apply federal procedural rules when deciding an anti-SLAPP motion. Indeed, two members of the panel in *Makaeff* concurred in the ruling but forcefully disagreed with the application of California's anti-SLAPP procedural rules in contravention of *Erie* and its progeny. *See* 715 F.3d at 272–75 (Kozinski, J., concurring) ("Federal

courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof.").

Contrary to counsel's argument, the Court concludes that to deem Mesika a limited-purpose public figure under the *Waldbaum* standard used in *Makaeff* — *i.e.*, to determine that there was not only a general "public interest" in Mesika, but a public controversy over the "specific question" of Mesika's litigious history and patent activities — the Court would have to look further into Petty's exhibits than merely noting their existence. Specifically, the Court would need to recognize the contents of the documents as true: that people were discussing, commenting on, and criticizing Mesika's patent-filing and litigation activities prior to the publication of Petty's comments, rather than there being only general interest in Mesika himself. The Court cannot do so at this stage, as it goes beyond the limited purpose of judicial notice and therefore cannot be considered without a chance to conduct discovery and a summary judgment record. Petty's supplemental authority, *Samadi v. Amazon SMF3*, CV 25-3257-DC-JDP (PS), 2026 WL 1983976 (E.D. Cal. July 9, 2026), holds no differently. 2026 WL 1983976, at *2–3. (nothing that "in assessing the sufficiency of the pleadings, 'courts must consider … sources courts ordinarily examine when ruling on 12(b)(6) motions to dismiss, in particular, … matters of which a court may take judicial notice.'").

In sum, without considering the documents attached to the RJN for the truth of the matter asserted, the Court cannot determine at this stage that the three-pronged test for limited-purpose public figure status has been met. Indeed, Petty's argument in the Motion is entirely premised on these documents. (*See* Petty Motion at 20–21). While Petty's argument in his Reply also cites to allegations in the SAC and the Opposition that seem to confirm that Mesika has some notoriety in the magic community, again, the fact that Mesika is generally well-known in the relevant community does not completely satisfy the three prongs of the Ninth Circuit's test. (*See* Reply at 9). Because the Court cannot conclude that Plaintiff Mesika is a limited purpose public figure at this point, the Court need not address actual malice at this stage. *See*

*Toufanian v. Oreffice*, No. CV 19-7934-DMG (SSx), 2021 WL 4353115, at *5 (C.D. Cal. July 16, 2021) (declining to address whether actual malice was properly pled after declining to hold that plaintiff was limited purpose public figure).

**b. Challenges to Individual Statements**

Separately, Petty also argues that the statements in question are nonactionable as they are either true, substantially true, or expressions of opinion and rhetorical hyperbole. The SAC and the parties' briefs are generally imprecise as to the exact statements that are being challenged and/or defended and on which bases, respectively. For clarity, the Court identifies four broad categories of statements: **(1)** statements about the number of approved patents and/or patent applications Mesika has (e.g. "he doesn't have a patent approved and he never will," "you've got 20 plus applications, most of which fail," "dozens of patent applications, very few granted," etc.); **(2)** statements about the substance of Mesika's patent applications (several statements about Mesika copying Steve Sheraton's "Rinkey Dinky" design and only "moving a hole onto the side," and any statements about Mesika not crediting other inventors in his applications); **(3)** statements in which Petty calls Mesika a certain name or adjective (including any references to Mesika as a "patent troll," "magic's biggest litigious bully," "sinister, manipulative, deceitful, greedy," "the bad guy," etc.); and **(4)** statements in which Petty accuses Mesika of bullying, threatening, intimidating, or engaging in other similar activities (including, for example, several statements about Mesika threatening litigation against Mark Bennett and Petty, and general references to Mesika's "trying to sue anyone who brings out their own ring flights," "financially and legally bullying creators," "trying to stifle creativity in the magic community," "filing patents … to bully creators," etc.).

**i. Statements Challenged as True**

In general, Petty argues that the first two categories of allegedly defamatory statements (*i.e.*, statements about the number of patents and patent applications and

statements about the substance of those patent applications) cannot be actionable because they are true or substantially true. (*See* Petty Motion at 14–15).

Again, however, the Court is not convinced it is appropriate to determine whether statements are true or substantially true at this stage. Truth is an affirmative defense to a defamation claim under California law, and "[o]rdinarily, affirmative defenses … may not be raised on a motion to dismiss" unless "there is some obvious bar to securing relief on the face of the complaint." *See* CACI No. 1720, Affirmative Defense — Truth; *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972–73 (9th Cir. 2019) (internal quotations and citations omitted). The Court cannot conclude from the face of the complaint that truth is an "obvious bar" as to either category of statements identified by Petty, and "Rule 8 does not require plaintiffs to plead around affirmative defenses." *See U.S. Commodity Futures Trading Comm'n*, 931 F.3d at 972.

In his Notice of Supplemental Authority, Petty points to *Spears v. N.Y. Times Co.*, No. 7:23-cv-692-ACA, 2026 WL 1494236 (N.D. Ala. May 28, 2026) for the principle that, "while substantial truth may be an affirmative defense under a state's common law, the First Amendment requires that [when] a private plaintiff [] sues a media defendant regarding statements on a matter of public concern, the burden shifts to the plaintiff to show that the statements are false in all material respects." (Docket No. 65 at 2). But *Spears* is, again, an order applying a summary judgment standard, where affirmative defenses may properly be raised. 2026 WL 1494236, at *6. *Spears,* therefore, says nothing to contravene the principle that plaintiffs are not required to plead around affirmative defenses under Rule 8.

Moreover, arguments made by both parties as to the truth (or falsity) of these categories of statements explicitly rely on the consideration of outside facts in account of the number of patent applications filed, the number of patents issued to Mesika, and the contents of those applications and/or patents. (*See, e.g.*, Petty Motion at 14–15 (citing USPTO patent search exhibit); Opp. to Petty Motion at 20 (citing Information Disclosure Statement to USPTO exhibit)). As explained above, while such evidence

may be cognizable at the summary judgment stage, these arguments are inappropriate under Rule 12(b)(6).

Accordingly, the Court declines to rule at this stage on whether these statements are literally true. Arguments as to this affirmative defense may be renewed in a motion for summary judgment after an opportunity to conduct discovery has been afforded.

**ii. Statements Challenged as Opinion**

Petty does, however, also argue that the remaining categories of statements are non-actionable opinions, and district courts regularly adjudicate this issue at the pleading stage. *See, e.g.*, *Andrew Left*, 2026 WL 1365637, at *14; *Toufanian*, 2021 WL 4353115, at *5–6. In a defamation claim, "the challenged speech must be a statement of fact," and therefore "the threshold question in every defamation suit is 'whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact.'" *Herring Networks, Inc. v. Maddow* ("*Herring*"), 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)) (modification in original) (affirming the district court's grant of the special motion to strike under a 12(b)(6) standard where plaintiff argued defamatory statement was an opinion). If no assertion of fact is implied, the claim is prohibited under the First Amendment. *See id.* (citing *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009)).

Courts in the Ninth Circuit look to the totality of the circumstances to determine this inquiry, employing a three-factor test to resolve whether a statement implies an assertion of objective fact. The three factors are:

> "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false."

*Id.* (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)).

"California law recognizes that a defamatory statement can either be 'expressly stated or implied.'" *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 889 (9th Cir. 2016) (quoting *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803, 163 Cal. Rptr. 628 (1980)). The statement must be reasonably understood to imply the allegedly defamatory content to sustain a claim for implied defamation. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1144 (9th Cir. 2022) (citing *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010)).

The Court agrees with Petty that the third and fourth categories of statements identified above (*i.e.*, statements in which Petty calls Mesika certain names or adjectives like "patent troll" and "magic's biggest litigious bully," and statements in which Petty accuses Mesika of bullying, threatening, intimidating, etc.) are, as a matter of law, nonactionable expressions of opinion or rhetorical hyperbole.

Regarding the name-calling statements, as discussed in another case from this District, such language is clearly "[c]aricature, imaginative expression, and rhetorical hyperbole" that is "a legitimate exercise of literary style." *See Kajeet, Inc. v. Qustodio, LLC*, No. SACV1801519JAKPLAX, 2019 WL 13149928, at *11 (C.D. Cal. Aug. 22, 2019) (finding that defendant's calling plaintiff a "patent troll," a "threat to our industry," and a "bully" filing "predatory patent infringement lawsuits" were non-actionable statements of opinion); *see also Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578 (N.D. Tex. Aug. 12, 2021) (finding statements that plaintiff was a "problem for 'the industry'" because he sent patent infringement demand letters and pursued "frivolous lawsuits" to be protected opinion). The Court agrees with the reasoning from *Kajeet* that the use of these terms is the type of "vigorous epithet[]" or "lusty and imaginative expression[] of contempt" that California courts have held to be non-actionable. *See* 2019 WL 13149928, at *11.

Likewise, Petty's statements related to Mesika "threatening" litigation against Mark Bennett and Petty, "bullying" creators, or "trying to sue" others, are

nonactionable because they reflect a "subjective opinion or belief rather than an objective, provable fact." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 747 (9th Cir.), *cert. denied*, 146 S. Ct. 298 (2025) (finding "the words 'harass,' 'bully,' 'intimidate,' and 'threaten' cannot be actionable because they 'merely describe how the author of the Second Document interpreted Plaintiff's communications.'").

Plaintiffs respond that "Petty represented to the public that he was bringing facts, not merely opinions," because he began his video with the statement "[t]oday, I am bringing facts, upon facts." (Opp. to Petty Motion at 23). This argument, however, assumes that this singular statement would lead viewers to conclude that every statement thereafter, throughout the three-hour span of the video, is verifiably factual. This assumption is first undercut by the fact that many subsequent statements include qualifiers such as "in my opinion" or "I believe." (SAC ¶ 72); *see also Baker v. Los Angeles Herald Exam'r*, 42 Cal. 3d 254, 261–62, 228 Cal. Rptr. 206 (1986) (analyzing the use of the lead-ins "my impression is…" and "I think…" and concluding "a reasonable person would understand that a statement of opinion rather than fact was to follow"). Furthermore, it overlooks the importance of the context in which all these statements, including the "facts, upon facts" comment, were made. "When statements are made by "participants in an adversarial setting" in which "the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." *See Dickinson*, 17 Cal. App. 5th at 686–7. Even if these statements could be factually proven false in some manner, then, the context in which they were made would nonetheless "negate[] the impression that [] [D]efendant was asserting an objective fact." *Herring*, 8 F.4th at 1157, 1159–60 (finding that, MSNBC host Rachel Maddow's "exaggerat[ing] the facts and call[ing] OAN Russian propaganda was consistent with her tone up to the point" so "a reasonable viewer would not take the statement as factual given the context.").

In sum, the third and fourth categories of statements outlined above are expressions of opinion, not fact, and thus cannot form the basis for Plaintiffs' libel

claim. The Motion is therefore **GRANTED** as to the claims premised on these categories of statements. But the first and second categories of statements challenged in the Motion that are putatively true must survive at this stage of the proceedings. Because Petty rests his arguments for dismissal regarding the sufficiency of Plaintiffs' additional trade libel and false light claims on his arguments as to the libel claim, these claims also survive to the extent they are premised on the surviving defamatory statements. (*See* Motion at 23).

**D. Remaining Claims (Counts 3, 4, 6-11)**

**1. Misappropriation of Likeness (Counts 3 and 4)**

California Civil Code section 3344 prohibits the use of "another's name, voice, signature, photograph, or likeness … for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without such person's prior consent." Cal. Civ. Code § 3344(a). Similarly, to plead a common law cause of action for commercial misappropriation, a plaintiff must allege that the defendant used his identity to defendant's advantage (commercially or otherwise), without plaintiff's consent, causing plaintiff injury. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). Under both the common law and statutory cause of action, "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793, 40 Cal. Rptr. 2d 639 (1995); *see also* Cal. Civ. Code § 3344(d) (prior consent is not required if the use is "in connection with any news [or] public affairs.").

Petty argues, and the Court agrees, that Mesika's common law misappropriation claim fails because Petty's use of Mesika's likeness falls within his First Amendment right to use a person's likeness when publishing on matters of public interest, as well as California Civil Code section 3344(d)'s "public affairs" exception. (Petty Motion at 23–24).

Courts have interpreted the term "public affairs" to extend broadly and "include things that would not necessarily be considered news … [or] topics that might be covered on public television or public radio," but nonetheless capture public interest. *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545–46, 18 Cal. Rptr. 2d 790 (1993) (finding a documentary on surfing to be protected because of public interest in the sport); *see also Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 416, 114 Cal. Rptr. 2d 307 (2001) (finding baseball documentaries to be protected because of "baseball's pervasive influence on our culture."). The Court agrees with Defendants that the misappropriation claims fail because any use of Petty's likeness falls within these common law and statutory exemptions, and indeed the Court has discussed at length that the videos regarded matters in the public interest. (*See, e.g.*, SAC ¶ 85 ("The Craig Petty video has more than 26,000 views while the Penguin Magic video has more than 7,834 views.")).

Plaintiffs largely fail to oppose Defendants' arguments, merely asserting that Petty used Mesika's likeness in "monetized videos and product promotion," which amounted to "disguised advertisements" and constituted "commercial misappropriation, not news." (Opp. to Petty Motion at 29). But as with other arguments in the Opposition, Plaintiffs do no more than make these conclusory assertions. In any event, as Petty notes, a section 3344 claim requires that a plaintiff's likeness be used "exclusively" for commercial gain. (Petty Motion at 24 (quoting *Leidholt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988))); *see also Brewer v. Hustler Magazine, Inc.*, 749 F.2d 527, 530 (9th Cir. 1984) ("[T]he statute is limited to appropriation for purposes of advertising or solicitation of purchases."). In other words, the fact that Petty's videos were monetized is not dispositive, as Plaintiffs appear to argue. *See Leidholt*, 860 F.2d at 895 (finding that the fact that a magazine was operated for profit "does not extend a commercial purpose to every article within it.").

Again, while the Opposition is largely devoid of argument and authorities defending Plaintiffs' misappropriation claim, the Court considers the single authority cited by Plaintiffs, *Downing.* (*See* Petty Motion at 29). In *Downing*, the Ninth Circuit

held that Abercrombie's use of the plaintiff's photograph in a catalog to promote clothing was not protected speech because the "tenuous relationship between [plaintiff's] photograph and the [public interest-related] theme presented" made the use more commercial in nature than public interest-based. 265 F.3d at 1001–02. Here, the connection between the use of Mesika's likeness and matters of public interest is not attenuated as it was in *Downing* in that the video was indeed ***about*** Mesika, and not merely "window-dressing" to "advance … [a] theme." *Id.* at 1002. And the bare fact that Petty may have made some money by simply publishing the video itself is not enough to defeat the public interest exception under *Montana*, as the fact in *Montana* that the Mercury News was selling posters depicting Montana did not prevent the application of the public affairs exception. *See* 34 Cal. App. 4th at 794 (applying the public affairs exception to the sale of a poster of Joe Montana by the San Jose Mercury News and citing cases that held the same). And Plaintiffs have cited to no allegations supporting the notion that the Petty video was in any way an advertisement for any other good sold by Petty.

Accordingly, the Petty Motion is **GRANTED** as to Counts 3 and 4. As to a misappropriation claim against Penguin, Plaintiffs only reference a misappropriation claim as to ***Petty's*** "use[] [of] Plaintiffs' likeness." (Opp. to Penguin Motion at 29). Therefore, it appears that Plaintiffs are abandoning any misappropriation claim as to Penguin.

**2. Counts 6-10 Against Petty**

In their Opposition, Plaintiffs state that the SAC alleges Counts 8-10 against Penguin Magic, but not Petty. (Opp. to Petty Motion at 29). While Plaintiffs do not mention Counts 6 and 7 in this single sentence, the Court construes Counts 6 and 7 to be included in this concession because Counts 6 through 8 all concern violations of California Business & Professions Code sections 17200 and 17500, and Plaintiffs' header to this section identifies the claims brought under those statutes. Moreover, as to Count 6 and 7, as they may have been putatively alleged against Petty, Plaintiffs

make no mention of these Counts in their Opposition to the Petty Motion, and thus the arguments made in the Petty Motion for dismissal are conceded. (*See generally id.*).

The Petty Motion is therefore **GRANTED** as to Counts 6-10. The subsequent discussion of Counts 6-10 is therefore solely in reference to Penguin.

**3. California Unfair Competition and False Advertising (Counts 6-8)**

Penguin argues that Counts 6 and 8 should be dismissed because Plaintiffs have failed to allege any "unlawful, unfair or fraudulent" conduct, as these terms have been interpreted in *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999). (*See* Penguin Motion at 16); Cal. Bus. & Prof. Code § 17200. Plaintiffs fail to respond to these arguments in the Opposition to the Penguin Motion. (*See* Opp. to Penguin Motion at 29). Accordingly, the claims are effectively conceded.

Regarding Count 7, Plaintiffs have failed to respond to the deficiencies identified in the Prior Order. Plaintiffs allege in the SAC that the magician quotes "that Penguin Magic published on its commercial product pages were factually false as applied to TIES, and led to reasonable consumers being deceived into believing that [the same magician] endorsed Penguin Magic's knockoff of 'LOOPS.'" (SAC ¶ 103). This allegation suffers from the same deficiency the Court previously identified: "there are no allegations that the [magician] review on the TIES product page is false, rather than one reviewer using a similar phrase ("I never leave home without them") to describe similar products." (Prior Order at 10). Additionally, and yet again, Plaintiffs have failed to respond to the sufficiency of the allegations arguments made in the Penguin Motion as to this claim and thus have conceded the arguments. (*See generally* Opp. to Penguin Motion).

The Penguin Motion is therefore **GRANTED** as to Counts 6-8.

//

**4. Lanham Act § 43(a) (Count 9)**

As to the Lanham Act false designation of origin claim, Plaintiffs failed to respond to the Prior Order as they still have not identified any false statements made on Penguin's product page. (Prior Order at 11). Again, the allegations in the SAC fail to establish that the magician review on the Penguin TIES product pages is false and Plaintiffs have not responded in substance to the arguments made in the Penguin Motion. In their Opposition, Plaintiffs assert —in one sentence — that "Penguin Magic's videos and product pages constitute 'commercial advertising or promotion,'" otherwise ignoring the Court's Prior Order and the arguments made in Penguin's Motion. (Opp. to Penguin Motion at 29). Such an assertion does nothing to save Plaintiffs' Lanham Act claim. The Penguin Motion is **GRANTED** as to Count 9.

**5. Intentional Interference (Count 10)**

As to Count 10, Penguin argues that, although Plaintiffs now allege relationships with specific third parties, the SAC fails because it (1) does not identify an independently wrongful act and (2) fails to demonstrate causation. (Penguin Motion at 19–20). Plaintiffs only respond that Penguin "disrupted [economic relationships] through marketplace suppression, defamatory publications, and knockoff sales." (Opp. to Penguin Motion at 29). But the Court agrees with Penguin that, because Counts 1-9 are insufficiently pled as to Penguin, there is no predicate independently wrongful act for the interference tort. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158, 131 Cal. Rptr. 2d 29 (2003) ("To establish a claim for interference with prospective economic advantage, therefore, a plaintiff must plead that the defendant engaged in an independently wrongful act."). In other words, even assuming that "marketplace suppression, defamatory publications, or knockoff sales" could form the predicate act required to allege this claim, Plaintiffs have failed to allege any of these acts as to Penguin.

The Penguin Motion is therefore **GRANTED** as to Count 10.

**6. Declaratory Relief (Count 11)**

Finally, both parties make arguments that Count 11 should fail because declaratory relief is not a stand-alone cause of action, only a remedy, and that it is duplicative of other causes of action and subject to dismissal for that reason. (Penguin Motion at 20; Petty Motion at 25, n.11). Plaintiffs fail to address this argument entirely in either Opposition. (*See generally* Opp. to Penguin Motion; Opp. to Petty Motion). Therefore, the Motions are **GRANTED *without leave to amend*** as to Count 11.

**E. Attorneys' Fees and Costs (Anti-SLAPP Motion)**

Both Defendants argue they are entitled to attorneys' fees, costs, and damages because section 425.16(c)(1) makes attorneys' fees mandatory upon prevailing on an anti-SLAPP motion. (Penguin Motion at 22; Petty Motion at 25); Code Civ. Proc. § 425.16(c)(1). But where, as here, "the Court grants in part and denies in part an anti-SLAPP motion, 'the Defendants are entitled to recover attorney fees and costs incurred in moving to strike the claims on which … they prevailed, but not fees and costs incurred in moving to strike the remaining claims.'" *Abittan v. Hansen L. Firm, P.C.*, CV 25-05427-SVK, 2026 WL 1215531, at *2 (N.D. Cal. May 4, 2026) (quoting *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1027 (N.D. Cal. 2017)).

Having found that both prongs of the anti-SLAPP statute are satisfied, albeit to a limited subset of the allegedly defamatory statements, the Court holds that Defendants are entitled to relief under section 425.16(c)(1). Defendants may submit a separate motion to request fees incurred in relation to any dismissed claims arising from protected speech. In Defendants' motions, counsel should identify which counts fall under this category. To the extent there is any disagreement, Plaintiff will have the opportunity to oppose the motions.

Specifically, because all claims are dismissed as levied against Penguin Magic, counsel for Penguin may move for fees incurred in drafting any sections of their

Motions that pertain to (1) the applicability of the anti-SLAPP statute; and (2) the counts identified as arising from protected speech. In line with the limited categories of dismissed statements identified above, counsel for Petty may do the same, except that they may not recover fees incurred in relation to any sections of their Motions that focus on the sustained categories of statements (*i.e.*, statements about the amount, status, or substance of Mesika's patent applications).

## V. LEAVE TO AMEND

In considering whether to grant leave to amend, the Court must consider five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended its complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052(9th Cir. 2003)); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

The Court indicated in the Prior Order that while leave to amend would be granted as to a Second Amended Complaint, any future successful motions to dismiss would be granted without leave to amend. (Prior Order at 13). As to the dismissed claims, Plaintiffs have had the opportunity to amend the allegations underlying their claims — and to defend them against the arguments made in the two current Motions — but have largely failed to do so when given the opportunity. Accordingly, the Court concludes that further amendment would be futile in light of the two prior amendments to the complaint. To the extent the Motions are granted, then, they are **GRANTED *without leave to amend***.

## VI. CONCLUSION

The Motions are therefore **GRANTED *in part* and DENIED *in part***:

- As to the libel, trade libel, and false light claims (Counts 1, 2, and 5):

  - The Penguin Motion is **GRANTED *without leave to amend*** because Plaintiffs have failed to attribute any of the allegedly defamatory statements to Penguin.

  - The Petty Motion is **GRANTED *in part* and DENIED *in part***. The Petty Motion is **GRANTED *without leave to amend*** as to the statements in which Petty calls Mesika certain names or adjectives (including, but not limited to, "patent troll," "Magic's biggest litigious bully," "sinister, manipulative, deceitful, [and] greedy") or accuses Mesika of bullying, threatening, intimidating, or engaging in other similar activities, as these are statements of opinion, not fact. The Petty Motion is **DENIED** as to the limited purpose public figure analysis and the statements that may be subject to the affirmative defense that they are factually true (*i.e.*, statements abut the volume and substance of Mesika's patents and applications).

- Both Motions are **GRANTED *without leave to amend*** as to the misappropriation claims (Counts 3 and 4) because the videos fall into the public affairs and public interest exceptions to the common law and statutory claims.

- Both Motions are **GRANTED *without leave to amend*** as to the Unfair Competition, False Advertising, Lanham Act, and Declaratory Judgment claims (Counts 6-11). Plaintiffs largely fail to oppose the arguments made in the Motions on these claims, and the limited arguments that Plaintiffs do make are insufficient to overcome the points in the Motions.

Based on the limited success of the anti-SLAPP Motions, Defendants may submit and notice a separate motion for attorneys' fees by **September 2, 2026**, in compliance with Fed. R. Civ. P. 54(d)(B) and L.R. 54-7, as well as the Court's above instructions regarding attorneys' fees and costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 25-7943-MWF (MBKx)** **Date: August 4, 2026**

Title: Mesika Magic, et al. v. Penguin Magic, Inc., et al.

Judgment on the dismissed claims will be entered as part of final judgment at the conclusion of this action.

IT IS SO ORDERED.